**23-4466**

## UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

---

**ESTATE OF DECEDENT LOLOMANIA SOAKAI, LAVINIA SOAKAI, DANIEL FIFITA, SAMIEUELA FINAU, and INA LAVALU,**

Plaintiffs and Appellees,

vs.

**WALID ABDELAZIZ and JIMMY MARIN-CORONEL**

Defendants and Appellants.

---

Appeal from the United States District Court
Northern District of California
Hon. Sallie Kim, U.S. Magistrate Judge
Case No. 3:23-cv-00381 SK

---

### APPELLANTS' OPENING BRIEF

---

David B. Newdorf
Newdorf Legal
630 Thomas L. Berkley Way, Suite 103
Oakland, California 94612
Telephone:  (415) 357-1234
david@newdorf.com
*Attorney for Defendant/Appellant*
*Walid Abdelaziz*

Aimee G. Hamoy
Kaufman Dolowich & Voluck, LLP
180 Grand Avenue, Suite 995
Oakland, California 94612
Telephone: (510) 630-7646
Ahamoy@Kdvlaw.Com
*Attorneys for Defendant/Appellant*
*Jimmy Marin-Coronel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................iii

JURISDICTIONAL STATEMENT ............................................ 8

ISSUES PRESENTED FOR REVIEW........................................ 8

STATEMENT OF THE CASE .................................................. 9

    A.    Statement of Facts ................................ 9

    B.    Procedural History.................................. 10

    C.    The District Court's Order ........................ 11

STANDARD OF REVIEW...................................................... 12

SUMMARY OF THE ARGUMENT .......................................... 12

ARGUMENT....................................................................... 13

    I.    SUPREME COURT AND NINTH CIRCUIT PRECEDENTS SET A HIGH STANDARD OF CULPABILITY FOR BYSTANDERS' CLAIMS UNDER THE FOURTEENTH AMENDMENT. ........................................ 13

        A.    The Rule in *Sacramento v. Lewis* Is Deferential to the Needs of Law Enforcement. ................................. 13

        B.    The District Court Erred in Finding that the Complaint Stated a Claim under the Fourteenth Amendment Without an Allegation that the Police Intended to Harm these Specific Bystander Plaintiffs. ................. 26

        C.    The Decisions on which the District Court Relied Do Not Support the Trial Court's Order. ................... 29

            1.    *McGowan v. County of Kern*............................ 30

            2.    *Johnson v. Baltimore Police Dep't* ................. 31

            3.    *Simmons v. Baltimore City Police Dep't* ........ 33

    II.    THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE CONSTITUTIONAL RIGHT RECOGNIZED BY THE DISTRICT COURT WAS NOT CLEARLY ESTABLISHED. .................................................................. 34

        A.    The District Court Did Not Address the "Clearly Established" Prong Which Was Necessary for the Qualified Immunity Analysis. .................................... 34

III.    THE COMPLAINT DOES NOT STATE A FOURTEENTH AMENDMENT CLAIM BASED ON THE OFFICERS' ALLEGED FAILURE TO RENDER EMERGENCY AID OR CALL FOR MEDICAL HELP...................................................................39

IV.    THE OFFICERS WOULD NOT HAVE VIOLATED CLEARLY ESTABLISHED LAW IF THEY FAILED TO RENDER AID AND ASSISTANCE AT THE SCENE OF THE ACCIDENT......43

CONCLUSION ...........................................................................45

# TABLE OF AUTHORITIES

**Cases**

*A.D. v. California Highway Patrol*
712 F.3d 446 (9th Cir. 2013)............................................................ 37, 38

*Anderson v. Creighton*
483 U.S. 635 (1987) ................................................................. 37

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011) ................................................................. 37

*Bafford v. Northrop Grumman Corp.*
994 F.3d 1020 (9th Cir. 2021)................................................... 12

*Behrens v. Pelletier*
516 U.S. 299 (1996) ................................................................... 8

*Childress v. City of Arapaho*
210 F.3d 1154 (10th Cir. 2000)......................................... 23, 25

*Claybrook v. Birchwell*
199 F.3d 350 (6th Cir. 2000).................................................... 23

*Daniels v. Williams*
474 U.S. 327 (1986) ........................................................... 14, 15

*Davis v. Township of Hillside*
190 F.3d 167 (3d Cir. 1999)............................................... 26, 27

*Ellis v. Ogden City*
589 F.3d 1099 (10th Cir. 2009)................................................ 32

*Entler v. Gregoire*
872 F.3d 1031 (9th Cir. 2017)................................................... 37

*Estate of Romain v. City of Grosse Pointe Farms*
935 F.3d 485 (6th Cir. 2019).................................................... 40

*Fulkerson v. Lancaster*
801 F. Supp. 1476 (E.D. Pa. 1992), ....................................... 34

*Graham v. Connor*
490 U.S. 386 (1989) ................................................................. 14

*Helseth v. Burch*
258 F.3d 867 (8th Cir. 2001) .................................................................. 33

*Herbert v. New Orleans City*
2020 U.S. Dist. LEXIS 142031 (E.D. La. Aug. 10, 2020) ...................... 25

*Hernandez v. City of San Jose*
897 F.3d 1125 (9th Cir. 2018) ....................................................... 8, 36, 41

*Hughes v. Rodriguez*
31 F.4th 1211 (9th Cir. 2022) ................................................................. 37

*Jackson v. Byrne*
738 F.2d 1443 (7th Cir. 1984) ................................................................. 42

*Jackson v. City of Joliet*
715 F.2d 1200 (7th Cir. 1983) ................................................................. 41

*Jessop v. City of Fresno*
936 F.3d 937 (9th Cir. 2019) ................................................................... 37

*Johnson v. Baltimore Police Department*
452 F. Supp. 3d 283 (D. Md. 2020) ........................................... 30, 31, 32

*Kennedy v. City of Ridgefield*
439 F.3d 1055 (9th Cir. 2006) ................................................................. 44

*Kisela v. Hughes*
584 U.S. 100 (2018) ................................................................................. 37

*L.W. v. Grubbs*
974 F.2d 119 (9th Cir.1992) ..................................................................... 42

*Martinez v. City of Clovis*
943 F.3d 1260 (9th Cir. 2019) ........................................................... 13, 40

*Maxwell v. County of San Diego*
708 F.3d 1075 (9th Cir. 2013) ................................................................. 42

*McGowan v. County of Kern*
2018 WL 2734970 (E.D. Cal. June 7, 2018) ..................................... 29, 30

*Mitchell v. Forsyth*
472 U.S. 511 (1985) ................................................................................... 8

*Monell v. New York Dept. of Social Services*
  436 U.S. 658 (1978) ................................................................. 11

*Moreland v. Las Vegas Metropolitan Police Dept.*
  159 F.3d 365 (9th Cir. 1998) ............................................ 21, 22

*Mullenix v. Luna*
  577 U.S. 7 (2015) ..................................................................... 37

*Munger v. City of Glasgow Police Department*
  227 F.3d 1082 (9th Cir. 2000) .......................................... 41, 43

*Murguia v. Langdon*
  61 F.4th 1096 (9th Cir. 2023) ................................................. 40

*Newells v. Cty. of Los Angeles*
  2022 U.S. Dist. LEXIS 88826 (C.D. Cal. Apr. 22, 2022) ................ 24, 35

*Onossian v. Block*
  175 F.3d 1169 (9th Cir. 1999), ......................................... passim

*Pearson v. Callahan*
  555 U.S. 223 (2009) ........................................................... 35, 36

*Penilla v. City of Huntington Park*
  115 F.3d 707 (9th Cir. 1997) .................................................. 42

*Radecki v. Barela*
  146 F.3d 1227 (10th Cir. 1998) .............................................. 25

*Rico v. Ducart*
  980 F.3d 1292 (9th Cir. 2020) ........................................... 12, 36

*Rochin v. California*
  342 U.S. 165 (1952) ................................................................ 14

*Rodriguez v. City of Fresno*
  819 F.Supp.2d 937 (E.D. Cal. 2011) ....................................... 22

*Saucier v. Katz*
  533 U.S. 194 (2001) ................................................................ 36

*Scott v. Harris*
  550 U.S. 372 (2007) ..................................................... 16, 17, 18

*Simmons v. Baltimore City Police Department*
    2021 WL 3418840 (D. Md. Aug. 5, 2021) .................................. 30, 33, 34

*Sinclair v. City of Seattle*
    61 F.4th 674 (9th Cir. 2023) .................................................... 13, 40, 41, 42

*Suit v. City of Folsom*
    2016 WL 6696060 (E.D. Cal. Nov. 14, 2016) ........................... 23, 24, 35

*T.D.P. v. City of Oakland*
    2019 U.S. Dist. LEXIS 29624 (N.D. Cal. Feb. 24, 2019) ...................... 28

*Thaer Mahdi v. Salt Lake Police Department*
    54 F.4th 1232 (10th Cir. 2022) .......................................................... 24, 25

*Villanueva v. City of Scottsbluff*
    779 F.3d 507 (8th Cir. 2015) ................................................................... 40

*White v. Pauly*
    580 U.S. 73 (2017) ............................................................................ 36, 37

*Whitley v. Albers*
    475 U.S. 312 (1986) ................................................................................. 14

*Wood v. Ostrander*
    879 F.2d 583 (9th Cir. 1989) ................................................................... 41

**Statutes**

Cal. Civil Code
    § 52.1 ...................................................................................................... 10

Title 28 U.S.C.
    § 1291 ....................................................................................................... 8

Title 28 U.S.C.
    § 13 ........................................................................................................... 8

Title 28 U.S.C.
    § 1367 ....................................................................................................... 8

Title 42 U.S.C.
    § 1983 ................................................................................................. 8, 10

**Rules**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ........................................................................................... 10

Federal Rules of Civil Procedure

Rule 12(c) ................................................................................. 10

## JURISDICTIONAL STATEMENT

(A) **Basis for the district court's jurisdiction.** The action includes federal claims under 42 U.S.C. § 1983 and related state-law claims for relief. The district court had original jurisdiction over the action under 28 U.S.C. § 1331 (federal claims) and pendent jurisdiction over the related state-law claims under 28 U.S.C. § 1367.

(B) **Basis for the Court of Appeals' jurisdiction.** The district court entered an order denying Defendants/Appellants Walid Abdelaziz's and Jimmy Marin-Coronel's Motion to Dismiss and Motion for Judgment on the Pleadings. The district court order, among other things, denied qualified immunity to the Appellants. An order denying qualified immunity is an appealable collateral order under 28 U.S.C. § 1291. *Behrens v. Pelletier*, 516 U.S. 299 (1996); *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Hernandez v. City of San Jose*, 897 F.3d 1125 (9th Cir. 2018).

(C) **Timeliness of the appeal.** The district court entered its order denying qualified immunity on November 28, 2023. (ER 074.) Appellants filed their joint notice of appeal in the district court on December 27, 2023, which was within 60 days of the appealable order. (ER 076.)

## ISSUES PRESENTED FOR REVIEW

1.  Whether bystanders seriously injured when a criminal suspect crashed into them have a claim under the Fourteenth Amendment against a police officer who pursued the suspect at high speeds if the officer lacked any intent to harm the bystanders.

2.  Whether a police officer is entitled to qualified immunity on Fourteenth Amendment claims based on the absence as of June 25, 2022, of any published decisions within the Ninth Circuit holding a police officer liable for

injury to any bystander stemming from a high-speed chase of a fleeing suspect unless the officer had specific intent to harm the bystander.

3.      Whether bystanders have a Fourteenth Amendment claim against a police officer who engaged in a high-speed car chase with a fleeing suspect who crashed into the bystanders, and the officer did not stop and render emergency aid or call medical help for the crash victims.

4.      Whether a police officer is entitled to qualified immunity under the Fourteenth Amendment for failing to stop, render emergency aid, and summon medical help for crash victims, even after engaging in a high-speed chase with a fleeing suspect who crashed into the crowd.

## STATEMENT OF THE CASE

### A.    Statement of Facts

The First Amended Complaint ("FAC") alleges that on June 25, 2022, two Oakland Police Department officers pursued a suspect from a "sideshow" car rally at speeds of between 60 and 100 miles per hour on congested city streets. (FAC ¶¶ 19, 21; ER 07.) The FAC alleges that officers did not use lights and siren while in pursuit of the suspect vehicle and had engaged in a "ghost chase." (FAC ¶¶ 19-20; ER 08.). During a "ghost chase, they do not radio in the chase" and lights and do not radio in the chase of a suspect to dispatch because their department prohibits the chase due to the risks to the suspect and innocent bystanders' lives. (The officers "purposely caused the suspect to lose control of his vehicle and crash into cars and motorcycles" that were parked on International Boulevard. (FAC ¶ 21; ER 07.) The collision caused serious injuries to plaintiffs. (FAC ¶¶ 4-6, 22; ER 04, 08.) The suspect's car struck Lolomania Soakai, who was standing beside his car and sustained fatal injuries as a result. (*Id.*) Plaintiff Lavinia Soakai, whose back was broken, witnessed the death of her son, Lolomania. (*Id.*)

The suspect's car also hit Plaintiffs Ina Lavalu, Daniel Fifita, and Samieuela Finau. (FAC ¶¶ 5-6, 22; ER 04-05, 08.) There are no allegations that the officers' marked patrol car collided with the suspect vehicle, the deceased, or the Plaintiffs. After the accident, the officers allegedly did not stop or radio in the accident. Instead, they attempted to conceal their involvement in the chase by doubling back when other officers were responding. Plaintiffs' allege that the defendant officers were "overheard commenting that they were satisfied the driver appeared injured and hoped that the driver had died in the crash." (FAC ¶ 23; ER 08.) The officers' failure to summon medical care allegedly caused Plaintiffs' injuries to worsen and Lolomania Soakai to lose his life. (FAC ¶ 24; ER 09.)

### B.    Procedural History

Plaintiffs commenced the action on January 25, 2023, against Defendant City of Oakland only. (ECF 1.) Plaintiffs' filed the FAC on April 17, 2023, adding Defendants Walid Abdelaziz and Jimmy Marin-Colonel. (ECF 17; ER 03). The FAC contained claims for relief for (1) violation of the Fourteenth Amendment (Due Process) under 42 USC § 1983 against Abdelaziz and Marin-Colonel; (2) *Monell* liability against Defendant City of Oakland only under § 1983; and (3) Violation of the Bane Act, Cal. Civil Code § 52.1 against all defendants.

The City filed a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6) on May 1, 2023. (ECF 20.) Abdelaziz filed his motion for judgment on the pleadings under Fed. R. Civ. P. Rule 12(c) on September 28, 2023. (ECF 59; ER 18.) Defendant Jimmy Marin-Colonel joined the motion for judgment on the pleadings on October 19, 2023 (ECF 66; ER 40.). Plaintiffs' opposed the motion and Defendants replied. (ECF 67, 68, 69; ER 45, 72, 87.) Both the City's motion to dismiss and Abdelaziz's and Marin-Colonel's motion for judgment on the pleadings was heard by the district court on November 20, 2023. (ECF 72; ER

138.) The District Court issued its Order on Motion to Dismiss and Motion for Judgment on the Pleadings on November 28, 2023. (ECF 74; ER 91). The district court order granted both motions in part and denied them in part.

Defendants' filed their Joint Notice of Appeal on December 27, 2023. (ECF 76; ER 106.) The District Court stayed the entire action pending the appeal on February 9, 2024. (ECF 79; ER 139.)

### C.      The District Court's Order

The officers moved for judgment on the pleadings on the § 1983 civil rights claim on the following grounds:

(1) Bystanders injured by a suspect fleeing from a police car pursuit cannot state a claim under the Fourteenth Amendment absent the allegations that the defendants had an "intent to harm" the plaintiffs. The complaint only alleged that the defendants intended to harm the fleeing suspect. (ER 28.)

(2) Police have no duty under the Fourteenth Amendment to render emergency assistance to persons injured by a fleeing criminal suspect. (ER 33.)

(3) If the conduct alleged in the First Amended Complaint set out a Fourteenth Amendment claim for injury to bystanders and failing to render emergency assistance, the officers were entitled to qualified immunity because neither of these constitutional rights was clearly established. (ER 37.)

The district court denied the officers' motion as to the federal claims. (ER 91-101.)[1]

_____

[1] The district court granted the City of Oakland's motion to dismiss the § 1983 claims under *Monell v. New York Dept. of Soc. Serv.,* 436 U.S. 658 (1978) on the ground that the allegations failed to adequately allege that constitutional violations were caused by an official governmental policy or custom. (ER 101.) The court also dismissed the state law claims under the California Bane Act, Cal. Civ. Code § 52.1(b), with leave to amend. (ER 103.) Those rulings are not at issue on this appeal.

11

## STANDARD OF REVIEW

This court reviews *de novo* a denial of a motion for judgment on the pleadings based on qualified immunity, accepting as true all well-pleaded allegations of material fact. *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020); *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1025 (9th Cir. 2021)

## SUMMARY OF THE ARGUMENT

(1)    The U.S. Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), sets a high bar for plaintiffs making claims under the due process clause of the Fourteenth Amendment. Under *Lewis, a* police officer who engages a suspect in a negligent, grossly negligent, or reckless high-speed chase that causes injury to bystanders would not be liable under the Fourteenth Amendment unless the officer had specific intent to harm the bystander. As bystanders were injured when a car driven by a fleeing suspect went out of control, the connection between the injury and any intentional conduct by the defendants is remote and tenuous. The First Amended Complaint only alleges that defendants acted with intent to harm the fleeing suspect. Plaintiffs thus fail to state a Fourteenth Amendment claim.

(2) No published cases within the Ninth Circuit as of June 25, 2022, have held that a police officer who engaged a suspect in a negligent, grossly negligent, or reckless high-speed chase that caused injury to bystanders would be liable under the Fourteenth Amendment unless the officer had specific intent to harm the bystander. Thus – even assuming plaintiffs allegations are true and their contentions of law are correct – defendants were not on notice that they violated clearly established law. The officer defendants are therefore entitled to qualified immunity as to the Fourteenth Amendment claim for injuries caused by the high-speed pursuit.

(3) Under the Fourteenth Amendment, a police officer does not have a duty to render emergency aid unless the officer created the danger. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989).The state-created danger doctrine applies only when a state actor places a person in a position of "actual, ***particularized*** danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (emphasis added). In the context of the state-created-danger doctrine, "particularized" means the danger "is directed at a specific victim." *Sinclair v. City of Seattle,* 61 F.4th 674, 682 (9th Cir. 2023) That requirement is not met when risk from a high-speed police pursuit is a general one to members of the public along the route of the chase.

(4) With respect to qualified immunity regarding the failure to render aid claim, no cases hold that officers have a duty under the Fourteenth Amendment to stop, render emergency aid, and summon medical help for bystanders injured by a criminal suspect fleeing from police. Under *Lewis, supra*, the bystanders' injuries were caused by the suspect's flight, not the officers' pursuit. Defendants are entitled to qualified immunity as to these claims as well.

## ARGUMENT

I. **SUPREME COURT AND NINTH CIRCUIT PRECEDENTS SET A HIGH STANDARD OF CULPABILITY FOR BYSTANDERS' CLAIMS UNDER THE FOURTEENTH AMENDMENT.**

    A. **The Rule in *Sacramento v. Lewis* Is Deferential to the Needs of Law Enforcement.**

High-speed police chases have always been dangerous. In *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), the Supreme Court dealt for the first time with the question: At what point does a police vehicle pursuit cross a constitutional line and violate substantive due process rights under the Fourteenth Amendment?

Decades before *Lewis,* the Supreme Court recognized that official conduct shocking the conscious violated substantive due process rights. The Supreme Court first used the phrase "shocks the conscious" to describe a violation of due process in *Rochin v. California*, 342 U.S. 165 (1952) (holding that forcibly pumping a suspect's stomach to obtain evidence used in a state-court drug prosecution violated due process). Since then, the Supreme Court has refined the contours of the phrase and reigned in lower courts that pushed the boundary of what shocks the conscious in the context of due process.

In *Daniels v. Williams*, 474 U.S. 327 (1986), the Court held that negligence was not a constitutional tort:

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Id.* at 332 (dismissing a Fourteenth Amendment claim by a prisoner injured when he slipped on a pillow case that a correctional officer negligently left on a stairway).

The *Lewis* Court further refined the standard of fault for due process claims in the context of police facing an immediate need to act:

> Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance." [*Whitley v. Albers*, 475 U.S. 312, 320 (1986)]; *cf. Graham v. Connor*, 490 U.S. 386, 397 ("police officers are often forced to make split-second judgments – in

14

circumstances that are tense, uncertain, and rapidly evolving"). A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to everyone within stopping range, be they suspects, their passengers, other drivers, or bystanders.

*Lewis*, 523 U.S. at 853-54.

The Supreme Court in *Lewis* analogized the police officer's "split-second judgments" to those made by the correctional officers facing a riot or prison hostage scenario. The *Lewis* decision borrowed in part from the deferential standard applied to official conduct to quell a prison riot.

To recognize a substantive due process violation in these circumstances when only mid-level fault has been shown would be to forget that liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, *even precipitate recklessness* fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed."

*Lewis*, 523 U.S. at 854 (quoting *Daniels v. Williams*, *supra,* 474 U.S. at 332).

Taking into account and weighing the opposing factors, the Court held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." *Id.* Allegations that the officer acted negligently, recklessly, and carelessly, with gross negligence, or in a conscious disregard of plaintiffs' rights failed to rise to the level

of intent necessary under the Fourteenth Amendment. *Id.*; *accord Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

In *Lewis,* the plaintiff decedent Lewis was a passenger on Willard's motorcycle as he fled from Deputy Smith. Being a passenger in a car or on motorcycle is not the same as being a fleeing suspect or an innocent bystander, but the Court's decision did not address the differences. The decision nonetheless strongly suggests that the requisite standard of fault and intent related to Lewis – the passenger and plaintiff – as opposed to Willard, the driver of the motorcycle and the one leading Deputy Smith on a high-speed chase. The decision stated:

> The fault claimed on Smith's part in this case accordingly fails to meet the shocks-the-conscience test. In the count charging him with liability under § 1983, respondents' complaint alleges a variety of culpable states of mind: "negligently responsible in some manner," (App. 11, Count one, P8), "reckless and careless" (*id.*, at 12, P15), "recklessness, gross negligence and conscious disregard for [Lewis's] safety" (id., at 13, P18), and "oppression, fraud and malice" (*Ibid.*) . . . The Court of Appeals understood the claim to be one of deliberate indifference to Lewis's survival, which it treated as equivalent to one of reckless disregard for life.

*Lewis*, 523 U.S. at 854.

The Supreme Court agreed with the Ninth Circuit's "reading of respondents' allegations," but disagreed with its holding that deliberate indifference to Lewis's survival was "sufficient to state a substantive due process claim." *Id.*

The Supreme Court took up the issue of liability related to police chases in the context of the Fourth Amendment in *Scott v. Harris*, 550 U.S. 372 (2007). In that case, a Georgia county deputy attempted to pull the suspect over after he was clocked speeding at 73 miles per hour on a road with a 55-mile-per-hour speed limit. *Id.* at 374. He did not pull over. The offense was relatively minor, but police

determined that the suspect's reckless, high-speed driving posed a risk to the public. In an effort to end the chase, police rammed into the suspect's vehicle. The suspect "lost control of his vehicle, which left the roadway, ran down an embankment, overturned, and crashed." *Id.* at 375. Severe injuries left the driver a quadriplegic. *Id.*

> The Court in *Scott* emphasized the importance of apprehending suspects:

> But wait, says respondent: Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best. . . . [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger.

*Scott v. Harris*, 550 U.S. at 385.

> The Supreme Court in *Lewis* weighed the competing policy interests in general terms (not the specifics of Deputy Smith's pursuit of Brian Willard on his speeding motorcycle). The Supreme Court's conclusion in *Lewis* – that the significant risk of injury inherent in high-speed chases furthers the legitimate law enforcement purpose of capturing and arresting criminal suspects – applies to every police pursuit, provided of course that the subject being pursued is a criminal suspect. The Fourteenth Amendment as applied to police chases is not an absolute immunity from liability, but it is the standard in constitutional law most deferential to police action:

> In the circumstances of a high-speed chase aimed at apprehending a suspected offender, where unforeseen circumstances demand an instant judgment on the part of an officer who feels the pulls of competing obligations, only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the shocks-the-conscience test.

*Lewis*, 523 U.S. at 836.

In *Lewis,* the chase was justified because Deputy Smith was pursuing a fleeing criminal suspect (although the alleged crime was the relatively minor offense of speeding). For that reason, despite the obvious risks of a high-speed chase, the *Lewis* court deemed the pursuit to be in furtherance of a "legitimate law enforcement purpose." Plaintiff's claim failed because Deputy Smith had not intended to harm Lewis, the passenger and the plaintiff.

In *Scott v. Harris,* although a Fourth Amendment case, the Supreme Court weighed the same factors related to high-speed police chases. In that case, the deputy intentionally used his vehicle – lethal force – and caused serious, permanent injuries to the suspect. The Court nonetheless stated: "Whether or not Scott's actions constituted application of 'deadly force,' all that matters is whether Scott's actions were reasonable." *Scott*, 550 U.S. at 383.

> We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was [the fleeing suspect], after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that Scott confronted [i.e., risking injury to the driver versus risk to innocent bystanders] . . . . We have little difficulty in concluding it was reasonable for Scott to take the action that he did.

*Scott,* 550 U.S. at 383-84.

In *Lewis* and *Scott,* the fact that police pursuit itself either prompted or exacerbated the suspect's reckless flight did not change the outcome. Similarly, in the case of *Onossian v. Block*, 175 F.3d 1169 (9th Cir. 1999), the suspect was "moving in and out of traffic at about 60 miles per hour on busy Santa Monica Boulevard in Los Angeles. . . . [After officers began to follow, the suspect] continued to drive erratically and recklessly. . . . Rather than stopping, [the

suspect] attempted to elude [the officers], maintaining speeds of up to 60 or 70 miles an hour. [¶] . . . [another officer] saw [the suspect's] Oldsmobile run a red light on Melrose Avenue." *Id.*

The fleeing Oldsmobile moments later struck and injured innocent bystanders, drivers in another car, who sued the Sheriff and County of Los Angeles for their injuries. Despite the allegations of speeding on city streets, reckless lane-changing, and running a red light, the case did not rise to the level of intentional harm or "shocking the conscience." The Ninth Circuit affirmed dismissal of the case.

*Onossian* was a bystander case and the first case in which the Ninth Circuit applied the Supreme Court decision in *Lewis* to police-chase liability. The Court considered whether police owed a higher or different duty toward innocent bystanders:

> [D]oes the *Lewis* test apply not only to harm caused to those pursued in a high speed chase, but also to harm caused to other drivers? . . . *Lewis* establishes a high threshold that must be overcome before someone injured in a police chase can show a due process violation. It might be contended that the duty of police toward innocent people is greater than to fleeing suspects, so that another driver or an innocent bystander should be able to recover from the police upon a lesser showing of recklessness or misconduct than that required by Lewis' "shock-the-conscience" test.

*Onossian,* 175 F.3d at 1171.

The Ninth Circuit in *Onossian* concluded from the Supreme Court's balancing test that the "intent to harm" standard applied both to claims by injured suspects and injured bystanders:

> At several points in the Court's opinion, the duty of the pursuing police officer is defined generally, without specific reference to the

> suspect being pursued. Perhaps most telling is the Court's description
> of the dilemma of a police officer who must make a "split-second"
> decision whether to pursue a suspect: "A police officer deciding
> whether to give chase must balance on one hand the need to stop a
> suspect and show that flight from the law is no way to freedom, and,
> on the other, the high-speed threat to everyone within stopping range,
> be they suspects, their passengers, other drivers, or bystanders." *Id*.,
> 523 U.S. at 853 . . . As we read the Court's opinion, if a police officer
> is justified in giving chase, that justification insulates the officer from
> constitutional attack, irrespective of who might be harmed or killed as
> a consequence of the chase.

*Onossian,* 175 F.3d at 1171.

The next Ninth Circuit case regarding police chases was *Bingue v. Prunchak*, 512 F.3d 1169, 1171 (9th Cir. 2008). In that case, an officer who joined a high-speed chase already in progress lost control, struck, and injured innocent bystanders driving in another car. Plaintiffs in *Bingue* argued that because Officer Prunchak decided to join a chase already in progress, he had time to consider his decision. For this reason, according to Plaintiffs, their case shouldn't be judged under the *Lewis* intent-to-harm standard because it "only applies to cases involving 'emergency and nearly instantaneous pursuits.'" *Bingue*, 512 F.3d at 1175. The Ninth Circuit rejected this argument:

> [H]igh-speed police chases, by their very nature, do not give the
> officers involved adequate time to deliberate in either deciding to join
> the chase or how to drive while in pursuit of the fleeing suspect. We
> hold, therefore, that *Lewis* requires us to apply the "intent to harm"
> standard to all high-speed chases.

*Id*. at 1177.

Considered together, the U.S. Supreme Court decisions in *Lewis* and *Scott* and the Ninth Circuit decisions in *Onossian* and *Bingue* demonstrate that whatever

the initial justification for the pursuit – whether it was speeding (as in *Lewis* and *Scott*), reckless driving (as in *Onossian*), or driving a stolen vehicle (as in *Bingue*) – police negligence, recklessness, or conscious disregard of safety is not sufficient to create constitutional liability for injuries to the suspect or bystanders. Intent to harm is required.

The present appeal squarely poses a question not directly answered by Supreme Court and Ninth Circuit precedents: If police intended to cause harm to the *suspect* by engaging in a high-speed pursuit, does that satisfy the *Lewis* intent-to-harm standard in a suit brought by innocent *bystanders*?[2] If the officer has evil intent that shocks the conscious when it comes to the suspect, does that matter if the plaintiffs are the bystanders? That is the key question in the present case.

The Ninth Circuit's decision in a police-shooting case supports the conclusion that in a Fourteenth Amendment case brought by a bystander, the relevant question is: Did the officer intend to harm the bystander?

In *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365 (9th Cir. 1998), Las Vegas police officers responded to a gunfight in a parking lot outside a bar shortly after midnight. When police arrived, a sizeable crowd was caught in the crossfire. Police shot and killed a man whom they believed to be one of the shooters. After the gunfight was over, investigation revealed that the deceased may have been an unarmed bystander.

The Ninth Circuit held in *Moreland* (based on *Lewis*) that police were not liable because they hadn't intended to kill an unarmed bystander. The Court explained:

---

[2] Appellants dispute that they intended to cause harm to anyone. However, applying the appropriate standard of review, the Court must accept as true the allegation of the First Amended Complaint that defendants had intended to harm the suspect. (ER 13.)

Appellants' Opening Brief                                                No. 23-4466

[P]olice officers often are required to "act decisively" and make decisions "in haste, under pressure, and frequently without the luxury of a second chance[.]"

[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed." [quoting Lewis, 523 U.S. at 853]

This rationale applies with equal force to the circumstances faced by [the Las Vegas police officers]. When [they] arrived at the Chances Arr bar, the gunfight in progress threatened the lives of 50 to 100 people who were trapped in the parking lot. In other words, [police] were required to "act decisively," "without the luxury of a second chance" to address a life-threatening situation. . . . In such circumstances, the argument for application of the "purpose to commit harm" standard is even more compelling than it was in *Lewis*[.]

*Moreland*, 159 F.3d at 372.

The scenario described by the Ninth Circuit shows that the officer intended to shoot and kill the suspected gunman in order to protect the large group assembled in the parking lot. The injury to the innocent bystander was unintentional, however, and thus the bystander's claim under the Fourteenth Amendment failed. Similarly, in *Rodriguez v. City of Fresno*, 819 F.Supp.2d 937 (E.D. Cal. 2011), police accidentally shot the plaintiff when they fired at her boyfriend. There was no mistake of identity, just an unintended injury to the girlfriend. In applying the *Lewis* intent-to-harm standard under the Fourteenth Amendment, the *Rodriquez* court made clear that the officer's intent to harm the boyfriend did not satisfy the intent requirement for the plaintiff's bystander claim. The court stated:

The court concludes that no reasonable trier of fact could find that [the officer] acted **toward Plaintiff** with malice or for the purpose of

causing harm unrelated to any legitimate law enforcement interest. (*Id.* at 950 [emphasis added].)[3]

At least two district courts in the Ninth Circuit have made clear that under *Lewis,* a bystander injured in a police chase must show that police intended to harm the bystander. In *Suit v. City of Folsom,* Case No. 2:16-00807 WBS, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016), Heather Suit was driving her daughter to school in Folsom, California. While they were on the road, Officer Kracher engaged in a pursuit of a suspect in a "non-violent" and "cold" misdemeanor case. The suspect had been "driving lawfully" before the pursuit but drove "in a reckless manner" after Officer Kracher began the chase. The pursuit ended when the suspect collided with the plaintiffs' vehicle.

The Court in *Suit* applied the *Lewis* intent-to-harm standard because "Ninth Circuit precedent . . . holds the intent to harm standard applies to all high-speed chases." *Id.* (citing *Bingue*, *supra,* 512 F.3d at 1177). The Court stated:

> In the court's August 8 Order, the court found plaintiffs' FAC did not allege sufficient facts to give rise to the inference that Officer Kracher acted with the ***intent to harm bystanders***. . . . The FAC did "not even allege the legal conclusion that Officer Kracher continued his pursuit of Carson with ***an intent or purpose to cause harm to plaintiffs***." The SAC fails for much of the same reasons.
>
>        \* \* \*

---

[3] *See also Claybrook v. Birchwell*, 199 F.3d 350, 360 (6th Cir. 2000) ("even if, as the plaintiffs have argued, the actions of the three defendant patrolmen violated departmental policy or were otherwise negligent, no rational fact finder could conclude, even after considering the evidence in the light most favorable to [plaintiff], that those peace enforcement operatives acted with conscience-shocking malice or sadism towards the unintended shooting victim"); *Childress v. City of Arapaho*, 210 F.3d 1154, 1158 (10th Cir. 2000) (rejecting Fourteenth Amendment claim by innocent bystanders wounded in a police shooting because "[n]owhere do plaintiffs present specific facts suggesting that the officers harbored an intent to harm them. Thus, there is no constitutional liability under *Lewis*.").

> Plaintiffs allege defendants were deliberately indifferent to nearby bystanders and "were further aware and appreciated the fact that [it would be a dangerous pursuit] due to the probable pursuit taking place through residential and school zones." (SAC ¶¶ 30-31.) Allegations that the officer acted negligently, recklessly and carelessly, grossly negligent[ly], or in a conscious disregard of plaintiffs' rights does not rise to the level of intent or purpose to cause harm. *Lewis*, 523 U.S. at 854; *accord Bingue*, 512 F.3d at 1174
>
> Plaintiffs have failed to allege that Officer Kracher, the City, or the Department acted with the ***purpose to harm plaintiffs***. Because the SAC lacks even a single factual allegation from which the court could reasonably infer that Officer Kracher acted with a purpose to harm unrelated to a legitimate law enforcement objective, plaintiffs fail to allege a cognizable violation of the Fourteenth Amendment necessary to sustain a § 1983 claim against Officer Kracher, the City, and the Department.

*Suit v. City of Folsom*, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016) (emphasis added); *see also Newells v. Cty. of L.A.*, No. 2:19-cv-08384-FLA (JCx), 2022 U.S. Dist. LEXIS 88826, at *20 (C.D. Cal. Apr. 22, 2022) (Bystanders' Fourteenth Amendment claim failed due to lack of "evidence in the record to establish that Deputies Hanley and Warner acted with the ***intent to cause Plaintiffs or Decedent harm***, including when [the officers] left the intersection to pursue the RAV4." [emphasis added].)

Federal district courts and courts of appeals in other circuits have reached the same conclusion in police chase cases. In *Thaer Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232 (10th Cir. 2022), plaintiff brought a Fourteenth Amendment claim against police based on injuries he sustained when an armed fleeing suspect crashed into his shop and police opened fire on the suspect. The Tenth Circuit concluded that the *Lewis* "intent to harm" standard applied. The Court affirmed dismissal of the *Mahdi* complaint:

> Our precedent . . . requires that the intent to harm be directed at the plaintiff, not a third person. In *Childress v. City of Arapaho*, 210 F.3d 1154, 1155 (10th Cir. 2000), the plaintiffs were carjacked by two escaped prisoners who then held plaintiffs hostage. Attempting to capture and arrest the prisoners, police fired at the vehicle and inadvertently struck the plaintiffs. . . . [We] concluded that the defendants did not violate the plaintiffs' Fourteenth Amendment rights because they did not have the intent to hurt the hostages. . . . [*see also*] *Radecki v. Barela*, 146 F.3d 1227, 1232 (10th Cir. 1998) (survivors of innocent bystander killed during police-suspect struggle have no Fourteenth Amendment claim because they did not allege that defendant officer acted with intent to harm the bystander).

*Thaer Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232, 1239 (10th Cir. 2022)

Similarly, a district court in the Eastern District of Louisiana ruled:

> The plaintiff does not allege that the defendant officers intended to physically harm bystanders, such as Ms. Herbert, when they engaged in the unauthorized police chase. At most, the complaint alleges that the defendant officers knew or should have known that substantial harm could occur to bystanders such as Ms. Herbert as a result of their actions, and that they were negligent in their pursuit of the suspects. Such a claim for negligently inflicted harm does not constitute a violation of Fourteenth Amendment due process. *See Lewis*, 523 U.S. at 849.

*Herbert v. New Orleans City*, No. 20-952, 2020 U.S. Dist. LEXIS 142031, at *19-20 (E.D. La. Aug. 10, 2020).

Neither the Supreme Court nor the Ninth Circuit has expressly addressed the issue of suspect versus bystander when it comes to intent in a Fourteenth Amendment case.

**B.** **The District Court Erred in Finding that the Complaint Stated a Claim under the Fourteenth Amendment Without an Allegation that the Police Intended to Harm these Specific Bystander Plaintiffs.**

The district court expressly ruled that an officer's evil intent to harm the suspect will support a bystander claim under the Fourteenth Amendment.

> Upon review of the cases analyzing *Lewis* in which bystanders were injured or killed, the Court finds that, if Plaintiffs allege a purpose to harm *anyone* unrelated to the legitimate object of arrest, then they have satisfied the element of arbitrary conduct shocking to the conscience for their claim for violation of their Fourteenth Amendment rights. (ER 96.)

The court based its conclusion at least in part on "a strong inference that [defendants] did not engage in the high-speed chase for a legitimate law enforcement purpose – to catch and arrest the suspect." (ER 95.) The district court drew this inference from the supposed fact (which is not expressly stated anywhere in the FAC) "that the Individual Officers left the scene without arresting the suspect after the chase ended." (ER 95.)

The district court's reasoning finds no support in the case law. Neither the Supreme Court nor the Ninth Circuit has created categories of police chases based on whether they do (or do not) further the legitimate objects of capture and arrest. As the Third Circuit observed:

> Nothing in *Lewis* suggests that courts are free to second-guess a police officer's decision to initiate pursuit of a suspect so long as the officers were acting "in the service of a legitimate governmental objective," *id.* at 1716, here, to apprehend one fleeing the police officers' legitimate investigation of suspicious behavior.

*Davis v. Twp. of Hillside*, 190 F.3d 167, 170 (3d Cir. 1999) (quoting *Lewis,* 523 U.S. at 846).

In *Davis,* the Third Circuit rejected the argument that "deliberate ramming" of the suspect's vehicle could allow "an inference that the police acted with the intent to cause physical injury":

> *Lewis* does not permit an inference of intent to harm simply because a chase eventuates in deliberate physical contact causing injury. Rather, it is "conduct intended to injure in some way *unjustifiable by any government interest* [that] is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 1718 (emphasis added). It is not disputed that the ramming occurred in the course of the chase. That physical contact of some sort between the pursued and pursuing vehicles might occur in the course of a high-speed chase, particularly at its conclusion, is foreseeable. It would undermine *Lewis'* premise to limit liability to conscience-shocking conduct if courts were to segment a high-speed chase and examine elements in isolation from each other.

*Davis,* 190 F.3d at 171 (quoting *Lewis,* 523 U.S. at 849).

By stating that "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the shocks-the-conscience test," *Lewis*, 523 U.S. at 836, the Supreme Court was not inviting district courts to evaluate a police chase and decide (as the trial court did in the present case) whether or not police "engage[d] in the high-speed chase for a legitimate law enforcement purpose." (ER 93)

The district court's inquiry in this case into whether the chase was initiated for a proper purpose flies in the face of the *Lewis* Court's recognition that the officer on the scene must make "split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving" and balance "the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other [hand], the high-speed threat to everyone within stopping range, be they suspects, their passengers, other drivers, or bystanders." *Lewis,* 523 U.S. at 853.

Parsing the *Lewis* and Ninth Circuit opinions creates a simple decision tree: (1) Was the injury caused by a police chase? If yes, (2) was the subject of the chase a criminal suspect (e.g., speeder, reckless driver, or illegal sideshow participant)?[4] If yes, (3) did the defendant officer act with the intent to injure the specific plaintiffs asserting a violation of their substantive due process rights?

Only where the court answers all three questions in the affirmative can a police chase claim under the Fourteenth Amendment be sustained. The district court strayed from this template.

The Court in *Onossian* noted that, at several points in *Lewis,* "the duty of the pursuing police officer is defined [by the Supreme Court] generally, without specific reference to the suspect being pursued." *Onossian*, 175 F.3d at 1171. The Ninth Circuit understood that the reasoning in *Lewis* was meant to apply generally to police chase cases. *Lewis* removed from the lower courts the need to engage in a case-by-case, fact-based balancing of the factors already weighed and decided by the Supreme Court.

From this observation, the Ninth Circuit concluded:

> As we read the Court's opinion [in *Lewis*], if a police officer is justified in giving chase [because the subject of pursuit is a criminal suspect], that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase [except in the case of an officer acting with "a purpose to cause harm unrelated to the legitimate object of arrest"].

*Onossian*, 175 F.3d at 1171.

---

[4] As alleged in the complaint, the subject of the police pursuit was a criminal "suspect from a car rally called a 'sideshow.'" (ER 07) A sideshow is "an illegal event where motorists perform stunts with cars or motorcycles in public streets or vacant lots." *T.D.P. v. City of Oakland*, No. 3:16-cv-04132-LB, 2019 U.S. Dist. LEXIS 29624, at *4 (N.D. Cal. Feb. 24, 2019).

The Ninth Circuit acted on the understanding expressed in *Onossian* when it expanded the application of the *Lewis* intent-to-harm standard of fault – "a high threshold," *id.* at 1171 – to all persons injured in police chases, whether fleeing suspects or innocent bystanders (including other drivers). *Id.* at 1172.

In the Ninth Circuit's next police-chase decision, *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008), the Court reigned in district courts by holding that the *Lewis* standard applied to all police car chases. This removed from the district courts the need to decide on a case-by-case basis whether the lower deliberate-indifference standard of fault applied to some police chases based on how much time the officer had to deliberate and reflect before giving chase.

> We conclude that high-speed police chases, by their very nature, do not give the officers involved adequate time to deliberate in either deciding to join the chase or how to drive while in pursuit of the fleeing suspect. We hold, therefore, that *Lewis* requires us to apply the "intent to harm" standard to all high-speed chases.

*Bingue*, 512 F.3d at 1177.

Adding another level of analysis – did the officer pursue the suspect for a reason unrelated to a legitimate law enforcement objective? – would allow district courts to pull back from the uniform application of the *Lewis* standard to all police chase cases, as directed in *Onossian* and *Bingue*.

### C.    The Decisions on which the District Court Relied Do Not Support the Trial Court's Order.

The district court found only three district court cases (one from California, two from Maryland) to support its decision. None of the cited cases is apposite or persuasive. The cases are: *McGowan v. County of Kern*, 2018 WL 2734970 (E.D. Cal. June 7, 2018); *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283 (D.

Md. 2020); and *Simmons v. Baltimore City Police Dep't.*, 2021 WL 3418840, at
*14 (D. Md. Aug. 5, 2021). (ER 96.)

### 1. *McGowan v. County of Kern*

Starting with the Eastern District of California case (discussed by the district
court at ER 96-97), *McGowan v. County of Kern*, 2018 WL 2734970 (E.D. Cal.
June 7, 2018) is irrelevant the issues on appeal. Police-chase cases fall into one of
two groups: claims by a fleeing suspect or claims by innocent bystanders.
*McGowan* is neither. In *McGowan,* a Kern County Sheriff's deputy, was speeding
to respond to another deputy's request for backup for a disturbing-the-peace and
resisting-arrest incident at a saloon. On the way, the deputy reached speeds of 85
miles per hour. He ran a red light without slowing and crashed into the driver's
side door of a vehicle lawfully in the intersection. The driver of the car struck by
the deputy died. The decedent's estate sued the county and the deputy.

*McGowan* is not a police pursuit case. The decedent in *McGowan* was
neither a fleeing suspect nor a bystander. She was the only other participant in the
T-bone collision. The main issue in the case (according to *McGowan* itself) was
what facts and inferences were relevant to showing the deputy's purpose (or lack
of purpose) to harm the decedent. *Id.* at * 21-28. There was no issue in *McGowan*
as to how the deputy's intent (or lack of intent) to harm a third party (a fleeing
suspect) related to the defendants' liability to the plaintiff. That is the issue in this
case.

The district court cited *McGowan* for the proposition that police may be
liable for injury inflicted without a "legitimate law enforcement objective." (ER
95). But again, as *McGowan* was neither a bystander nor a police chase case,
*McGowan*'s endorsement of that proposition has little bearing on this appeal.

### 2. *Johnson v. Baltimore Police Dep't*

In support of its denial of Appellants' motion, the district court discussed *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283 (D. Md. 2020) at page 94 of the Excerpts of Record. The *Johnson* complaint was filed against the Baltimore Police Department, two plains clothes officers, and others caught up in a wider corruption scandal that resulted in their (and other officers') federal criminal indictments. In a related action, the U.S. Department of Justice brought a civil enforcement action that led the Baltimore Police Department to enter into a federal consent decree for civil rights violations and officer misconduct involving illegal guns and drugs. *Id.* at 292-93. Against this back drop, the plaintiffs asserted a violation of the Fourteenth Amendment rights when their car was struck in an intersection by a second car that was being chased by the two corrupt cops at the center of the federal criminal and civil investigations.

The *Johnson* plaintiffs alleged that two plain clothes officers in unmarked cars attempted to "box in" a parked car whose occupants were not engaged in criminal activity. The two plain clothes officers approached the parked car with guns drawn. "[N]either identified himself as a police officer." *Id.* at 292. Believing they were about to be robbed," the driver of the parked car managed to speed away. A reckless chase ensued. The two unmarked police cars "sped after them down residential streets, running stop signs in five different intersections, without ever activating their vehicles' emergency [lights and sirens]." *Id.* at 301-02. The car being chased ran a stop sign and collided with plaintiffs' vehicle in the intersection. *Id.* at 292. After the crash, the undercover cops planted 32 grams of heroin in the car that they had chased. The officers filed false police reports to justify their pursuit. *Id.*

As the district court in *Johnson* noted, based on the salacious facts involving corrupt motives and probable cause manufactured through deceit and planted

drugs, "if there was a sound basis in law for applying a 'deliberate indifference' standard [instead of the *Lewis* intent-to-harm standard of fault] in some police chase cases, the instant case would likely qualify." *Johnson,* 452 F. Supp. 3d at 302 n.5.

Instead of applying the lower standard of fault, the *Johnson* court held that plaintiffs satisfied the intent-to-harm standard based on the inference that the officers intended to harm the occupants of the car fleeing the two unmarked police cars.

> An officer's actions motivated by an intent to harm a suspect are no less conscience shocking, whether the resulting harm accrues to the intended target (the suspect), or an innocent third party.

*Johnson,* 452 F. Supp. 3d at 303 (quoted in the district court's Order at ER 96).

The *Johnson* court did not cite any case in which another court (like the district court below) allowed a bystander's claim based only on an allegation that the officer intended to harm the fleeing suspect. Most of the cases *Johnson* cited support Appellants' position.

For example, in *Ellis v. Ogden City*, 589 F.3d 1099 (10th Cir. 2009) (cited at *Johnson,* 452 F. Supp. 3d at 301, 302), the Tenth Circuit endorsed the legal proposition at the heart of Appellants' argument. The Tenth Circuit held that the bystander's Fourteenth Amendment claim was properly dismissed because the complaint failed to allege the chasing officer intended to harm the fleeing suspect and because:

> The [plaintiff's] estate failed to allege sufficient facts to support an intent to physically harm or worsen the legal plight *of the injured party* [i.e., the bystander].

*Ellis,* 589 F.3d at 1103 (emphasis added).

In *Helseth v. Burch*, 258 F.3d 867 (8th Cir. 2001) (cited at Johnson, 452 F. Supp. 3d at 302), Timothy Helseth, the injured bystander plaintiff, argued that Officer Burch should be held liable because he had an "intent to cause harm unrelated to the legitimate object of an arrest." *Id.* at 872. The argument was based on testimony by the fleeing suspect that "he felt terrorized by Burch's aggressive pursuit." *Id.* This argument echoes the district court order in the present case. (ER 95.) The Eighth Circuit rejected this theory, stating the subject of Officer Burch's pursuit:

> . . . was a fleeing criminal, whose irresponsible high-speed driving endangered countless citizens and ultimately killed one innocent bystander and maimed another, Timothy Helseth. Burch and the other police officers . . . were not guilty of a conscience-shocking intent to harm. [¶] Society could reasonably decide that an innocent bystander injured during such high-speed police pursuits should be compensated from the public coffers. But that is a legislative decision. There was no violation of Helseth's rights under the Due Process Clause.

*Helseth,* 258 F.3d at 872.

### 3.    *Simmons v. Baltimore City Police Dep't*

The last of the three cases on which the trial court relied was *Simmons v. Baltimore City Police Dep't*, 2021 WL 3418840, at *14 (D. Md. Aug. 5, 2021), discussed at page 97 of the Excerpts of Record. The district court cited *Simmons* for its ruling that the innocent bystander plaintiffs had "adequately alleged the type of conscience-shocking behavior that *Lewis* requires" because they alleged the officers "were intentionally misusing their vehicles by engaging in a pursuit [of a suspect] that was not necessary in its purpose nor in the manner that it was executed." *Simmons*, 2021 WL 3418840, at *14. (ER 95)

In other words, *Simmons* found officers could violate the Fourteenth Amendment by (1) carrying out an unnecessary pursuit and/or (2) carrying out the

pursuit in a "manner" that was unnecessary. This proposition is internally inconsistent. Whether a police pursuit of a suspect may be considered necessary or unnecessary is a question to be answered from police policies, customs and practices. In a Fourteenth Amendment case, whether the conduct of a pursuit conformed to local policies is irrelevant to whether actions by the officer "shock the conscious" or involved an intent or purpose to harm.

> Regardless whether [Deputy] Smith's behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983.

*Lewis*, 523 U.S. at 855.

> [P]laintiffs have shown, at most, evidence that the pursuing officer may have acted imprudently in continuing his pursuit over roads with which he was not very familiar or in driving at too high a speed. Prudence and imprudence are the subject of negligence law, not due process, and this claim cannot succeed under § 1983.

*Fulkerson v. Lancaster*, 801 F. Supp. 1476, 1481 (E.D. Pa. 1992), *aff'd Fulkerson v. Lancaster*, 993 F.2d 876 (3d Cir. 1993).

The court's analysis in *Simmons* of the *Lewis* intent-to-harm standard is superficial and contrary to the Supreme Court's exposition of the standard of fault in police chase cases.

**II. THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE CONSTITUTIONAL RIGHT RECOGNIZED BY THE DISTRICT COURT WAS NOT CLEARLY ESTABLISHED.**

**A. The District Court Did Not Address the "Clearly Established" Prong Which Was Necessary for the Qualified Immunity Analysis.**

If this Court finds that the First Amended Complaint adequately pleads a constitutional violation, it must still complete the second prong of the qualified

immunity analysis: Were the constitutional rights the defendants allegedly "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known[?]" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The First Amended Complaint alleged that "the Oakland officers purposely caused the ***suspect*** to lose control of his vehicle and crash into cars and motorcycles parked in front of a busy late night taco truck on International Boulevard." (ER 08 [emphasis added]) Defendants' motion turned on pure questions of law. Can a bystander injured by a fleeing suspect maintain a Fourteenth Amendment claim against the pursuing police officers without alleging that the officer intended to harm the bystander? Would the police officer's intent to harm the suspect involved in a police chase satisfy the requirements of *Lewis* for a claim by the injured bystander against police?

The district court's Order denying qualified immunity ruled that the *Lewis* intent-to-harm standard was satisfied by the allegation that the officers acted with intent to harm the fleeing suspect. (ER 99.) Since *Lewis,* the district court's order was the first and the only decision in this Circuit affirming a bystanders' Fourteenth Amendment claim stemming from a police chase.

Two other district court decisions (*Suit v. Folsom* in the Eastern District of California and *Newells v. County. of L.A.* in the Central District of California) reached the opposite conclusion by requiring bystanders to plead and prove that the officer intended to harm bystanders. Based on *Lewis,* the district courts in *Suit* and *Newell* dismissed the claims because the complaints failed to allege that officers acted with an intent to harm the ***plaintiffs*** whose vehicles were struck by fleeing criminal suspects.

This Court and the Supreme Court have yet to decide between the two positions. If the Court reaches and decides the clearly-established prong of the qualified immunity analysis, it will be writing on a blank slate. The district court's entire discussion of qualified immunity was one paragraph (five sentences) and did not mention the phrase "clearly established":

> Abdelaziz argues that he is entitled to qualified immunity on Plaintiffs' claims for violation of their Fourteenth Amendment rights. However, his arguments are premised on arguments above that the Court rejected – that the intent to harm must be directed at the bystanders and that the Individual Defendants had no obligation to render or procure medical aid because they did not create the danger. The Court finds that, based on the facts alleged by Plaintiffs, the Individual Defendants are not entitled to qualified immunity. *See Porter*, 546 F.3d at 1140 ("whether Osborn is entitled to qualified immunity . . . turns on whether the Porters can present facts . . . that would justify a jury finding that Osborn acted with an unconstitutional purpose to harm"). Therefore, the Court DENIES Abdelaziz's motion on this ground. (ER 101.)

This Court reviews a denial of qualified immunity *de novo* and may reverse the district court's order and direct that the motion be granted. *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1131-32 (9th Cir. 2018). For the reasons set out below, the court should reverse the district court, grant the motion, and remand with an order to dismiss the action.

A right is "clearly established" only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds, Pearson*, 555 U.S. 223. "'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017). It "must be 'particularized' to the facts of the case." This usually requires "existing precedent" from the time of

the incident that "'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam).

"[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Plaintiffs in the opposition to the qualified immunity motion carry the burden to identify precedent on point that shows the constitutional right at issue was clearly established. *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022). The court must identify a case on point before it can deny qualified immunity. *White v. Pauly*, 580 U.S. at 79. "[W]here . . . there is no binding Ninth Circuit precedent" on an issue, the Court may "look to whatever decisional law is available, including relevant decisions of other circuits." *Entler v. Gregoire*, 872 F.3d 1031, 1044 (9th Cir. 2017).

> [In] rare cases . . . the constitutional right at issue is defined by a standard that is so "obvious" that we must conclude . . . that qualified immunity is inapplicable, even without a case directly on point.

*A.D. v. California Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013). But this is truly rare. For example, in one case, this Court held that it was not obviously unconstitutional for officers to steal $175,000 in seized property. *Jessop v. City of Fresno*, 936 F.3d 937, 942 (9th Cir. 2019).

The Supreme Court has held that an officer's conduct only "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).)

In this case, there is no binding Ninth Circuit authority on the central issue: Is a bystander injured in a police pursuit required to plead and prove that that police officer acted with an intent to harm the bystander? In the trial court,

plaintiffs identified the case of *A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013), for the proposition that "it was clearly established law when Markgraf shot Eklund that acting with the purpose to harm unrelated to a legitimate law enforcement objective violated due process." *Id.* at 455.

 *A.D.* is not a bystander claim and therefore does not involve the major issue in this case. Ms. Elklund was shot and killed by a California Highway Patrol officer after a high-speed chase across the San Francisco Bay.. In *A.D.*, her minor children filed a complaint for violation of the due process clause under the Fourteenth Amendment based on her death. Leading up to the shooting, the CHP began pursuing her in Oakland, California, because she was driving a stolen car, at high speed, at night, without headlights, on city streets. They followed her across the Bay Bridge to San Francisco. The chase continued until Karen Elklund drove to the end of a cul de sac and was cornered by Officer Markgraf and four or more other CHP and police cars. Driving in reverse, she rammed Markgraf's CHP vehicle three times. *Id.* at 451-52.

 Ms. Elklund was still in the car when Officer Markgraf emptied his firearm – 12 rounds – into the driver's side window, killing her. At trial, the jury returned a verdict against the defendants. On post-trial appeal from the denial of qualified immunity, the Ninth Circuit found:

> By March 23, 2006–the day that Markgraf shot Eklund–it was clearly established that a police officer, who acts with the purpose to harm unrelated to a legitimate law enforcement objective, violates the rights protected by the Fourteenth Amendment due process clause.

*A.D.*, 712 F.3d at 454.

 The incident started as a high-speed chase, but *A.D.* is a shooting case. The officer shot a suspect. The relationship between the defendant's intent to harm and

the plaintiff's injury is obvious and direct. She was a direct victim, not a bystander who suffered an unintentional injury.

Among the handful of district courts in this circuit and others that decided the issue, three dismissed the bystander's due process claims because the defendant did not intend to harm the plaintiff, and two allowed these claims to proceed without intent to harm the bystander. As noted above, several circuit court decisions from the Tenth Circuit held that car-chase bystander was required to allege the defendant acted with intent to harm the plaintiff.

While these cases may not show a clear consensus, the outcomes favor the defendant officers over the injured bystanders. This state of the law shows that on June 25, 2022, a reasonable officer in this circuit would not have known that his conduct in pursuing a criminal suspect with an intent to harm the suspect would violate the bystanders' due process rights.

## III.   THE COMPLAINT DOES NOT STATE A FOURTEENTH AMENDMENT CLAIM BASED ON THE OFFICERS' ALLEGED FAILURE TO RENDER EMERGENCY AID OR CALL FOR MEDICAL HELP.

Plaintiffs rely on the state-created-danger doctrine to establish a violation of substantive due process rights based on the alleged failure to stop, render emergency aid, and call for medical help. This legal theory is unavailing. With only two exceptions, "the Fourteenth Amendment does not confer an affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989).

The first exception is the special-relationship doctrine. The latest Ninth Circuit ruling on the subject makes clear that the special-relationship doctrine

applies only to those in state custody such as "incarceration, institutionalization, or other similar restraint[s] of personal liberty." *Murguia v. Langdon*, 61 F.4th 1096, 1109 (9th Cir. 2023) (quoting *DeShaney*, 489 U.S. at 200). The special-relationship doctrine does not apply here because the plaintiffs were not in custody when they were injured.

The second exception, the state-created-danger doctrine, applies when a state actor places a person in a position of "actual, ***particularized*** danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (emphasis added). In the context of the state-created-danger doctrine, "particularized" means the danger "is directed at a specific victim." *Sinclair v. City of Seattle,* 61 F.4th 674, 682 (9th Cir. 2023).[5] The fleeing suspect's speed and reckless driving threatened the safety of the public at large in proximity to the route of the chase. The officers' conduct did not create a danger *particularized* to the plaintiffs in this case. There is accordingly no substantive due process violation.

To be clear, the allegations that the officers were aware bystanders had been seriously injured and failed to call for medical assistance would be (if true) deplorable conduct. But the longstanding contours of the Fourteenth Amendment are clear. The Constitution does not duplicate state tort liability and does not provide for redress of injuries based solely on a wrongful state action and 'but for' causation. "[E]ven if the complaints state good claims under general tort principles, it does not follow that they state good claims under section 1983 just because the

---

[5] *See also Est. of Romain v. City of Grosse Pointe Farms,* 935 F.3d 485, 491-92 (6th Cir. 2019) (the state-created danger must be "specific to plaintiff")*; Villanueva v. City of Scottsbluff*, 779 F.3d 507, 512 (8th Cir. 2015) (the danger was directed at plaintiff individually or as a member of a "limited and definable group"); *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014) (same).

defendants are public officers." *Jackson v. City of Joliet*, 715 F.2d 1200, 1203 (7th Cir. 1983).

Plaintiffs contend that the high-speed chase evidenced deliberate indifference to the safety of those along the path of the pursuit, plaintiffs were foreseeably injured when the suspect crashed, and their injuries were exacerbated when officers did not immediately call for medical help. The argument has surface appeal but fails under scrutiny.

Based on a review and discussion of nearly every Ninth Circuit decision on the subject, the Court in *Sinclair* observed, "In each of those cases, the danger was particularized to the plaintiffs." (61 F.4th at 683.) Every case stemmed directly from an encounter between police (or another state actor) and the plaintiff. For example:

- In *Hernandez v. City of San Jose*, officers "shepherded [plaintiffs] into a violent crowd of protestors and actively prevented them from reaching safety." 897 F.3d 1125, 1138 (9th Cir. 2018).

- In *Munger v. City of Glasgow Police Department*, an officer expelled the inebriated plaintiff from a bar into the freezing night with nowhere to go, and he later succumbed to hypothermia. 227 F.3d 1082, 1086-87 (9th Cir. 2000).

- In *Wood v. Ostrander*, troopers stopped a car, arrested the driver (who was taking the plaintiff to her house), and left Ms. Wood stranded in a high crime area at 2:30 a.m. where she was subsequently raped. 879 F.2d 583, 590 (9th Cir. 1989).

- In *L.W. v. Grubbs*, a supervisor at a state facility assigned a female nurse to work alone with a male sex offender with a history of violent assaults against women. The court ruled the supervisor could be held

41

liable after the inmate raped and kidnapped the plaintiff. 974 F.2d 119 (9th Cir.1992).

By contrast, in *Sinclair,* the danger to plaintiff's son (who was shot and killed by a third party) arose from the City's action in removing all officers from a particular police precinct due to large-scale protests. In rejecting the Fourteenth Amendment claim, the *Sinclair* Court noted that neither police nor the City "had any previous interactions with her son, directed any actions toward him, or even knew of her son's existence until he was killed." *Sinclair,* 61 F.4th at 683. Nor did the officers in this case have any knowledge of plaintiffs before the crash. At the scene, the defendants did not by any affirmative conduct hinder or prevent other first responders from rendering aid and assistance.

As cruel and absurd as it sounds, unless injured persons are in state custody, an officer on the scene would have zero liability under the Fourteenth Amendment for intentionally refusing to call an ambulance or render basic first aid. "[N]othing in the Constitution requires governmental units to act when members of the general public are imperiled." *Jackson v. Byrne*, 738 F.2d 1443 (7th Cir. 1984). By contrast, officers who through their own affirmative conduct delay or prevent medical treatment would be liable. *See Maxwell v. County of San Diego,* 708 F.3d 1075, 1082 (9th Cir. 2013) (police officer who prevented a gunshot victim from leaving for the hospital in a waiting ambulance was liable under the Fourteenth Amendment for her death); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (police officers who cancelled a 911 call, dragged the man into an empty house, and locked him alone inside with knowledge of his serious medical needs would violate the Fourteenth Amendment).

To borrow the words of the Ninth Circuit, the Court must ask "whether the officers left the [plaintiffs] in a situation that was more dangerous than the one in

which they found [them]." *Munger*, 227 F.3d at 1086. Officers who encounter victims who have already suffered injuries and leave them without rendering aid have not, through affirmative action, increased the peril.

Would it be *proper* for the first officers on the scene of an accident to fail to summon medical care? Absolutely not. But would it be a violation of the Fourteenth Amendment to fail to do so? No.

Would the same conduct become a Fourteenth Amendment violation if the first officers on scene had just been chasing the suspect who crashed into the victims? Also no, because the Supreme Court and Ninth Circuit have reviewed numerous police chases and determined that high-speed chases may be careless, reckless, or even deliberately indifferent to public safety and may cause serious injury of death to bystanders. But these scenarios do not cross the line to become unconstitutional unless the officers had a specific intent to harm the bystanders.

As the Supreme Court stated in *Lewis,* the risks were created by the fleeing suspect, not the officer engaged in pursuit.

> [Deputy] Smith was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause Willard's high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes.

*Lewis*, 523 U.S. at 855.

## IV.   THE OFFICERS WOULD NOT HAVE VIOLATED CLEARLY ESTABLISHED LAW IF THEY FAILED TO RENDER AID AND ASSISTANCE AT THE SCENE OF THE ACCIDENT.

The well-established rules regarding first aid or medical care at the scene of an accident are as follows. First, "the Fourteenth Amendment does not confer an

affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, *supra,* 489 U.S. at 196. The sole exception to this rule (for victims who are not in state custody) is when the officers hinder, delay, or prevent persons with known serious injuries from receiving medical attention. *See, e.g., Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006).

In light of these precedents – which are clearly established – the defendant officers were not on notice that failure to stop, render emergency aid, or summon medical assistance would violate the plaintiffs' due process rights. There is no constitutional duty to summon medical assistance at the scene of the accident. Moreover, no case has held that the officers would have such a constitutional duty if they had been chasing the suspect who caused the bystander injuries. The officers are therefore entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court should reverse the order denying the motion and grant the motion.

Dated:  March 13, 2024

NEWDORF LEGAL
David B. Newdorf

By:_____

DAVID B. NEWDORF

*Attorney for Defendant/Appellant*
*Walid Abdelaziz*

KAUFMAN DOLOWICH & VOLUCK, LLP
Aimee G. Hamoy

/s/ Aimee G. Hamoy
By:_____

AIMEE G. HAMOY
*Attorneys for Defendant/Appellant*
*Jimmy Marin-Coronel*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-4466

I am the attorney or self-represented party.

**This brief contains** 12,315 **words,** including [ ] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [ ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ David Newdorf **Date** 3/13/24

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                    *Rev. 12/01/22*