**23-4466**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**ESTATE OF DECEDENT LOLOMANIA SOAKAI, LAVINIA SOAKAI, DANIEL FIFITA, SAMIEUELA FINAU, and INA LAVALU,**

Plaintiffs and Appellees,

vs.

**WALID ABDELAZIZ and JIMMY MARIN-CORONEL.**

Defendants and Appellants.

Appeal from the United States District Court
Northern District of California
Hon. Sallie Kim, U.S. Magistrate Judge
Case No. 3:23-cv-00381 SK

**APPELLANTS' EXCERPTS OF RECORD**

David B. Newdorf
Newdorf Legal
630 Thomas L. Berkley Way, Suite 103
Oakland, California 94612
Telephone:  (415) 357-1234
david@newdorf.com
*Attorney for Defendant/Appellant*
*Walid Abdelaziz*

Aimee G. Hamoy
Kaufman Dolowich & Voluck, LLP
180 Grand Avenue, Suite 995
Oakland, California 94612
Telephone: (510) 630-7646
Ahamoy@Kdvlaw.Com
*Attorneys for Defendant/Appellant*
*Jimmy Marin-Coronel*

# EXCERPTS OF RECORD

# INDEX

*Estate of Decedent Lolomania Soakai, et al.*
*v. Walid Abdelaziz, Jimmy Marin-Coronel*

| Page | Document | Doc. # | Date |
|------|----------|--------|------|
| 3 | First Amended Complaint for Damages | 17 | 4/17/2023 |
| 17 | Order Granting Request to Amend Briefing Schedule | 58 | 9/28/2023 |
| 18 | Defendant Walid Abdelaziz's Motion For Judgment on the Pleadings; Memorandum of Points and Authorities | 59 | 9/28/2023 |
| 40 | Defendant Jimmy Marin-Coronel's Notice of Motion and Motion for Joinder of Defendant Walid Abdelaziz's Motion for Judgment on the Pleadings | 66 | 10/19/2023 |
| 45 | Plaintiffs' Opposition to Defendant Walid Abdelaziz's Motion for Judgment on the Pleadings | 67 | 10/30/23 |
| 72 | Defendant Walid Abdelaziz's Reply Brief in Support of Motion for Judgment on the Pleadings; Memorandum of Points and Authorities | 68 | 11/7/2023 |
| 87 | Defendant Jimmy Marin-Coronel's Joinder of Defendant Walid Abdelaziz's Reply to Plaintiffs' Opposition to Motion for Judgment on the Pleadings | 69 | 11/7/2023 |
| 91 | Order on Motion to Dismiss and Motion for Judgment on the Pleadings | 74 | 11/28/2023 |
| 106 | Defendants Walid Abdelaziz's and Jimmy Marin-Coronel's Joint Notice of Appeal to the United States Court of Appeals for the Ninth Circuit | 76 | 12/27/2023 |
| 126 | U.S. District Court, California Northern District (San Francisco) CIVIL DOCKET FOR CASE #: 3:23-cv-00381-SK | -- | |

**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**TREVA STEWART, ESQ., SBN 239829**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TStewart@LawyersFTP.com

Attorneys for PLAINTIFFS

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DECEDENT LOLOMANIA SOAKAI; LAVINIA SOAKAI, an individual and personal representative of ESTATE; DANIEL FIFITA, an individual; SAMIEUELA FINAU, an individual; INA LAVALU, an individual;<br><br>    Plaintiff(s)<br><br>v.<br><br>CITY OF OAKLAND, a municipal corporation; WALID ABDELAZIZ, in his individual capacity as a police officer for the CITY OF OAKLAND; JIMMY MARIN-CORONEL, in his individual capacity as a police officer for the CITY OF OAKLAND; and DOES 1-50, inclusive.<br><br>    Defendant(s). | Case No.: 3:23-cv-00381-SK<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br>(42 U.S.C. § 1983)<br><br><br>JURY TRIAL DEMANDED |

*(sidebar)* POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

FIRST AMENDED COMPLAINT
1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

**INTRODUCTION**

1.       On June 25, 2022, LAVINIA Soakai, Lolomania "Lolo" Soakai, Ina Lavalu and Daniel Fifita were returning home from a family graduation ceremony and stopped at a popular taco truck in Oakland. As they waited for the food at their cars, two Oakland officers had commenced an unauthorized "ghost chase" of a suspect from a car rally.

2.       A "ghost chase" is a vehicular pursuit of a suspect by officers wherein the officers do not activate their sirens and lights or  radio in the chase to dispatch because their department prohibits such pursuits due to the risks to the lives of the suspect and innocent bystander.

3.       The two Oakland officers, JIMMY MARIN-CORONEL and WALID ABDELAZIZ, sped after the suspect through highly populated and congested surface streets in Oakland at speeds in excess of 60 mph, and reports of even 100 mph. Foreseeably, the Oakland officers caused the suspect to lose control of his vehicle and crashed into cars and motorcycles parked in front of a busy late night taco truck on International Boulevard – a main city thoroughfare.

4.       The suspect's car smashed into a row of parked cars and threw a parked motorcycle into the air. The car also struck Lolo fwho was standing next to one of the parked cars fatally wounding him. Tragically, Lolo took his last breaths in front of his mother, LAVINIA Soakai. LAVINIA, who suffered a broken back in the collision was paralyzed with pain. She cried desperately for emergency medical help for her son Lolo, as she watched his life slip away.

5.       Daniel Fifita and Ina Lavalu were sitting in an SUV that was parked right behind the car Lolo was standing next to when he was struck. The suspect's car violently hit their SUV rendering it a total loss. Mr. Fifita and Ms. Lavalu suffered severe physical injuries as a result of the

FIRST AMENDED COMPLAINT
2

collision. The couple sought and received emergency medical care in order to address their physical injuries and both had difficulty walking without pain for the next several weeks.

6.      Mr. Samieuela Finau was standing next to his parked motorcycle alongside the taco truck waiting for his food order. Suddenly the fleeing car careened into his motorcycle and struck his leg. The force of the collision destroyed his motorcycle and also left him with significant back and leg injuries.

7.      The two Oakland officers watched the carnage, injuries and death they caused, but they did not stop their car or even summon emergency medical services. Instead, they kept their sirens and lights off, their radios dead, and doubled-back to the scene when they heard other police sirens responding. When they returned to the scene, they pretended to have just arrived and were overheard saying that they hoped that the driver had died in the crash.

/

/

## JURISDICTION

8.      This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in Oakland, Alameda County, California within this judicial district.

## PARTIES

9.      PLAINTIFF ESTATE OF DECEDENT LOLOMANIA SOAKAI (hereinafter, "ESTATE") brings this case through personal representative LAVINIA SOAKAI. PLAINTIFF ESTATE brings these claims on behalf of Decedent pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. The wrongful death and survival claims survive the death of Decedent; both arise from the same

FIRST AMENDED COMPLAINT

3

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure 377.62. PLAINTIFF ESTATE of LOLOMANIA SOAKAI also brings their claims on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal civil rights law. Plaintiff also brings these claims as Private Attorney General, to vindicate not only Decedent's rights, but also others' civil rights of great importance.

10.     PLAINTIFF LAVINIA SOAKAI is an individual and resident of California. She is also the personal representative of PLAINTIFF ESTATE. She is the only surviving biological parent and biological mother of DECEDENT LOLOMANIA SOAKAI and is also the successor-in-interest under California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff brings claims both as the personal representative under the ESTATE and also individually on the basis of California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal civil rights law. Plaintiff also brings these claims as Private Attorney General, to vindicate not only Decedent's rights, but also others' civil rights of great importance.

11.     PLAINTIFF DANIEL FIFITA is an individual and resident of California.

12.     PLAINTIFF INA LAVALU is an individual and resident of California.

13.     PLAINTIFF SAMIUELA FINAU is an individual and resident of California.

14.     DEFENDANT WALID ABDELAZIZ was, and at all times mentioned herein, is a police officer for the CITY OF OAKLAND and is sued in his individual capacity.

15.     DEFENDANT JIMMY MARIN-CORONEL was, and at all times mentioned herein, is a police officer for the CITY OF OAKLAND and is sued in his individual capacity.

16.     Defendant CITY OF OAKLAND (hereinafter, "CITY") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant CITY possesses the power and authority to adopt policies

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

FIRST AMENDED COMPLAINT
4

and prescribe rules, regulations, and practices affecting the operation of the OAKLAND POLICE

and its tactics, methods, practices, customs, and usage. At all relevant times, Defendant CITY was

the employer of Defendant DOES 1-25, individually and as peace officers.

17. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1

through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs are

informed and believes and alleges that each Defendant so named was employed by Defendant CITY

at the time of the conduct alleged herein. Plaintiffs allege that each of Defendant DOES 1 through

25 was responsible for training, supervision, and/or conduct of the police officers and/or agents

involved in the conduct alleged herein. Plaintiffs allege that each Defendant DOES 1 through 25

were also responsible for and caused the acts and injuries alleged herein. Plaintiffs will amend this

Complaint to state the names and capacities of DOES 1 through 25, inclusive when they have been

ascertained.

18. Plaintiffs filed a timely government tort claim with Defendant CITY on August 8,

2022 which was rejected by operation of law.

## FACTUAL ALLEGATIONS

19. On June 25, 2022, LAVINIA Soakai, Lolomania "Lolo" Soakai, Ina Lavalu, and

Daniel Fifita were returning home from a family graduation ceremony and stopped at a popular taco

truck in Oakland, California located at 54th and International Boulevard. A friend of theirs,

Samiuela Finau, joined them there. They all placed their orders at the taco truck. As they waited for

the food at their cars, two Oakland officers had commenced an unauthorized "ghost chase" of a

suspect from a car rally called a "sideshow".

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

FIRST AMENDED COMPLAINT

5

20.     A "ghost chase" is when officers keep off their sirens and lights and do not radio in their chase of a suspect to dispatch because their department prohibits the chase due to the risks to the suspect and innocent bystanders' lives. (see description above. If okay, copy and paste here)

21.     The two Oakland officers sped after the suspect through highly populated and congested surface streets in Oakland at speeds in excess of 60 mph, and reports of even 100 mph. Foreseeably, the Oakland officers purposely caused the suspect to lose control of his vehicle and crash into cars and motorcycles parked in front of a busy late night taco truck on International Boulevard – a main city thoroughfare. Notably, the purpose of lights and sirens is not only to alert a suspect of the need to pull over but also – in vehicle pursuits – to warn surrounding traffic and bystanders and avoid collisions and harm.

22.     The suspect's car smashed and threw a parked motorcycle into the air.  Lolo was also struck as he was standing beside his car. The force of the collision caused Lolo to sustain fatal injuries and broke his mother's back. Lolo sustained fatal injuries and was left laying on the pavement in front his mother. Lolo's cousin, INA LAVALU and her husband DANIEL FIFTA along with SAMIEUELA FINAU were also severely injured as a result of the collision.  Tragically, Lolo took his last breaths in front of his mother, who cried desperately for emergency medical help to render aid to her dying son.

23.     The two Oakland officers watched the carnage, injuries and death they caused, but they did not stop their cars or even summon emergency medical services. Instead, they kept their sirens and lights off, their radios dead, and doubled back when they heard other police sirens responding to the scene. They later returned pretending to have just arrived on scene. They were overheard commenting that they were satisfied the driver appeared injured and hoped that the driver had died in the crash.

FIRST AMENDED COMPLAINT
6

24. As a result of the officers refusal to provide or summon emergency medical services – which their Department and officer training require – Plaintiffs' injuries worsened and Decedent lost his life without immediate medical intervention. Indeed, the Oakland officers' deliberate delay of medical treatment cost Decedent his life.

25. Notably, neither officer documented – as their department and officer training require – their involvement in the high-speed vehicle pursuit, the collision, the injuries to Plaintiffs and/or the death of Lolo.

26. On or about 2014, the Oakland Police Department ("OPD") issued a policy that prohibited high-speed vehicle pursuits except for a "violent forcible crime" such as a rape, assault, murder, or robbery. Even where a high-speed vehicle pursuit *may be permitted* it is required the officers weigh "the risks to the safety of officers, motorists, bystanders, and the public versus the benefit to public safety."

27. Following this policy change, a growing trend emerged amongst OPD officers to use "ghost chases" to avoid scrutiny for vehicle pursuits. For example, the Oakland Police Department had over 260 at fault vehicle collisions between 2016 and the first half of 2019, according to a recent public records release. During the three and a half years covered in the public records release, at least 28 at-fault collisions involved an OPD driver acting negligently, such as driving into a controlled intersection against the right of way, or going the wrong way against traffic, among many others.

28. In addition, per OPD's own reported statistics, over 12 percent of their pursuits have consistently resulted in suspects colliding into citizens. Notably, OPD is failing to accurately report

FIRST AMENDED COMPLAINT
7

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

statistic because they report 0 fatalities in 2018-2022 from pursuits but Decedent passed away as a result of the pursuit in June 25, 2022.[1]



29.     Upon information and belief, these ghost chases became well-known and widespread within the department, and caused other crashes, injuries and constitutional violations. Upon information and belief, high-ranking supervisors and officials within the department knew of the practice of "ghost chases" but did not take action to discipline, quell or abolish the unconstitutional and dangerous practice which proximately caused Defendants Doe Officers to use the practice to chase, purposely cause the suspect to crash, and injure Plaintiffs and Decedent.

30.     It was widely reported that once the Officers' dishonorable and unlawful conduct was discovered, the Oakland Police Chief took both of the involved officers off duty and placed

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

---

[1] https://app.powerbigov.us/view?r=eyJrIjoiOTBjNDFkOTMtODMzZi00ZmJhLThkZmYtYTgwOWM1ODg0YjM0Iiwi dCI6Ijk4OWEyMTgwLTZmYmMtNDdmMS04MDMyLTFhOWVlOTY5YzU4ZCJ9

FIRST AMENDED COMPLAINT
8

1   them on administrative leave pending the conclusion of an internal affairs investigation into this

2   incident wherein the two officers face potential discipline and/or termination.

3                                            **DAMAGES**

5       31.   As a consequence of Defendants' violations of Plaintiff's federal civil rights under 42

6   U.S.C. § 1983 and the Fourteenth Amendment, Plaintiffs were physically, mentally, emotionally,

7   and financially injured and damaged as a proximate result of Defendants' wrongful conduct.

8       32.   Plaintiffs found it necessary to engage the services of private counsel to vindicate

9   their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and/or costs

10  pursuant to statute(s) if they are the prevailing party in this action under 42 U.S.C. §§ 1983 and

11  1988 and California Civil Code §§ 52, 52.1. Plaintiffs are also entitled to punitive damages.

13      33.   As a direct and proximate result of each Defendant's acts and/or omissions as set

14  forth above, Plaintiff LAVINIA SOAKAI also sustained the following injuries and damages, past

15  and future, among others:

17      a.   Wrongful death of LOLOMANIA SOAKAI;

18      b.   Hospital and medical expenses;

19      c.   Coroner's fees, funeral and burial expenses;

20      d.   Loss of familial relationship, including loss of love, companionship, comfort,

21          affection, society, services, solace, and moral support;

22      e.   Pain and Suffering including emotional distress

23      f.   LOLOMANIA SOAKAI's loss of life, pursuant to federal civil rights law;

25      g.   Violation of constitutional rights; and

26      h.   All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§

27          1983, 1988; California Civil Code §§ 52, 52.1, California Code of Civil Procedure §

FIRST AMENDED COMPLAINT
9

1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Fourteenth Amendment— DUE PROCESS under 42 U.S.C. Section 1983)**
*(Plaintiffs against ABDELAZIZ, MARIN-CORONEL AND Does 1-25)*

34. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth herein.

35. Defendant Does Oakland Officers affirmatively and proximately caused Plaintiffs and Decedent harm by:

a. Conducting a high-speed chase on surface streets for a suspected traffic violation without contacting radio dispatch, turning on their lights or turning on their sirens

b. Conducting a high-speed chase on a heavily trafficked and populated thoroughfare

c. Purposely maintaining a high-speed chase in an effort to make a suspect lose control, severely injure himself and die

d. Failing to stop their cars, provide and summon emergency medical treatment for an injured suspect and bystanders despite having caused the harm

e. Failing to document a vehicle pursuit, vehicle collision and injuries despite their involvement

36. Defendant Does Oakland Officers affirmatively and proximately violated their own departments' policies and law enforcement officers training by:

a. Violating their Department's policy and officer training that prohibited high-speed chases on surface streets that placed pedestrians and bystanders at risk

b. Violating their Department's policy and officer training that prohibited officers from purposely keeping off their lights & siren during a vehicle pursuit

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

FIRST AMENDED COMPLAINT
10

c. Violating their Department's policy and officer training that prohibited officers from purposely failing to contact and report a vehicle pursuit to dispatch

d. Violating their Department's policy and officer training to use their law enforcement powers to cause unnecessary harm to a person

e. Violating their Department's policy and officer training to provide and summon emergency medical services for injured persons

f. Violating their Department's policy and officer training to document their involvement in vehicle collisions, pursuits and injuries

37.     Defendant Does Oakland Officers conduct caused irreparable, unreasonable harm purposefully when they engaged in a reckless, prohibited police pursuit at dangerous speeds with the intent to harm a suspect that proximately caused the harm and violation of all Plaintiffs & Decedent's constitutional rights under the Fourteenth Amendment.

38.     Defendant Does Oakland Officers conduct caused irreparable, unreasonable harm purposefully to Decedent and Plaintiffs which they witnessed. Defendant Does had an obligation to provide and summon emergency medical services but did not. As a result of their willful delay to summon and/or provide emergency medical services, Plaintiffs suffered extenuated harm and Decedent lost his life.

39.     As a result of Defendant Does Oakland Officers' conduct, Defendants are liable for Plaintiffs and Decedents' injuries and damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(*Monell* under 42 U.S.C. § 1983)**
*(Plaintiffs against Does 25-50 and CITY)*

40.     Plaintiffs hereby re-alleges and incorporates by reference each and every paragraph of this Complaint as fully set forth.

FIRST AMENDED COMPLAINT
11

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

41.     On or about 2014, the Oakland Police Department ("OPD") issued a policy that prohibited high-speed vehicle pursuits except for a "violent forcible crime" such as a rape, assault, murder, or robbery. Even where a high-speed vehicle pursuit *may be permitted* the policy requires that officers weigh "the risks to the safety of officers, motorists, bystanders, and the public versus the benefit to public safety."

42.     Following this policy change, a growing trend emerged amongst OPD officers to use "ghost chases" to avoid scrutiny for vehicle chases. Upon information and belief, these ghost chases became well-known within the department, caused other crashes, injuries and constitutional violations. Upon information and belief, high-ranking supervisors and official within the department knew of the practice of "ghost chases" but did not take action to discipline, quell or abolish the unconstitutional and dangerous practice which proximately caused Defendant Does Oakland Officers to use the practice to chase, purposely cause the suspect to crash and injured Plaintiffs and Decedent.

43.     As a result, Defendant CITY's failure to address the "ghost chase" trend resulted in encouraging and endorsing the unconstitutional practice of unsafe high-speed police pursuits in heavily populated areas and therefore proximately caused Defendant Does Oakland Officers' conduct and is liable for Plaintiffs and Decedent's injuries.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (Violation of the Bane Act (Cal. Civ. Code § 52.1)
*(Plaintiffs against ABDELAZIZ, CORONEL, CITY AND Does 1-25)*

44.     Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint as fully set forth here.

45.     Plaintiffs bring this "Bane Act" claim individually for direct violation of their rights.

FIRST AMENDED COMPLAINT
12

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

46.     By their conduct described herein, Defendants and Does 1-50, acting in concert/conspiracy, as described above, violated Plaintiffs' rights under California Civil Code § 52.1 and the flowing clearly-established rights under the United States Constitution and the California Constitution:

a.  Plaintiffs' right to be free from unreasonable and reckless high-speed police pursuits designed to harm people as secured by the Fourteenth Amendment to the United States Constitution and by Article I., § 7 of the California Constitution;

b.  Plaintiffs' right to be free from officers affirmatively placing them in dangerous situations as secured by the Fourteenth Amendment to the United States Constitution and by Article I., § 7 of the California Constitution;

47.     Further, any volitional violation of rights done with reckless disregard for those rights also satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act. All Defendants' duties and rights violations were volitional, intentional acts, done with reckless disregard for Plaintiffs' rights, and none were accidental or merely negligent.

48.     Defendant CITY is vicariously liable, pursuant to California Government Code § 815.2, for violation of Plaintiffs' rights by its employees and agents.

49.     As a direct and proximate result of the Defendants' violation of Cal. Civ. Code § 52.1 and of Plaintiff's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages against all Defendants and is entitled to relief as set forth above, including punitive damages against Defendants and Does 1-50, and including all damages allowed by Cal. Civ. Code §§ 52, 52.1 and California law, not limited to costs, attorneys fees, treble damages, and civil penalties.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FIRST AMENDED COMPLAINT

13

**JURY DEMAND**

50.     Plaintiffs hereby demand a jury trial in this action.

**PRAYER**

Wherefore, Plaintiffs pray for relief as follows:

1.   For general damages in a sum proven at trial;

2.   For special damages, including but not limited to past, present, and/or future wage loss, income, and support, medical expenses, and other special damages in a sum to be determined according to proof.

3.   For punitive damages against DOES 1-50 in a sum according to proof.

4.   For reasonable attorney's fees pursuant to Cal. Civ. Code § 52.1, U.S.C. § 1983 & 1988, and as otherwise may be allowed by state & federal law;

5.   For the cost of suit herein incurred; and

6.   For such other and further relief as the Court deems and proper.


Dated:  April 17, 23                    POINTER & BUELNA, LLP
                                        LAWYERS FOR THE PEOPLE

                                        /s/ Patrick Buelna
                                        PATRICK BUELNA
                                        Attorney for PLAINTIFF(S)

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

FIRST AMENDED COMPLAINT
14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DECEDENT LOLOMANIA SOAKAI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, et al.,<br><br>Defendants. | Case No.  23-cv-00381-SK<br><br>**ORDER GRANTING REQUEST TO AMEND BRIEFING SCHEDULE**<br><br>Regarding Docket No. 57 |

This matter comes before the Court on the stipulation of Plaintiff and Defendant Waleed Abdelaziz ("Defendant Abdelaziz") requesting a revised briefing and hearing schedule for Defendant's motion for judgment on the pleadings.  Having considered the stipulation, and good cause appearing therefor, the Court hereby ORDERS:

Defendant Abdelaziz shall file his motion for judgment on the pleadings by no later than Wednesday, October 4.

Plaintiff's brief in opposition shall be due no later than October 30, 2023.

Defendant's reply brief shall be due no later than November 6, 2023.

The hearing on Defendant Abdelaziz's motion shall take place on Monday, November 20, 2023 at 9:30 A.M.

**IT IS SO ORDERED**.

Dated: September 28, 2023

_____

SALLIE KIM
United States Magistrate Judge

DAVID B. NEWDORF, State Bar No. 172960
NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
nl@newdorf.com
Telephone:     (415) 357-1234

Attorneys for Defendant
WALID ABDELAZIZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ESTATE OF DECEDENT LOLOMANIA SOAKAI; LAVINIA SOAKAI, an individual and personal representative of ESTATE; DANIEL FIFITA, an individual; SAMIEUELA FINAU, an individual; INA LAVALU, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF OAKLAND, a municipal corporation; WALID ABDELAZIZ, in his individual capacity as a police officer for the CITY OF OAKLAND; JIMMY MARIN-CORONEL, in his individual capacity as a police officer for the CITY OF OAKLAND; and DOES 1-50, inclusive;<br><br>Defendants. | Case No. 3:23-cv-00381 SK<br><br>**DEFENDANT WALID ABDELAZIZ'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(c)]**<br><br>Date:     November 20, 2023<br><br>Time:     9:30 a.m.<br><br>Judge:    Hon. Sallie Kim<br><br>Place:    Courtroom C, 15th Floor<br>          450 Golden Gate Ave.<br>          San Francisco, CA 94102 |

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NEWDORF LEGAL**

630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

NOTICE OF MOTION ....................................................................................... 1

RELIEF REQUESTED & SUMMARY OF ARGUMENT ............................... 1

LEGAL STANDARD ......................................................................................... 2

STATEMENT OF FACTS .................................................................................. 3

ARGUMENT ...................................................................................................... 4

    I.    The Complaint Does Not Plausibly Allege that the Police Officers *Intentionally* or *Purposefully* Harmed Anyone. ...................................... 4

    II.   The Complaint Fails to State a Fourteenth Amendment Claim Against the Police Officers Because They Did Not Intend to Harm Any Bystanders. ... 6

        A.   The Supreme Court's Decision in *County of Sacramento v. Lewis* and the Ninth Circuit Cases Following *Lewis* Require an 'Intent to Harm.' ............................................................................................ 6

        B.   The Officers Are Not Liable Under *DeShaney* or a Special Relationship/State-Created-Danger Theory. ..................................... 10

    III.  The Complaint Does Not State a Fourteenth Amendment Claim Based on The Officers' Alleged Failure to Call for Medical Help. .......................... 11

    IV.  The Defendant Officers Are Entitled to Qualified Immunity for the Fourteenth Amendment Claims. ............................................................... 13

        A.   The Officers Did Not Violate Clearly Established Law By Engaging in a High-Speed Pursuit. ................................................... 14

        B.   The Officers Would Not Have Violated Clearly Established Law If They Failed to Render Aid and Assistance at the Scene of the Accident. ................................................................................. 15

    V.   The State Vehicle Code Immunity for Police Pursuits Bars the State-Law Bane Act Cause of Action. ......................................................................... 15

CONCLUSION ................................................................................................... 17

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NEWDORF LEGAL**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*
   563 U.S. 731 (2011)...................................................................... 13

*Balistreri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1990).......................................................... 2

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007).......................................................... 1, 2, 3, 4

*Bingue v. Prunchak*
   512 F.3d 1169 (9th Cir. 2008).................................................. 5, 7, 9

*Chavez v. United States*
   683 F.3d 1102 (9th Cir. 2012).......................................................... 2

*Clegg v. Cult Awareness Network*
   18 F.3d 752 (9th Cir. 1994).............................................................. 2

*Conley v. Gibson*
   355 U.S. 41 (1957)............................................................................ 2

*County of Sacramento v. Lewis*
   523 U.S. 833 (1998)................................................................. passim

*Cruz v. Briseno*
   22 Cal.4th 568 (2000)..................................................................... 16

*DeShaney v. Winnebago County Dept. of Social Services*
   489 U.S. 189 (1989)........................................................... 1, 10, 15

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982)......................................................................... 13

*Hernandez v. City of San Jose*
   897 F.3d 1125 (9th Cir. 2018)....................................................... 12

*Iqbal v. Ashcroft*
   556 U.S. 662 (2009)................................................................. passim

*Jackson v. Byrne*
   738 F.2d 1443 (7th Cir. 1984)....................................................... 13

*Jackson v. City of Joliet*
   715 F.2d 1200 (7th Cir. 1983)....................................................... 11

*Kennedy v. City of Ridgefield*
   439 F.3d 1055 (9th Cir. 2006)....................................................... 15

ii

*Kisela v. Hughes*
      138 S.Ct. 1148 (2018) .................................................................................... 14

*L.W. v. Grubbs*
      974 F.2d 119 (9th Cir.1992) .......................................................................... 12

*Martin v. City of San Jose*
      2020 WL 5910078 (N.D. Cal. Oct. 6, 2020) ................................................. 16

*Martinez v. City of Clovis*
      943 F.3d 1260 (9th Cir. 2019) ................................................................ 11, 14

*Maxwell v. County of San Diego*
      708 F.3d 1075 (9th Cir. 2013) ....................................................................... 13

*Maya v. Centex Corp.*
      658 F.3d 1060 (9th Cir. 2011) .................................................................... 3, 5

*Moreland v. Las Vegas Metropolitan Police Dept.*
      159 F.3d 365 (9th Cir. 1998) ........................................................................... 8

*Munger v. City of Glasgow Police Department*
      227 F.3d 1082 (9th Cir. 2000) ................................................................. 12, 13

*Murguia v. Langdon*
      61 F.4th 1096 (9th Cir. 2023) ....................................................................... 10

*Onossian v. Block*
      175 F.3d 1169 (9th Cir. 1999) ..................................................................... 6, 7

*Penilla v. City of Huntington Park*
      115 F.3d 707 (9th Cir. 1997) ......................................................................... 13

*Polanco v. California*
      2022 WL 1539784 (N.D. Cal. May 16, 2022) .............................................. 17

*Rivas-Villegas v. Cortesluna*
      142 S.Ct. 4, 8 (2021) ..................................................................................... 14

*Rodriguez v. City of Fresno*
      819 F.Supp.2d 937 (E.D. Cal. 2011) ............................................................... 9

*Saucier v. Katz*
      533 U.S. 194 (2001) ...................................................................................... 14

*Scott v. Harris*
      550 U.S. 372 (2007) ........................................................................................ 6

*Shafer v. Cty. of Santa Barbara*
      868 F.3d 1110 (9th Cir. 2017) ....................................................................... 14

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

iii

*Sinclair v. City of Seattle*
61 F.4th 674 (9th Cir. 2023) ................................................................. 11, 12

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) ................................................................. 3, 5

*Suit v. City of Folsom*
2016 WL 6696060 (E.D. Cal. Nov. 14, 2016) .......................................... 9, 10

*Tortu v. Las Vegas Metropolitan Police Department*
556 F.3d 1075 (9th Cir. 2009) .................................................................. 14

*Towery v. State*
14 Cal. App. 5th 226 (2017) ..................................................................... 16

*White v. Pauly*
580 U.S. 73 (2017) .................................................................................... 14

*Wood v. Ostrander*
879 F.2d 583 (9th Cir. 1989) .................................................................... 12

**Statutes**

California Civil Code
§ 52.1 .................................................................................................... 2, 16

California Vehicle Code
§ 17004 ................................................................................................ 2, 15

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 20, 2023, at 9:30 a.m., in Courtroom C, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Walid Abdelaziz will, and hereby does, move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**RELIEF REQUESTED & SUMMARY OF ARGUMENT**

The First Amended Complaint (FAC) contains two claims for relief against Officer Abdelaziz: (1) First Cause of Action under 42 U.S.C. § 1983 for violation of Substantive Due Process under the Fourteenth Amendment; and (2) the Third Cause of Action for violation of California's Bane Act (Civil Code § 52.1). Officer Abdelaziz moves for judgment on the pleadings as to both causes of action in their entirety for failure to state a claim under Fed. R. Civ. P. 12(c) on the following grounds:

1.  Under *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the allegations of intent to harm are conclusory and not supported by factual allegations. They do not satisfy the *Iqbal* and *Twombly* plausibility requirement.

2.  Under the U.S. Supreme Court's decision in *County of Sacramento v. Lewis,* 523 U.S. 833, 854 (1998), and its progeny, a bystander cannot state a Fourteenth Amendment violation based on a police pursuit unless the defendants intended to harm the bystander. The FAC fails to state a claim because it does not – and cannot plausibly – allege the officers' intent to injure the bystanders. Allegations that the officers intended to harm the fleeing suspect are not sufficient.

3.  The failure to call for medical aid is not actionable under the Fourteenth Amendment. There is no affirmative right to governmental aid or assistance, even in the case of life-threatening injuries. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). The two exceptions to this rule — the doctrines of special relationship and state-created danger — do not apply in this case.

**NEWDORF LEGAL**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

1

4.   The Defendant officers are entitled to qualified immunity because their conduct did not violate clearly established law under the Fourteenth Amendment.

5.   The state law claim under the Bane Act, Civil Code § 52.1, is barred by absolute immunity under California Vehicle Code § 17004, which applies to any death or injury caused by police pursuit of a suspect.

6.   The state law claim under the Bane Act fails for the additional and independent reason that there is no allegation of "threat, intimidation, or coercion."

## LEGAL STANDARD

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Dismissal under both Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

The Court must determine whether Plaintiffs would be entitled to some form of relief if the facts alleged in the complaint were true. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (abrogated in part by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, the Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (citing *Twombly*, *supra*, 550 U.S. at 555)

Federal Rules of Civil Procedure, Rule 8, which provides the general rules for pleading,

> demands more than an unadorned, the-defendant-unlawfully harmed me accusation…A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." … Nor does a

**NEWDORF LEGAL**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

2

complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."

*Iqbal, supra*, 556 U.S. at 678 (quoting *Twombly*, *supra*, 550 U.S. at 555, 557)

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint ... has not 'shown' – 'that the pleader is entitled to relief.'" *Iqbal*, *supra*, 556 U.S. at 678-79.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. ... The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, *supra*, 556 U.S. at 678.

Accordingly, "allegations in a complaint ... may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts ... [T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

> *Twombly* and *Iqbal*…distilled to their essence, impose two requirements. First, the reviewing court…is not required to credit legal conclusions…Second, the complaint cannot survive a motion to dismiss unless it alleges facts that plausibly (not merely conceivably) entitle plaintiff to relief.

*Maya v. Centex Corp.*, 658 F.3d 1060, 1067-68 (9th Cir. 2011).

## STATEMENT OF FACTS

The First Amended Complaint ("FAC") alleges that on June 25, 2022, two Oakland Police Department officers pursued a suspect from a "sideshow" car rally at speeds of between 60 and 100 miles per hour on congested city streets. (FAC ¶¶ 19, 21.) The officers "purposely caused the suspect to lose control of his vehicle and crash into cars and motorcycles" that were parked on International Boulevard. (FAC ¶ 21.) The collision caused serious injuries to Plaintiffs. (FAC ¶¶ 4-6, 22.) The suspect's car struck Lolomania Soakai, who was standing beside his car and sustained fatal injuries as a result. (FAC ¶¶ 4, 22.) Plaintiff Lavinia Soakai, whose back was broken, witnessed the death of her son, Lolomania. (*Id.*) The suspect's car also hit Plaintiffs Ina Lavalu,

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

Daniel Fifita, and Samieuela Finau. (FAC ¶¶ 5-6, 22.) There are no allegations that the officers collided with the suspect vehicle, the deceased, or the Plaintiffs.

After the accident, the officers allegedly did not stop or radio in the accident. Instead, they attempted to conceal their involvement in the chase by doubling back when other officers were responding. (FAC ¶ 23.) The officers' failure to summon medical care allegedly caused Plaintiffs' injuries to worsen and Lolomania Soakai to lose his life. (FAC ¶ 24.)

## ARGUMENT

### I.   The Complaint Does Not Plausibly Allege that the Police Officers *Intentionally* or *Purposefully* Harmed Anyone.

Although it is seldom done, this is the rare case in which the Court should dismiss the Fourteenth Amendment claim under *Iqbal* and *Twombly* because the Complaint does not plausibly allege the officers intended to harm anyone. The parties disagree as to the contours of the Fourteenth Amendment standard, but on this point we agree: Police are not liable under Section 1983 for injuries caused while chasing a suspect unless they intended to cause harm to someone.[1] The First Amended Complaint (FAC) alleges the officers intended to harm the suspect by making him crash. The officers "[p]urposely maintain[ed] a high-speed chase" to make the fleeing suspect "lose control" and "crash into cars and motorcycles parked in front of a busy late night taco truck." (FAC ¶¶ 21, 35.) The allegations of intent to harm are conclusory and bare bones. These broad strokes might have sufficed before *Iqbal* and *Twombly,* but to extend the metaphor, the Courts now require *realism* (i.e., plausibility)*, not abstract impressionism.*[2]

The federal rules of pleading

> . . . demand[ ] more than an unadorned, the-defendant-unlawfully harmed me accusation…A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." … Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."

*Iqbal, supra,* 556 U.S. at 678 (citing *Twombly, supra*, 550 U.S. at 555, 557).

---

[1] "[W]e hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *County of Sacramento v. Lewis,* 523 U.S. 833, 854 (1998).

[2] In the next section, Defendant Abdelaziz will further show that intent to harm the fleeing suspect is not enough. Rather, under the Fourteenth Amendment, the complaint must plausibly allege a specific intent to harm the bystander plaintiffs.

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

Accordingly, "allegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts … [T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

> *Twombly* and *Iqbal*…distilled to their essence, impose two requirements. First, the reviewing court…is not required to credit legal conclusions…Second, the complaint cannot survive a motion to dismiss unless it alleges facts that plausibly (not merely conceivably) entitle plaintiff to relief.

*Maya v. Centex Corp*., 658 F.3d 1060, 1067-68 (9th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiffs allege that the officers drove 60 to 100 miles per hour on crowded city streets in an effort to keep up with the suspect. (FAC ¶ 3.) This purported fact (if proven) may support a claim of gross negligence, recklessness, or deliberate indifference, but it falls short of showing intent to harm. The *Lewis* Court concluded that allegations that the officer acted negligently, recklessly, and carelessly, with gross negligence, or in a conscious disregard of plaintiffs' rights failed to rise to the level of "intent" or "purpose to cause harm." *Lewis*, 523 U.S. at 854; *accord Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

The chase/no-chase decision must be made in an instant. The officer "must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to . . . suspects, their passengers, other drivers, or bystanders." *Lewis*, 523 U.S. at 854. Therefore, "a purpose to cause harm is needed . . . for Due Process liability in a pursuit case." *Id.*

Once a suspect flees, the officer has a legitimate law enforcement objective to pursue her until she is apprehended. As the Supreme Court has explained:

> But wait, says respondent: Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best. . . .[W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger.

5

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

*Scott v. Harris*, 550 U.S. 372, 385 (2007)

The FAC's allegations of speeding recklessly on a crowded city street neither shows intent to harm nor changes the outcome. For example, in the case of *Onossian v. Block*, 175 F.3d 1169 (9th Cir. 1999), the suspect was "moving in and out of traffic at about 60 miles per hour on busy Santa Monica Boulevard in Los Angeles. . . . [After officers began to follow, the suspect] continued to drive erratically and recklessly. . . .  Rather than stopping, [the suspect] attempted to elude [the officers], maintaining speeds of up to 60 or 70 miles an hour. [¶] . . . [another officer] saw [the suspect's] Oldsmobile run a red light on Melrose Avenue." *Id.* The fleeing Oldsmobile moments later struck and injured drivers in another car, who sued the Sheriff and County of Los Angeles for their injuries from the high-speed chase. Despite the allegations of speeding on City streets, reckless lane-changing, and running a red light, the case did not rise to the level of intentional harm or "shocking the conscience." The Ninth Circuit affirmed dismissal of the case.

In the absence of any allegations that meaningfully distinguish this case from *Onossian* and with nothing but the bare conclusion that the officers intended to cause the suspect to crash, the First Amended Complaint does not allege a plausible violation of the Fourteenth Amendment.

## II.     The Complaint Fails to State a Fourteenth Amendment Claim Against the Police Officers Because They Did Not Intend to Harm Any Bystanders.

### A.     The Supreme Court's Decision in *County of Sacramento v. Lewis* and the Ninth Circuit Cases Following *Lewis* Require an 'Intent to Harm.'

Assuming *arguendo* that the complaint adequately alleged (beyond bare conclusions) that the officers intended to harm the fleeing suspect, the Fourteenth Amendment claim still would not survive. The complaint does not allege – nor could plaintiffs plausibly argue – that the officers intended to harm the plaintiffs. Based on their misreading of the cases, plaintiffs argue the allegation that the officers intended to harm the *suspect* satisfies the Fourteenth Amendment legal standard. No published court opinion within the Ninth Circuit has held that a bystander could state a Fourteenth Amendment violation absent an allegation that the officers intended to harm the *bystander*.

The U.S. Supreme Court decision in *County of Sacramento v. Lewis,* discussed above, is the starting point for understanding the law of police chase liability. Plaintiff Lewis in that case was the

**N**EWDORF **L**EGAL

630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

passenger on a speeding motorcycle. A County Deputy Sheriff gave chase, and the fleeing motorcycle crashed. The deputy's vehicle "skidded into" and killed Lewis. The Ninth Circuit had held "the appropriate degree of fault to be applied to high-speed police pursuits is deliberate indifference to, or reckless disregard for, a person's right to life and personal security.'' *Lewis,* 98 F.3d 434, 441 (9th Cir. 1996).

The Supreme Court granted *cert* to resolve a split of authority among the circuit courts as to the legal standard for a Fourteenth Amendment claim based on a police pursuit. As noted above, the *Lewis* Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." *Lewis,* 523 U.S. at 854. The *Lewis* Court did not distinguish between the standard that would apply to a fleeing suspect, a passenger in the fleeing vehicle, and an innocent bystander.

The next major development in the Ninth Circuit as to police-chase liability was *Onossian v. Block,* 175 F.3d 1169 (9th Cir. 1999). In that case, the Court held that the *Lewis* "shock the conscious" standard applied to injury claims brought by a bystander. The Ninth Circuit reached this result despite the allegations that the fleeing suspects sped on congested city streets, changed lanes erratically, and ran a red light. Although the *Onossian* court used the term "shock the conscious" to describe the standard, there is no difference in police-chase cases between "shock the conscious" and "intent to harm." *See, e.g., Bingue v. Prunchak,* 512 F.3d 1169, 1171 (9th Cir. 2008) (stating that "a police officer in a high-speed chase — whether he injures the fleeing suspect or a bystander — is entitled to qualified immunity unless his behavior 'shocks the conscience' because it demonstrates an intent 'to cause harm unrelated to the legitimate object of arrest.'")

The next major Ninth Circuit case was *Bingue, supra.* In that case, an officer who joined a high-speed chase already in progress lost control, struck, and injured innocent bystanders driving in another car. Plaintiffs in *Bingue* argued that because Officer Prunchak decided to join a chase already in progress, he had time to consider his decision. For this reason, according to Plaintiffs, their case shouldn't be judged under the *Lewis* intent-to-harm standard because it "only applies to cases involving 'emergency and nearly instantaneous pursuits.'" *Bingue,* 512 F.3d at 1175. The Ninth Circuit rejected this argument:

Newdorf Legal

630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

7

> [H]igh-speed police chases, by their very nature, do not give the officers involved adequate time to deliberate in either deciding to join the chase or how to drive while in pursuit of the fleeing suspect. We hold, therefore, that *Lewis* requires us to apply the "intent to harm" standard to all high-speed chases. (*Id.* at 1177.)

Plaintiffs in this case contend that the allegation that officers intended to harm the fleeing suspect satisfies the *Lewis* standard as to their bystander claims. Plaintiffs' precise reasoning is not clear (at least not to this lawyer), but what is clear is the contention conflicts with the holding and outcome in every published police chase case in this Circuit.

The way in which the Ninth Circuit applied the *Lewis* decision to a police-shooting case is illustrative. Keep in mind that when an officer intentionally discharges a weapon at a suspect, he intends to harm the suspect. Sometimes, however, that gunshot may unintentionally injure an innocent bystander. *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365 (9th Cir. 1998), was such a case.

Shortly after midnight on the night of September 17-18, 1993, Las Vegas police officers responded to a gunfight in a parking lot outside a bar. When police arrived, between 50 and 100 people were caught in the crossfire. Police shot and killed a man whom they believed to be one of the shooters. After the gunfight was over, investigation revealed that the deceased may have been an unarmed bystander.

The Ninth Circuit held in *Moreland* (based on *Lewis*) that police were not liable because they hadn't intended to kill an unarmed bystander. The Court explained:

> [P]olice officers often are required to "act decisively" and make decisions "in haste, under pressure, and frequently without the luxury of a second chance[.]"

> [W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed." [quoting *Lewis,* 523 U.S. at 853]

> This rationale applies with equal force to the circumstances faced by [the Las Vegas police officers]. When [they] arrived at the Chances Arr bar, the gunfight in progress threatened the lives of 50 to 100 people who were trapped in the parking lot. In other words, [police] were required to "act decisively," "without the luxury of a second chance" to address a life-threatening situation. . . . In such circumstances, the argument for application of the "purpose to commit harm" standard is even more compelling than it was in *Lewis*[.]

*Moreland,* 159 F.3d at 372.

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

Plaintiffs in this case argue that *Moreland* is inapposite because it was a misidentification case. Police fired at a person they thought was a suspect but turned out to be a bystander. This factual difference could be meaningful, but that is not how the Fourteenth Amendment legal standard has been applied to bystander injury cases. Courts in other police shooting cases make clear that – even without a mistake of identity – an officers' intent to shoot a suspect does not satisfy the *Lewis* intent-to-harm standard when a bystander is accidentally injured.

For example, in *Rodriguez v. City of Fresno*, 819 F.Supp.2d 937 (E.D. Cal. 2011), police accidentally shot the plaintiff when they fired at her boyfriend. There was no mistake of identity, just an unintended injury to the girlfriend. In applying the *Lewis* intent-to-harm standard under the Fourteenth Amendment, the *Rodriguez* court made clear that the officer's intent to harm the boyfriend did not satisfy the intent requirement for the plaintiff's bystander claim. The court stated:

> The court concludes that no reasonable trier of fact could find that [the officer] acted **toward Plaintiff** with malice or for the purpose of causing harm unrelated to any legitimate law enforcement interest. (*Id.* at 950 [emphasis added].)[3]

At least one district court in the Ninth Circuit has also made clear that under *Lewis,* a bystander injured in a police chase must show that police intended to **harm the bystander**. In *Suit v. City of Folsom,* Case No. 2:16-00807 WBS, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016), Heather Suit was driving her daughter to school in Folsom, California. While they were on the road, Officer Kracher engaged in a pursuit of a suspect in a "non-violent" and "cold" misdemeanor case. The suspect had been "driving lawfully" before the pursuit but drove "in a reckless manner" after Officer Kracher began the chase. The pursuit ended when the suspect collided with the plaintiffs' vehicle.

The Court in *Suit* applied the *Lewis* intent-to-harm standard because "Ninth Circuit precedent . . . holds the intent to harm standard applies to all high-speed chases." *Id.* (citing *Bingue, supra,* 512 F.3d at 1177). The Court stated:

> In the court's August 8 Order, the court found plaintiffs' FAC did not allege sufficient facts to give rise to the inference that Officer Kracher acted with

---

[3] *See also Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) (when bystander was shot in police crossfire with suspect, no liability absent intent to harm the bystander); *Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir. 2000) (same).

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

the *intent to harm bystanders*. . . . The FAC did "not even allege the legal conclusion that Officer Kracher continued his pursuit of Carson with *an intent or purpose to cause harm to plaintiffs*." The SAC fails for much of the same reasons.

* * *

Plaintiffs allege defendants were deliberately indifferent to nearby bystanders and "were further aware and appreciated the fact that [it would be a dangerous pursuit] due to the probable pursuit taking place through residential and school zones." (SAC ¶¶ 30-31.) Allegations that the officer acted negligently, recklessly and carelessly, grossly negligent[ly], or in a conscious disregard of plaintiffs' rights does not rise to the level of intent or purpose to cause harm. *Lewis*, 523 U.S. at 854; *accord Bingue*, 512 F.3d at 1174

Plaintiffs have failed to allege that Officer Kracher, the City, or the Department acted with the *purpose to harm plaintiffs*. Because the SAC lacks even a single factual allegation from which the court could reasonably infer that Officer Kracher acted with a purpose to harm unrelated to a legitimate law enforcement objective, plaintiffs fail to allege a cognizable violation of the Fourteenth Amendment necessary to sustain a § 1983 claim against Officer Kracher, the City, and the Department.

*Suit v. City of Folsom*, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016) (emphasis added)

For the reasons stated above, the FAC fails to allege a Substantive Due Process Violation under *Lewis* and its progeny.

**B.     The Officers Are Not Liable Under *DeShaney* or a Special Relationship/State-Created-Danger Theory.**

Plaintiffs may rely on the special-relationship or state-created-danger doctrines to show a violation of Substantive Due Process based on the high-speed chase. These legal theories are unavailing. With only two exceptions, "the Fourteenth Amendment does not confer an affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989).

The first exception is the special-relationship doctrine. The latest Ninth Circuit ruling on the subject makes clear that the special-relationship doctrine applies only to those in state custody such as "incarceration, institutionalization, or other similar restraint[s] of personal liberty." *Murguia v. Langdon*, 61 F.4th 1096, 1109 (9th Cir. 2023) (quoting *DeShaney*, 489 U.S. at 200). The special-relationship doctrine does not apply here because the plaintiffs were not in custody when they were injured.

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

10

The second exception, the state-created-danger doctrine, applies when a state actor places a person in a position of "actual, ***particularized*** danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (emphasis added). High-speed police pursuits, as courts from the U.S. Supreme Court on down have stated, are inherently dangerous. Bystander injuries are foreseeable. But as the cases hold, that is not sufficient to create liability under the Fourteenth Amendment. In the context of the state-created-danger doctrine, "particularized" means the danger "is directed at a specific victim." *Sinclair v. City of Seattle,* 61 F.4th 674, 682 (9th Cir. 2023).[4] The fleeing suspect's speed and reckless driving threatened the safety of the public at large in proximity to the chase. Because the officers' conduct did not create a danger *particularized* to the plaintiffs, there can be no Substantive Due Process violation under the state-created-danger doctrine.

**III.   The Complaint Does Not State a Fourteenth Amendment Claim Based on The Officers' Alleged Failure to Call for Medical Help.**

To be clear, the allegations that the officers were aware bystanders had been seriously injured and failed to call for medical assistance would be (if true) deplorable. But the contours of the Fourteenth Amendment are just as clear. The Constitution does not duplicate state tort liability and does not provide for redress of injuries based solely on a wrongful state action and 'but for' causation. "[E]ven if the complaints state good claims under general tort principles, it does not follow that they state good claims under section 1983 just because the defendants are public officers." *Jackson v. City of Joliet*, 715 F.2d 1200, 1203 (7th Cir. 1983).

Plaintiffs argue that the failure to call for medical help constituted a separate basis for finding a violation of Substantive Due Process under the Fourteenth Amendment. They base this claim on the state-created danger doctrine. The argument goes that the high-speed chase evidenced deliberate indifference to the safety of bystanders, plaintiffs were foreseeably injured when the suspect crashed, and their injuries were exacerbated when officers did not immediately call for medical help. The argument has surface appeal but falls apart under scrutiny.

---

[4] *See also Est. of Romain v. City of Grosse Pointe Farms,* 935 F.3d 485, 491-92 (6th Cir. 2019) (the state-created danger must be "specific to plaintiff")*; Villanueva v. City of Scottsbluff,* 779 F.3d 507, 512 (8th Cir. 2015) (the danger was directed at plaintiff individually or as a member of a "limited and definable group"); *Est. of B.I.C. v. Gillen,* 761 F.3d 1099, 1105 (10th Cir. 2014) (same).

**Newdorf Legal**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

11

Based on a review and discussion of nearly every Ninth Circuit decision on the subject, the Court in *Sinclair* observed, "In each of those cases, the danger was particularized to the plaintiffs." (61 F.4th at 683.) Every case stemmed directly from an encounter between police (or another state actor) and the plaintiff. For example:

- In *Hernandez v. City of San Jose*, officers "shepherded [plaintiffs] into a violent crowd of protestors and actively prevented them from reaching safety." 897 F.3d 1125, 1138 (9th Cir. 2018).

- In *Munger v. City of Glasgow Police Department*, an officer expelled the inebriated plaintiff from a bar into the freezing night with nowhere to go, and he later succumbed to hypothermia. 227 F.3d 1082, 1086-87 (9th Cir. 2000).

- In *Wood v. Ostrander*, troopers stopped a car, arrested the driver (who was taking the plaintiff to her house), and left Ms. Wood stranded in a high crime area at 2:30 a.m. where she was subsequently raped. 879 F.2d 583, 590 (9th Cir. 1989).

- In *L.W. v. Grubbs*, a supervisor at a state facility assigned a female nurse to work alone with a male sex offender with a history of violent assaults against women. The court ruled the supervisor could be held liable after the inmate raped and kidnapped the plaintiff. 974 F.2d 119 (9th Cir.1992).

By contrast, in *Sinclair,* the danger to plaintiff's son (who was shot and killed by a third party) arose from the City's action in removing all officers from a particular police precinct due to large-scale protests. In rejecting the Fourteenth Amendment claim, the *Sinclair* Court noted that neither police nor the City "had any previous interactions with her son, directed any actions toward him, or even knew of her son's existence until he was killed." *Sinclair,* 61 F.4th at 683. Nor did the officers in this case have any knowledge of plaintiffs before the crash. At the scene, the defendants did not by any affirmative conduct hinder or prevent other first responders from rendering aid and assistance.

As cruel and absurd as it sounds, unless injured persons are in state custody, an officer on the scene would have zero liability under the Fourteenth Amendment for intentionally refusing to: call an ambulance or render basic first aid. "[N]othing in the Constitution requires governmental

Newdorf Legal
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

12

units to act when members of the general public are imperiled." *Jackson v. Byrne*, 738 F.2d 1443 (7th Cir. 1984). By contrast, officers who through their own affirmative conduct delay or prevent medical treatment would be liable. *See Maxwell v. County of San Diego,* 708 F.3d 1075, 1082 (9th Cir. 2013) (police officer who prevented a gunshot victim from leaving for the hospital in a waiting ambulance was liable under the Fourteenth Amendment for her death); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (police officers who cancelled a 911 call, dragged the man into an empty house, and locked him alone inside with knowledge of his serious medical needs would violate the Fourteenth Amendment).

To borrow the words of the Ninth Circuit, the Court must ask "whether the officers left the [plaintiffs] in a situation that was more dangerous than the one in which they found [them]." *Munger*, 227 F.3d at 1086. Officers who encounter victims who have already suffered injuries and leave them without rendering aid have not, through affirmative action, increased the peril.

Would it be *proper* for the first officers on the scene of an accident to fail to summon medical care? Absolutely not. But would it be a violation of the Fourteenth Amendment to fail to do so? No. Would the same conduct become a Fourteenth Amendment violation if the first officers on scene had just been chasing the suspect who crashed into the victims? Also no, because the Supreme Court and Ninth Circuit have reviewed numerous police chases and determined that high-speed chases may be careless, reckless, or even deliberately indifferent to public safety and may cause serious injury of death to bystanders. But these scenarios do not cross the line to become unconstitutional unless the officers had a specific intent to harm the bystanders.

## IV.    The Defendant Officers Are Entitled to Qualified Immunity for the Fourteenth Amendment Claims.

Police officers are entitled to qualified immunity if there was no constitutional violation and/or the constitutional right they allegedly violated was not clearly established. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The United States Supreme Court has held that an officer's conduct only "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).)

**NEWDORF LEGAL**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

13

Whether a right was clearly established is a question of law for the Court to decide. *Tortu v. Las Vegas Metropolitan Police Department*, 556 F.3d 1075, 1080 (9th Cir. 2009). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

There need not be a case directly on point for a right to be clearly established. *See Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam); *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017). But existing precedent "must have placed the statutory or constitutional question beyond debate." *Id.* at 1117. In other words, "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*; *accord Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019).

"[T]o show a violation of clearly established law, [the plaintiff] must identify a case that put [the police officer defendant] on notice that his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 8 (2021) (per curiam); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (requiring the court to identify a case on point before qualified immunity can be denied).

### A.   The Officers Did Not Violate Clearly Established Law By Engaging in a High-Speed Pursuit.

As noted above, no cases cited by plaintiffs and no published cases within the Ninth Circuit found by defense counsel have held that an officer who engaged a suspect in a negligent, grossly negligent, or reckless high-speed chase that caused injury to bystanders would be liable under the Fourteenth Amendment unless the officer had specific intent to harm the bystander. Thus – even assuming plaintiffs allegations are true and their contentions of law are correct – defendants were not on notice that they violated clearly established law. The officer defendants are therefore entitled to qualified immunity as to the Fourteenth Amendment claim for injuries caused by the high-speed pursuit.

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

**B.**   **The Officers Would Not Have Violated Clearly Established Law If They Failed to Render Aid and Assistance at the Scene of the Accident.**

The well-established rules regarding first aid or medical care at the scene of an accident are as follows. First, "the Fourteenth Amendment does not confer an affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, *supra,* 489 U.S. at 196. The sole exception to this rule (for victims who are not in state custody) is when the officers hinder, delay, or prevent persons with known serious injuries from receiving medical attention. *See, e.g., Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006).

In light of these precedents – which are clearly established – the defendant officers were not on notice that they had a Constitutional duty to summon medical assistance at the scene of the accident. Moreover, no case has held that the officers would have a Constitutional duty to summon medical help if they had been chasing the suspect who caused the bystander injuries. Arguably they might have such a duty if they had intended to harm the bystanders. However, there is no case on point discussing this scenario. The officers are therefore entitled to qualified immunity.

**V.**   **The State Vehicle Code Immunity for Police Pursuits Bars the State-Law Bane Act Cause of Action.**

California Vehicle code section 17004 states (in whole):

> A public employee is not liable for civil damages on account of personal injury to or death of any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call or when in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm or other emergency call.

The Bane Act is subject to this immunity. As stated by another judge of this district:

> Mr. Martin contends that § 17004 does not afford Officer Ribeiro immunity because the purpose of the statute is to protect officers from liability for accidental injuries only — e.g., when an officer is engaged in a high-speed car chase of a suspect and accidentally causes a crash, whether impacting a bystander or the suspect. Although this may rationally be presumed to be the impetus for the law, Mr. Martin cites no caselaw, legislative history, or other authority to support this proposition. The text of § 17004 is broad and does not contain such a limitation. In fact, the reference in California Vehicle Code to "negligent or wrongful act[s] or omission[s]" by a public entity, Cal. Veh. Code § [17001] (emphasis added), suggests that § [17004] covers more than just accidents. The Court therefore grants Officer Ribeiro summary judgment on the battery and § 52.1 claims.

NEWDORF LEGAL

630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

15

*Martin v. City of San Jose*, No. 19-cv-01227-EMC, 2020 WL 5910078 (N.D. Cal. Oct. 6, 2020); *see also Towery v. State*, 14 Cal. App. 5th 226, 232 (2017) (Bane Act is subject to public entities' and public employees' statutory immunities).

This broad and unqualified immunity bars liability for "personal injury" or "death" "resulting from . . . the immediate pursuit of an actual or suspected violator of the law." The FAC alleges that the officers commenced a chase "of a suspect from a car rally," in particular a "sideshow" illegal street rally. (FAC ¶¶ 1, 19.) On this basis, the court must dismiss the Bane Act claim.[5]

To the extent that plaintiffs may argue that there are distinct injuries from the failure to summon medical help that are not barred by the Vehicle Code, those claims would be barred by the plain language of the Bane Act, Civil Code section 52.1. This statute applies by its terms under the following circumstances:

> a person or persons, whether or not acting under color of law, **interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion**, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . (Civ. Code. § 52.1(b) [emphasis added].)

The Bane Act simply does not apply absent some form of "threat, intimidation, or coercion," as explained by another judge of this Court in granting a motion to dismiss a claim under the statute:

> Plaintiffs still fail to allege that any defendant used "threat, intimidation, or coercion" while violating Polanco's rights. They allege that Defendants "requir[ed]" or "compelled" him to work "upon pain of losing his career." See FAC ¶ 85(a). Yet the same is true in all employment situations. The bare fact that a supervisor violated an employee's rights at work does not establish

---

[5] The California Supreme Court held that the same statute protects an officer from negligence liability when a suspect fleeing police kills or seriously injures a bystander.

> A sheriffs deputy pursues a speeding motorist but fails to activate his car's siren or lights. The motorist runs a red light at high speed, colliding with another car and killing or injuring its passengers. Is the deputy personally liable to the car's passengers for asserted negligence in failing to activate his siren or lights? As will appear, we conclude that the deputy is statutorily immune from suit under Vehicle Code section 17004,1 which immunizes public employees from civil damages resulting from their operation of emergency vehicles in immediate pursuit of an actual or suspected violator of law.

*Cruz v. Briseno*, 22 Cal.4th 568, 569 (2000)

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

that the rights violation was "committed 'by threat, intimidation, or coercion.'" *See Chaudhry*, 751 F.3d at 1105. Plaintiffs are right that "the threat of losing one's job and career of almost 35 years, as the whole support for one's family, would be frightening and deeply upsetting to a reasonable person." Opp. (dkt. 47) at 12. But just because a violation is deeply upsetting does not mean it involves "threat, intimidation or coercion."

*Polanco v. California*, No. 21-CV-06516-CRB, 2022 WL 1539784, at *3 (N.D. Cal. May 16, 2022).

Because plaintiffs do not allege any contact (direct or indirect) between the officers and plaintiffs, they fail to allege any form of "threat, intimidation, or coercion." Nor would any conceivable amendment cure this deficiency. The Bane Act claim must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion and dismiss the First Amended Complaint in its entirety as to Defendant Walid Abdelaziz.

Dated:      September 28, 2023                NEWDORF LEGAL


                                             By: */s/ David B. Newdorf*
                                                DAVID B. NEWDORF
                                             Attorneys for Defendant
                                             WALID ABDELAZIZ

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

**KAUFMAN DOLOWICH & VOLUCK, LLP**
Aimee G. Hamoy (SBN 221228)
Joshua R. Krasner (SBN 346561)
180 Grand Avenue, Suite 995
Oakland, California 94612
Telephone: (510) 630-7646
Facsimile: (415) 926-7601
ahamoy@kdvlaw.com
joshua.krasner@kdvlaw.com

Attorneys for Defendant
JIMMY MARIN-CORONEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DECEDENT LOLOMANIA SOAKAI; LAVINIA SOAKAI, an individual and personal representative of ESTATE; DANIEL FIFITA, an individual; SAMIEUELA FINAU, an individual; INA LAVALU, an individual;<br><br>        Plaintiffs,<br><br>        v.<br><br>CITY OF OAKLAND, a municipal corporation; WALID ABDELAZIZ, in his individual capacity as a police officer for the CITY OF OAKLAND; JIMMY MARIN-CORONEL, in his individual capacity as a police officer for the CITY OF OAKLAND; and DOES 1-50, inclusive,<br><br>        Defendants. | Case No.: 3:23-cv-00381-SK<br><br>Action Filed:  February 18, 2022<br><br>**DEFENDANT JIMMY MARIN-CORONEL'S NOTICE OF MOTION AND MOTION FOR JOINDER OF DEFENDANT WALID ABDELAZIZ'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: November 20, 2023<br><br>Time: 9:30 a.m.<br><br>Judge: Hon. Sallie Kim<br><br>Place: Courtroom C, 15th Floor<br>      450 Golden Gate Ave.<br>      San Francisco, CA 94102 |

1.

DEFENDANT JIMMY MARIN-CORONEL'S NOTICE OF MOTION AND MOTION
FOR JOINDER OF DEFENDANT WALID ABDELAZIZ'S MOTION FOR
JUDGMENT ON THE PLEADINGS

ER 040

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN: PLEASE TAKE NOTICE that Defendant JIMMY MARIN-CORONEL hereby joins in Defendant WALID ABDELAZIZ's Motion for Judgment on the Pleadings, scheduled to be heard November 20, 2023, before the Hon. Sallie Kim in Courtroom C, 15th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102.

## I.    INTRODUCTION

Defendant Jimmy Marin-Coronel ("Marin") concurs and joins in Defendant Walid Abdelaziz's ("Abdelaziz") Motion for Judgment on the Pleadings ("MJOP") for the reasons set forth in such MJOP and hereby stipulates to the relief sought therein. As such, Marin hereby seeks a dismissal of Plaintiffs' First Amended Complaint ("FAC").

Defendant Marin and Abdelaziz (collectively "Defendants") are in the same position regarding the subject matter discussed in the MJOP. Marin is a co-defendant with Abdelaziz and a named defendant on all the same causes of action as Abdelaziz. Marin and Abdelaziz were partners, rode in the same car during the pursuit which gave rise to the allegations in the FAC. Further, the allegations in the FAC make no differentiation between the Marin and Abdelaziz, essentially accusing them of exactly the same conduct. As such, the legal arguments in the MJOP apply equally to both Defendants. Considering the foregoing, the relief afforded to Abdelaziz, as set forth in the MJOP, should also be afforded to Marin as a joining party as separately requested herein.

## II.    LEGAL STANDARD

Marin joins this portion of Abdelaziz's MJOP, because the same standard applies against Marin as against Abdelaziz. Thus, by and through its joinder in Abdelaziz's MJOP, Marin has also demonstrated that Plaintiffs have failed to state a claim against Marin upon which relief can be granted, and accordingly, Plaintiffs' FAC should be dismissed as to Marin.

## III.    STATEMENT OF FACTS

Marin joins this portion of Abdelaziz's MJOP, because the facts as described in the MJOP are equally applicable to Marin as to Abdelaziz. Thus, by and through its joinder in Abdelaziz's MJOP, Marin has also demonstrated that Plaintiffs have failed to state a claim against Marin upon which relief can be granted, and accordingly, Plaintiffs' FAC should be dismissed as to Marin.

2.
**DEFENDANT JIMMY MARIN-CORONEL'S NOTICE OF MOTION AND MOTION FOR JOINDER OF DEFENDANT WALID ABDELAZIZ'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## IV.   ARGUMENT

**A.   The Complaint Does Not Plausibly Allege that the Police Officers Intentionally or Purposefully Harmed Anyone.**

Marin joins this portion of Abdelaziz's MJOP, as the arguments and supporting authorities discussed, because Plaintiffs' allegations are conclusory and do not meet the pleading standards required to state a claim for relief. The facts that are alleged, if taken as true, only allege that Defendants were reckless or negligent, not intent. As intent is required for a valid claim of violation under the Fourteenth Amendment, the claim fails for failure to state a claim.

**B.   The Complaint Fails to State a Fourteenth Amendment Claim Against the Police Officers Because They Did Not Intend to Harm Any Bystanders.**

**1.   The Supreme Court's Decision in *County of Sacramento v. Lewis* and the Ninth Circuit Cases Following Lewis Require an 'Intent to Harm.'**

Marin joins this portion of Abdelaziz's MJOP, as the arguments and supporting authorities discussed, because Plaintiffs allege only that Defendants intended harm to the suspect, but not the bystanders, nor do they allege any legal standard that allows bystanders to allege a violation without intent to harm the bystanders. Under Ninth Circuit jurisprudence, absent an allegation of intent to harm a bystander, a bystander may not make a Fourteenth Amendment claim against an officer. Therefore, Plaintiffs have failed to state a claim upon which relief may be granted.

**2.   The Officers Are Not Liable Under *DeShaney* or a Special Relationship/State-Created-Danger Theory.**

Marin joins this portion of Abdelaziz's MJOP, as the arguments and supporting authorities discussed, because Defendants are not liable under the special relationship doctrine as Plaintiffs were not in custody at the time of their injury. The state-created-danger theory also fails as there was no particularized danger directed at Plaintiffs.

//

//

3.

DEFENDANT JIMMY MARIN-CORONEL'S NOTICE OF MOTION AND MOTION FOR JOINDER OF DEFENDANT WALID ABDELAZIZ'S MOTION FOR JUDGMENT ON THE PLEADINGS

ER 042

**C.    The Complaint Does Not State a Fourteenth Amendment Claim Based on The Officers' Alleged Failure to Call for Medical Help.**

Marin joins this portion of Abdelaziz's MJOP, as the arguments and supporting authorities discussed, because Defendants did not create particularized danger which caused the injury to Plaintiffs, nor do police have an independent duty to render aid. While upsetting, the alleged actions of the officers do not rise to the level of a violation of the Fourteenth Amendment.

**D.    The Defendant Officers Are Entitled to Qualified Immunity for the Fourteenth Amendment Claims.**

Marin joins this portion of Abdelaziz's MJOP, because the same standard applies against Marin as against Abdelaziz. Thus, by and through its joinder in Abdelaziz's MJOP, Marin has also demonstrated that Defendants cannot be found liable based upon the doctrine of qualified immunity.

**1.    The Officers Did Not Violate Clearly Established Law By Engaging in a High-Speed Pursuit.**

Marin joins this portion of Abdelaziz's MJOP, as the arguments and supporting authorities discussed, because the allegations in Plaintiffs' FAC do not implicate clearly established law which conforms closely enough to the facts of this case concerning vehicle pursuit of a suspect to put Defendants on notice that such action would be a violation of Plaintiffs' constitutional rights. Therefore, Marin is entitled to qualified immunity and may not be subject to suit in this action.

**2.    The Officers Would Not Have Violated Clearly Established Law If They Failed to Render Aid and Assistance at the Scene of the Accident.**

Marin joins this portion of Abdelaziz's MJOP, as the arguments and supporting authorities discussed, because the allegations in Plaintiffs' FAC do not implicate clearly established law which conforms closely enough to the facts of this case concerning rendering aid to bystanders to put Defendants on notice that such action would be a violation of Plaintiffs' constitutional rights. Therefore, Marin is entitled to qualified immunity and may not be subject to suit in this action.

//

//

4.

**DEFENDANT JIMMY MARIN-CORONEL'S NOTICE OF MOTION AND MOTION FOR JOINDER OF DEFENDANT WALID ABDELAZIZ'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**E.   The State Vehicle Code Immunity for Police Pursuits Bars the State-Law Bane Act Cause of Action.**

Marin joins this portion of Abdelaziz's MJOP, as the arguments and supporting authorities discussed, because the state law claim under the Bane Act is barred by absolute immunity under California Vehicle Code § 17004, which applies to any death or injury caused by police pursuit of a suspect, as was the case here. The state law claim under the Bane Act also fails because there is no allegation of "threat, intimidation, or coercion," a requirement for liability under the Bane Act. Therefore, Plaintiffs' Bane Act claim fails.

## V.   CONCLUSION

For all of the reasons set forth herein and in Abdelaziz's MJOP, to which the instant joinder applies, Plaintiffs' FAC against Marin fails, and should be dismissed for the same reasons as set forth in Abdelaziz's MJOP: each fails to state a claim upon which relief can be granted against Marin.

DATED: October 19, 2023                KAUFMAN DOLOWICH & VOLUCK, LLP


*Aimee Hamoy*
Aimee G. Hamoy, Esq.
Joshua R. Krasner, Esq.
Attorneys for Defendant
JIMMY MARIN-CORONEL

5.

1  **ADANTÉ D.  POINTER, ESQ., SBN 236229**
   **PATRICK M. BUELNA, ESQ., SBN 317043**
2  **TREVA STEWART, ESQ., SBN 239829**
   POINTER & BUELNA, LLP
3  LAWYERS FOR THE PEOPLE
   155 Filbert St., Suite 208,
4  Oakland, CA 94607
   Tel: 510-929-5400
5  Website: www.LawyersFTP.com
   Email: APointer@LawyersFTP.com
6  Email: PBuelna@LawyersFTP.com
   Email: TStewart@LawyersFTP.com
7
   Attorneys for Plaintiffs
8

9              **UNITED STATES DISTRICT COURT**

10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12  ESTATE OF DECEDENT LOLOMANIA          Case No.: 3:23-cv-00381-SK
    SOAKAI; LAVINIA SOAKAI, an
13  individual and personal representative of   **PLAINTIFFS' OPPOSITION TO**
    ESTATE; DANIEL FIFITA, an individual;   **DEFENDANT WALID ABDELAZIZ'S**
14  SAMIEUELA FINAU, an individual; INA   **MOTION FOR JUDGMENT ON THE**
    LAVALU, an individual;                **PLEADINGS**
15          Plaintiffs,
                                          Date:  November 20, 2023
16  v.                                    Time:  9:30 a.m.
                                          Courtroom C – 15th Floor
17  CITY OF OAKLAND, a municipal
    corporation; WALID ABDELAZIZ, in his
18  individual capacity as a police officer for the
    CITY OF OAKLAND; JIMMY MARIN-
19  CORONEL, in his individual capacity as a
    police officer for the CITY OF OAKLAND;
    and DOES 1-50, inclusive;
20          Defendants.
21

22

23

24

*Sidebar:* POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

i

ER 045

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITES ........................................................................................... iii

I. INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS...........................................................................................1

III. ARGUMENT ..............................................................................................................3

    A. Legal Standard............................................................................................................3

    B. Defendants Violated Plaintiffs' Fourteenth Amendment Rights by Engaging in
       "Conscience Shocking" Conduct That Caused Plaintiffs' Injuries....................................3

         1. Defendants acted with a "purpose to harm" because they intended to
           cause the fleeing suspect's vehicle to crash. ............................................................5

         2. Defendants are not insulated from Fourteenth Amendment Liability
           because the Officers were not justified in giving chase.........................................11

         3. Officers are not entitled to qualified immunity when they act with a
           "purpose to harm.". .................................................................................................14

    C. The Defendant Officers Affirmatively Put Plaintiffs in Danger by Creating a
       Foreseeable Medical Emergency and Deliberately Delaying Medical Care. ...................16

    D. Plaintiffs' Bane Act Claim Must Proceed. ..............................................................20

IV. CONCLUSION .........................................................................................................22

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.**

ii

## TABLE OF AUTHORITIES

**Federal Cases**

*A.D. v. California Highway Patrol*,
    712 F.3d 446 (9th Cir. 2013) ......................................................................14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................3

*Bingue v. Prunchak*,
    512 F.3d 1169 (9th Cir. 2008) ..................................................5, 9, 12, 13

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) ......................................................................3

*City of Revere v. Mass. Gen. Hosp.*,
    463 U.S. 239 (1983)........................................................................................17

*Cook, Perkiss & Leiche, Inc. v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ......................................................................3

*Cornell v. City & County of San Francisco*,
    17 Cal.App.5th 766 (2017) ............................................................................19

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)..........................................................4, 7, 8, 12, 13

*Estate of Ford v. Ramirez–Palmer*,
    301 F.3d 1043 (9th Cir. 2002) ......................................................................15

*Foster v. City of Indio*,
    908 F.3d 1204 (9th Cir. 2018) ......................................................................6

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ......................................................................3

*Gonzalez v. City of Anaheim*,
    747 F.3d 789 (9th Cir. 2014) ......................................................................6

*Gordon v. County of Orange*,
    888 F.3d 1118 (9th Cir. 2021) ......................................................................4

*Henry A. v. Willden*,
    678 F.3d 991 (9th Cir. 2012) ......................................................................17

*Hernandez v. City of San Jose*,
    897 F.3d 1125 (9th Cir. 2018) ......................................................................16

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

iii

ER 047

*Hope v. Pelzer,*
    536 U.S. 730 (2002)................................................................16

*Hughes v. Rodriguez,*
    31 F.4th 1211 (9th Cir. 2022) ...............................................19

*Hunter v. Bryant,*
    502 U.S. 224 (1991)...............................................................15

*Ileto v. Glock Inc.,*
    349 F.3d 1191 (9th Cir. 2003) .................................................3

*Jones v. Kmart Corp.,*
    17 Cal.4th 329 (1998) ............................................................19

*Kennedy v. City of Ridgefield,*
    439 F.3d 1055 (9th Cir. 2006) ...............................................16

*Martinez v. City of Clovis,*
    943 F.3d 1260 (9th Cir. 2019) ...............................................17

*Maxwell v. County of San Diego,*
    708 F.3d 1075 (9th Cir. 2013) ...............................16, 17, 18

*Moreland v. Las Vegas Metropolitan Police, Dept.,*
    159 F.3d 365 (9th Cir. 1998) ...................................................8

*Munger v. City of Glasgow Incident Dep't,*
    227 F.3d 1082 (9th Cir. 2000) ...............................................16

*Ochoa v. City of Mesa,*
    26 F.4th 1050 (9th Cir. 2022) ...........................................6, 13

*Onossian v. Block,*
    175 F.3d 1169 (9th Cir. 1999) ...........................5, 9, 12, 13

*Penilla v. City of Huntington Park,*
    115 F.2d 707 (9th Cir. 1997) ...........................................17, 18

*Porter v. Osborne,*
    546 F.3d 1131 (9th Cir. 2008) .................................................4

*Reddy v. Litton Indus., Inc.,*
    912 F.2d 291 (9th Cir. 1990) ...................................................3

*Reese v. County of Sacramento,*
    888 F.3d 1030 (9th Cir. 2018) ...............................................19

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

iv

ER 048

*Rodriguez v. City of Fresno,*
  819 F.Supp.2d 937 (E.D. Cal. 2011)..................................................................................11

*Scalia v. County of Kern,*
  493 F.Supp.3d 890 (E.D. Cal. 2019)..................................................................................19

*Suit v. City of Folsom,*
  2016 WL 6696060 (E.D. Cal. Nov. 15, 2016)....................................................................10

*Wilkinson v. Torres,*
  610 F.3d 546 (9th Cir. 2010) .........................................................................................3, 6

*Wood v. Ostrander,*
  879 F.2d 583 (9th Cir. 1989) .....................................................................................16, 17

*Zion v. County of Orange,*
  874 F.3d 1072 (9th Cir. 2017) .........................................................................................15

**Statutes**

Fed. R. Civ. P. 8(a)(2)..........................................................................................................3

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

v

ER 049

## I.   INTRODUCTION

On June 25, 2022, Defendant officers Walid Abdelaziz and Jimmy Marin-Coronel shockingly engaged in an exceedingly dangerous high-speed chase down a busy East Oakland thoroughfare, without their police lights or sirens activated.  Not only was this pursuit in violation of the official Oakland Police Department vehicle pursuit policy, but the Defendants' numerous actions to conceal the chase show that they knew they were breaking the law.  Even worse, the motivation for this chase was not a legitimate law enforcement objective, but the intent of the Defendant Officers to cause the suspect to crash and hopefully die.

Foreseeably, this egregious misuse of their police vehicle and abuse of police power caused a dangerous collision and medical emergency.  But the Defendant Officers, knowing they were violating the law, did not call medical aid to the scene or inform dispatch of the crash.  Instead, they cowardly fled the scene and pretended they had never been there, hoping the suspect would succumb to his injuries.  Luckily, the Defendant Officers unknowingly had their body worn cameras activated to record their unlawful attempt at vigilantism.

Plaintiffs have plausibly pled due process violations because the Defendant Officers: 1) acted with a purpose to harm, unrelated to a legitimate law enforcement objective; 2) intentionally misused their police vehicle without legal justification; and 3) deliberately delayed medical attention from arriving to the scene of the incident.  Likewise, the Defendant Officers are not entitled to qualified immunity because any reasonable officer in the Defendants' position would know that their actions were unconstitutional and unlawful.

## II.   STATEMENT OF FACTS

On June 25, 2022, LAVINIA Soakai, Lolomania "Lolo" Soakai, Ina Lavalu, and Daniel Fifita were returning home from a family graduation ceremony and stopped at a popular taco truck in Oakland, California, located at 54th and International Boulevard.  A friend of theirs, Samiuela

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

1

1   Finau, joined them there.  They all placed their orders at the taco truck.  As they waited for the food

2   at their cars, two (2) Oakland officers had commenced an unauthorized "ghost chase" of a suspect

3   from a car rally called a "sideshow".  (Plaintiffs' First Amended Complaint, "FAC", at ECF 17, at ¶

4   19).

5          A "ghost chase" is when officers keep off their sirens and lights and do not radio in their

6   chase of a suspect to dispatch because their department prohibits the chase due to the risks to the

7   suspect and innocent bystanders' lives.  (FAC, ¶ 20).

8          The two (2) Oakland officers sped after the suspect through highly populated and congested

9   surface streets in Oakland, at speeds in excess of 60 mph, and reports of even 100 mph.

10  Foreseeably, the Oakland officers purposely caused the suspect to lose control of his vehicle and

11  crash into cars and motorcycles parked in front of a busy late night taco truck on International

12  Boulevard – a main city thoroughfare.  Notably, the purpose of lights and sirens is not only to alert

13  a suspect of the need to pull over, but also – in vehicle pursuits – to warn surrounding traffic and

14  bystanders and avoid collisions and harm.  (FAC, ¶ 21).

15         The suspect's car smashed into and threw a parked motorcycle through the air.  Lolo was

16  also struck, as he was standing beside his car.  The force of the collision caused Lolo to sustain fatal

17  injuries and broke his mother's back.  Lolo was left lying on the pavement in front his mother.

18  Lolo's cousin, Ina Lavalu, and her husband, Daniel Fifta, along with Samieuela Finau, were also

19  severely injured as a result of the collision.  Tragically, Lolo took his last breath in front of his

20  mother, who cried desperately for emergency medical help to render aid to her dying son.  (FAC, ¶

21  23).

22         As a result of the officers' refusal to provide or summon emergency medical services –

23  which their department and officer training require – Plaintiffs' injuries worsened, and Decedent

24

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.**
2

ER 051

1  lost his life without immediate medical intervention.  Indeed, the Oakland officers' deliberate delay

2  of medical treatment cost Decedent his life.  (FAC, ¶ 24).

3      Notably, neither officer documented – as their department and officer training require – their

4  involvement in the high-speed vehicle pursuit, the collision, the injuries to Plaintiffs and/or the

5  death of Lolo.  (FAC, ¶ 25).

6  **III.    ARGUMENT**

7      **A.    Legal Standard**

8      Rule 8 requires only a "short and plain statement of the claim."  FRCP 8(a)(2).  A motion to

9  dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of those claims.

10  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003).  Analysis under Rule 12(c) is

11  substantially identical to analysis under Rule 12(b)(6).  *Chavez v. United States*, 683 F.3d 1102,

12  1108 (9th Cir. 2012).

13      To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted

14  as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the

15  misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Even so, there is a strong

16  presumption against dismissing an action for failure to state a claim.  *See Gilligan v. Jamco Dev.*

17  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

18      If the allegations are insufficient to state a claim, a court should grant leave to amend, unless

19  amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.

20  1990); *Cook, Perkiss & Leiche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir.

21  1990).

22      **B.    Defendants Violated Plaintiffs' Fourteenth Amendment Rights by Engaging in**
       **"Conscience Shocking" Conduct That Caused Plaintiffs' Injuries.**

23      Conduct that "shocks the conscience" violates due process.  *Wilkinson v. Torres*, 610 F.3d

24  546, 554 (9th Cir. 2010).  The Fourteenth Amendment's due process "shocks the conscience"

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1   standard is met either by a showing that officers acted with "deliberate indifference" or a "purpose

2   to harm" unrelated to the legitimate object of arrest, depending on the circumstances. *Porter v.*

3   *Osborne*, 546 F.3d 1131, 1137 (9th Cir. 2008).

4        The Ninth Circuit has characterized conduct that "shocks the conscience" along a spectrum.

5   *Porter*, 546 F.3d at 1138-39. At one end, the Court has clarified that the deliberate indifference

6   applies if the situation at issue permits the officer to deliberate before acting, such as denials of

7   serious medical needs to pretrial detainees (*Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir.

8   2021)); while on the other end, the purpose to harm standard governs "all high-speed [police]

9   chases." *Bingue v. Prunchak*, 512 F.3d 1169, 1177 (9th Cir. 2008).

10       The origin of the "purpose to harm" standard's application to high-speed police chases

11  began in the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 833

12  (1998). In *Lewis*, deputies Smith and Murray were engaged in a high-speed chase of a motorcycle.

13  *Id.* The person driving the motorcycle was Brian Willard, and Philip Lewis was the *passenger*. *Id.*

14  The deputies were chasing Willard for reckless driving when the motorcycle "tipped over." *Id.*

15  Deputy Smith slammed on his brakes, but the car skidded into the passenger, Lewis, killing him.

16  *Id.* The personal representative of Lewis' estate sued on a Fourteenth Amendment due process

17  claim. *Id.*

18       In pertinent part, the Ninth Circuit denied summary judgment on the due process claim,

19  applying the deliberate indifference standard, but the Supreme Court overturned and held:

20       "**In the circumstances of a high-speed chase aimed at apprehending a suspected
         offender**, where unforeseen circumstances demand an instant judgment on the part of an
21       officer who feels the pulls of competing obligations, only a purpose to cause harm
         unrelated to the legitimate object of arrest will satisfy the shocks-the-conscience test.
22       Such chases **with no intent to harm suspects** physically or to worsen their legal plight
         do not give rise to substantive due process liability."

23  *Lewis,* 523 U.S. at 834 (emphasis added). The Supreme Court explained that since the Lewis

24  Estate could not show that the deputies had a "purpose to harm" Willard (the driver), Lewis'

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

claims could not proceed – even though he was just a bystander/passenger. *Lewis,* 523 U.S. at 834-835 ("Smith's instinct was to do his job, not to induce Willard's lawlessness, or to terrorize, cause harm, or kill" and "there is no reason to believe that they were tainted by an improper or malicious motive").

Relying on the Supreme Court's reasoning in *Lewis,* the Ninth Circuit in *Onossian v. Block,* 175 F.3d 1169 (9th Cir. 1999) granted summary judgment to a police chase that ended in killing an innocent bystander because "if a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase." *Onossian,* 175 F.3d at 1171. In making this holding, the Ninth Circuit importantly recognized that there was "no evidence that deputies Finn, Yates, and Thomas intended to cause harm to *anyone.*" *Id.* at 1172 (emphasis added).

The Ninth Circuit clarified "that a police officer in a high-speed chase—whether he injures the **fleeing suspect or a bystander**—is entitled to qualified immunity unless his behavior 'shocks the conscience' because it demonstrates an intent 'to cause harm unrelated to the legitimate object of arrest.'" *Onossian,* 175 F.3d at 1171; *see Bingue v. Prunchak*, 512 F.3d 1169 (9th Cir. 2008) (expanding the "purpose to harm" requirement to "all high-speed chases").

Here, the conduct of Defendant Officers Marin-Coronel and Abdelaziz "shocks the conscience" because they not only engaged in a high-speed chase with a purpose to harm the pursued suspect, but intentionally misused their vehicle for an illegitimate law enforcement purpose and were not justified in giving chase. Because this conscience shocking conduct directly caused Plaintiffs' injuries, Plaintiffs have adequately alleged a violation of their Fourteenth Amendment due process rights. Further, the Defendant Officers are not entitled to qualified immunity because they knowingly violated the law.

   **1.**  **Defendants acted with a "purpose to harm" because they intended to cause the fleeing suspect's vehicle to crash.**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

5

ER 054

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

The Ninth Circuit recently clarified that the "purpose to harm" test requires a showing that the officers acted with a purpose to harm for reasons "unrelated to legitimate law enforcement objectives." *See Ochoa v. City of Mesa,* 26 F.4th 1050, at 1056 (9th Cir. 2022).  Legitimate objectives can include "arrest, self-protection, and protection of the public." *Foster v. City of Indio,* 908 F.3d 1204, 1211 (9th Cir. 2018).  Illegitimate objectives include when the officer had any **ulterior motives** for using force against the suspect, such as to "bully a suspect" or "get even," or when an officer uses force against a clearly harmless or subdued suspect.  *Ochoa*, 26 F.4th at 1056 (internal quotations omitted) quoting *Foster,* 908 F.3d at 1211; *Gonzalez v. City of Anaheim,* 747 F.3d 789, 798 (9th Cir. 2014); *Wilkinson*, 610 F.3d at 556 (9th Cir. 2010).

Here, Defendants Marin-Coronel and Abdelaziz pursued a suspect through the busy, surface streets of Oakland, but deliberately kept their lights and sirens off and did not report the chase to dispatch because their department had formally prohibited such chases.  (FAC ¶¶ 19-21).  Defendants' decision to hide their chase from their own department is concrete evidence that suggests they had ulterior motives and illegitimate objectives unrelated to law enforcement.

More importantly, once the suspect had crashed and injured himself and bystanders, Defendants did not stop their car, turn on their emergency lights or sirens, or even summon emergency medical care.  (FAC ¶ 23).  In further corroboration of their illegitimate objectives, Defendants fled the scene and then returned after other law enforcement and medical response arrived, pretending to have been uninvolved in the crash.  (FAC ¶¶ 22-23).  The Officers also intentionally documented nothing of the collision by way of report or otherwise in an effort to conceal their illicit acts.  (FAC ¶ 25).

Much worse, Defendants were then inadvertently captured on body worn camera commenting that they were satisfied the driver had been injured and hoped he had died in the crash.  (FAC ¶ 23).  These acts and admissions beg the inference that the Defendant Officers

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

intended to harm the suspect, and further intended him to succumb to his injuries by intentionally delaying medical services from being able to timely arrive at the scene.  Defendants' conduct and comments are the epitome of factual allegations that support a "purpose to harm" standard.[1]  As such, Plaintiffs have plausibly pled a Fourteenth Amendment due process claim for the officers' conduct during a high-speed chase.

Defendants argue that a plaintiff must not only show that an officer's high-speed chase was conducted with a "purpose to harm" the suspect, but that the purpose to harm must be directed specifically at the bystander seeking recovery.  (Def. Mtn. at 6:19-10:14).  This assertion is misguided.  It is not only illogical to suggest that a plaintiff could ever prove an officer had malice toward a bystander with whom they had no interaction, but it is also a proposition unsupported by the caselaw.

In *Lewis*, the Supreme Court established the parameters of the "purpose to harm" standard for bystanders injured by police chases, holding that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do no give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Lewis*, 523 U.S. at 854.  As mentioned in the previous section, not only does the explicit language of the holding specify that the intent to harm must be directed at **suspects**, but the analysis shows that the Court focused on whether the involved officers intended to harm Willard (the driver), rather than Lewis (the passenger).  *Id.* at 834-35.

While it may be argued that an intent to harm Willard would have been equivalent to an intent to harm Lewis, given that Lewis was a passenger on Willard's motorcycle, the development

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

---

[1] Defendants made the *disingenuous* argument in Section I of their Brief that Plaintiff did not adequately alleged Defendants "Intentionally or Purposefully Harmed Anyone" (ECF 59 – Def. Mtn., 8-9) but glaringly omit in both their "Statement of Facts" and Section I *any* summary, citations or discussion of Plaintiff's factual allegations that Defendants made comments that they were glad the suspect was injured and hoped he succumbed to his injuries. (FAC ¶¶ 22-25). Quite clearly, one can infer from Defendants' comments that not just that they intentionally caused the crash, the death and carnage to the bystanders but did so with *malice aforethought*.

1    of this caselaw in the Ninth Circuit shows that the object of the officer's intent to harm is

2    irrelevant—so long as the officer acts with an intent to harm unrelated to a legitimate law

3    enforcement interest, conduct that "shocks the conscience" is shown.

4    As illustrated by the cases below, when an officer does not have time to deliberate, conduct

5    that "shocks the conscience" is determined by looking at: 1) whether an officer's actions were

6    justified by a legitimate law enforcement objective; and 2) whether that legitimate law enforcement

7    objective was tainted by an intent to harm.  This is because "[t]he touchstone of due process is

8    protection of the individual against arbitrary action of government" such as "the exercise of power

9    without any reasonable justification in the service of a legitimate governmental objective." *Lewis*,

10   523 U.S. at 845-46.  An officer causing injury to innocent bystanders while acting without a

11   legitimate law enforcement purpose is the quintessential arbitrary exercise of power the Due

12   Process Clause forbids.  Moreover, the act of initiating a high-speed pursuit for the purpose of

13   harming **anyone** is exactly the type of egregious official conduct that "shocks the conscience."

14   In *Moreland*, the Ninth Circuit held that the family of a bystander accidentally shot by

15   police was required to show that the officers acted with an intent to harm, unrelated to the legitimate

16   use of force necessary to protect the public and themselves, in order to recover under the Fourteenth

17   Amendment.  *Moreland v. Las Vegas Metropolitan Police, Dept.*, 159 F.3d 365, 373 (9th Cir.

18   1998).  In holding that the plaintiffs' substantive due process rights were not violated, the Court

19   importantly noted it was undisputed that the officer was entitled to use deadly force to halt the

20   gunfight that was occurring.  *Id.*  Because the officer's decision to shoot was justified by a

21   legitimate law enforcement purpose, the controlling question then became "whether [the officer]

22   acted with a purpose to harm [the bystander] that was unrelated to his attempt to stop the male in the

23   parking lot from endangering others."  *Id.*  Indeed, any time an officer uses deadly force, there is an

24   inherent "intent to harm" the person the force is directed at, which explains why the Court only

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

8

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1    focused on an intent to harm the bystander.  Having found the shot to be lawful and unmotivated by

2    any ulterior intent to harm, the Court properly affirmed the district court's judgment.

3          The next year, the Ninth Circuit in *Onossian* was tasked with determining whether several

4    officers' decision to engage in a high-speed pursuit "shocked the conscience" when it resulted in the

5    pursued car crashing and severely injuring bystanders.  *Onossian*, 175 F.3d at 1170-72.  There, after

6    seeing a car driving erratically down Santa Monica Boulevard, the officers activated their lights and

7    sirens, gave chase, and never exceeded a speed of 45 miles per hour.  *Id.* at 1170.  In holding that no

8    reasonable trier of fact could find that the officers' actions shocked the conscience, the Court

9    reasoned that there was "no evidence that deputies Finn, Yates, and Thomas intended to cause harm

10   to **anyone**." *Id.* at 1172 (emphasis added).  Had the controlling question been whether the officers

11   intended to cause harm to the **bystanders**, the Ninth Circuit would have focused on just that.  The

12   fact that their analysis focused on whether the officers had **any** intent to harm shows that the act of

13   engaging in a high-speed pursuit for the purpose of causing harm to anyone "shocks the conscience"

14   and strips the pursuit of a legitimate law enforcement purpose.

15         This is further shown in *Bingue*, where the Ninth Circuit held that an "intent to harm"

16   standard applies to all high-speed chases because the very nature of high-speed police chases does

17   not give officers adequate time to deliberate.  *Bingue*, 512 F.3d at 1177.  In finding that the officer's

18   actions did not meet the "intent to harm" standard, the Court reasoned that "[n]owhere in the record

19   is there any indication that [the officer] acted with an intent to harm, or had any motive other than a

20   desire to do his job." *Id.*  Like *Onossian*, the Court in *Bingue* built their analysis on the principle

21   from *Lewis*, that "if a police officer is **justified** in giving chase, that justification insulates the

22   officer from constitutional attack. . ." *Id.* at 1175.  Finding the officer's actions were justified by

23   hearing radio traffic that units were in pursuit of a stolen vehicle, and finding no evidence indicating

24   the officer intended to cause harm to anyone, it was clear to the Court that no due process violation

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

9

ER 058

1   occurred.  *Id.* at 1177.

2       Defendants cite *Suit* and *Rodriguez* for the proposition that an officer's intent to harm must

3   be directed at the injured bystander (Def. Mtn. at 9:7-10:14), but the reasoning of these cases further

4   supports Plaintiffs' position that an intent to harm anyone, unrelated to a legitimate law enforcement

5   interest, is sufficient to "shock the conscience."

6       In *Suit*, an officer attempted to pull over a suspect who had a misdemeanor warrant out for

7   his arrest and initiated a high-speed pursuit when the suspect failed to stop.  *Suit v. City of Folsom*,

8   2016 WL 6696060, at *1 (E.D. Cal. Nov. 15, 2016).   During the chase, the suspect's vehicle

9   collided with the plaintiffs, injuring them.  *Id.*  In finding that the officer acted with a legitimate law

10  enforcement purpose, the court dismissed the plaintiffs' complaint because "plaintiffs [did] not cite

11  a single case suggesting that [the officer] lacked authority to pursue or stop [the suspect] at that

12  time. *Id.* at *3.  The court further reasoned that the plaintiffs failed to allege "even a single factual

13  allegation from which the court could reasonably infer that [the officer] acted with a purpose to

14  harm unrelated to a legitimate law enforcement objective."  *Id.*

15      Since it was undisputed that the officer acted with a legitimate law enforcement purpose and

16  no facts were alleged that could raise the inference that the officer intended to harm the pursued

17  suspect, the bulk of the court's analysis logically focused on whether the officer intended to harm

18  the injured bystanders because that was the only thing left to analyze.  But this focus on the officer's

19  intent toward the bystanders does not categorically rule out that any intent to harm without a

20  legitimate law enforcement purpose "shocks the conscience."  Indeed, if the only relevant analysis

21  was the officer's subjective intent to harm the bystanders, the court would not have bothered

22  analyzing whether the officer had authority to engage in the chase or whether the plaintiffs alleged

23  facts that the officer "acted with a purpose to harm unrelated to a legitimate law enforcement

24  objective."

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1    Similarly, *Rodriguez* also follows the Ninth Circuit analysis of whether the officer's actions

2  were lawful and whether there was an intent to harm.  There, police responded to a domestic

3  disturbance where it was reported that a suspect had brandished a handgun and threatened to kill

4  another man.  *Rodriguez v. City of Fresno*, 819 F.Supp.2d 937, 943 (E.D. Cal. 2011).  While

5  attempting to shoot the armed suspect, officers accidentally shot the plaintiff.  *Id.*  The court found

6  that the officer's "pursuit of [the suspect] into the residence and his subsequent discharge of his

7  firearm at [the suspect] was not without legitimate law enforcement purpose or interest" because the

8  suspect "was armed, dangerous, and a threat to at least one other person in attendance at the party."

9  *Id.* at 950.  Following the reasoning that can be inferred from *Moreland*—that it is irrelevant to

10  analyze whether an officer intended to harm the suspect he lawfully shot at—the court then focused

11  only on whether the officer intended to harm the injured bystander.  Finding that "no reasonable

12  trier of fact could find that [the officer] acted toward [the bystander] with malice or for the purpose

13  of causing harm unrelated to any legitimate law enforcement interest", the court properly dismissed

14  the plaintiff's due process claim.

15    Unlike in *Suit* and *Rodriguez*, Plaintiffs here have alleged sufficient facts to infer that the

16  Defendant Officers acted with a purpose to harm unrelated to a legitimate law enforcement

17  objective, making additional proof of an intent to harm Plaintiffs unnecessary.  Plaintiffs have

18  further alleged facts sufficient to infer that the Defendant Officers knew they were acting without a

19  legitimate law enforcement purpose by failing to turn on their lights and sirens, breaking pursuit

20  protocol, and failing to radio dispatch that they were engaged in a chase.

21    Following the reasoning and analysis of the controlling Supreme Court and Ninth Circuit

22  cases, the Officers' decision to initiate a high-speed chase for the purpose of harming the suspect

23  "shocks the conscience," directly caused the Plaintiffs' injuries, and is sufficient to state a

24  Fourteenth Amendment due process claim.

**2.     Defendants are not insulated from Fourteenth Amendment liability because the officers were not justified in giving chase.**

Even assuming that the "purpose to harm" standard is only met if a plaintiff could impossibly show that officers intended to a harm a specific, yet unascertainable bystander, the Defendant Officers are still not insulated from Fourteenth Amendment liability because they intentionally misused their vehicle for an illegitimate law enforcement purpose and were not justified in giving chase.

The holding in *Bingue*, that an "intent to harm" standard applies to all high-speed chases, is explicitly premised on the Ninth Circuit's prior interpretation of *Lewis*, that "if a police officer **is justified in giving chase**, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase." *Bingue*, 512 F.3d at 1175 (citing *Onossian*, 175 F.3d at 1171).  In explaining their holding in *Lewis*, that high-speed chases with no intent to harm suspects does not give rise to liability under the Fourteenth Amendment, the Supreme Court stated that:

> [w]here a citizen suffers physical injury due to a police officer's *negligent use* of his vehicle, no section 1983 claim is stated.  It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle.

*Lewis*, 523 U.S. at 854 n.13 (emphasis in original); *see also O'Neal v. Cazes*, 257 Fed.Appx. 710, 713-14 (5th Cir. 2007) (adopting that officers' intentional misuse of a police vehicle is cognizable under section 1983, but the defendant officer's conduct "was far from crossing the constitutional line" because "he was engaged in legitimate law enforcement activity").

These rules of law in *Lewis*, *Onossian*, and *Bingue*, necessarily imply that where physical injury results from an officer's *unjustified* and *intentional misuse* of his vehicle, there is no insulation from constitutional attack or liability under section 1983.  The reason bystander recovery is premised on showing an "intent to harm" is the recognition that **legitimate** pursuits of fleeing

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1  criminals outweigh the danger to the general public created by the chase.  *See Lewis*, 523 U.S. at

2  853 ("[a] police officer deciding whether to give chase must balance on one had the need to stop a

3  suspect and show that flight from the law is no way to freedom, and on the other, the high-speed

4  threat to all those within stopping range, be they suspects, their passengers, other drivers, or

5  bystanders."); *Onossian*, 175 F.3d at 1171 (same); *Bingue*, 512 F.3d at 1176 ("officers must operate

6  under great pressure and make repeated split-second decisions about how best to apprehend the

7  fleeing suspect in a manner that will minimize risk to their own safety and the safety of the general

8  public").

9          But it is for this very reason that a heightened level of protection should not be extended to

10  officers who willfully misuse their vehicles and endanger the general public without a legitimate

11  law enforcement purpose.  *See, e.g., Lewis*, 523 U.S. at 845-46 ("[t]he touchstone of due process is

12  protection of the individual against arbitrary action of government, whether the fault lies in a denial

13  of fundamental procedural fairness, or in the exercise of power without any reasonable justification

14  in the service of a legitimate governmental objective") (internal citations and quotations omitted).

15  In such situations, the arbitrary, high-speed threat to the general public is not justified by any

16  legitimate governmental objective.

17          Here, Plaintiffs allege that the Defendant Officers started a high-speed chase out of animus

18  toward the suspect because he had participated in a car rally, and the Officers intended to cause the

19  suspect to crash his vehicle and succumb to his resulting injuries.  (FAC, ¶¶ 21, 23-24); *see also,*

20  *Ochoa*, 26 F.4th at 1056 (illegitimate law enforcement objectives include ulterior motives, such as

21  to bully a suspect or get even).  The Officers' illegitimate law enforcement purpose and misuse of

22  their vehicle are further shown by: 1) their intentional decision to not activate lights or sirens, so as

23  to not activate their vehicle's dash camera, which would capture their illegitimate pursuit; 2) their

24  failure to radio to dispatch that they were engaged in a pursuit; 3) their brazen violations of Oakland

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1    Police Department's official pursuit policy by engaging in a high-speed pursuit for an unjustified

2    reason, failing to activate lights and sirens, and failing to radio dispatch that they were in a pursuit;

3    4) their flight from the scene of the crash after their conduct, which created a serious medical

4    emergency; 5) their decision to not call medical personnel to the scene; and 6) their fraudulent act of

5    pretending they had just arrived at the scene after other officers had responded.  (FAC, ¶¶ 19-25,

6    35-36).

7           There is no question that taking these allegations as true, the Defendant Officers violated

8    Plaintiffs' Fourteenth Amendment rights.  Defendants intentionally misused their police vehicle and

9    created an exceedingly dangerous situation, without a legal justification, which foreseeably resulted

10   in death and injuries—the very reason this chase was prohibited by the Oakland Police Department

11   pursuit policy.  The Supreme Court in *Lewis* never intended to shield an officer's lawless action

12   simply because the officer was engaged in a high-speed chase.  Accordingly, the Officers here

13   should not escape Fourteenth Amendment liability for the egregious and unjustified danger they

14   foreseeably created simply because their shocking conduct involved a police chase.

**3.      Officers are not entitled to qualified immunity when they act with a
         "purpose to harm."**

16

17          If an officer's actions are motivated by an intent to cause harm unrelated to a legitimate law

18   enforcement purpose, Ninth Circuit caselaw does not require a factually similar case on point to

19   warn the officer that their conduct is unconstitutional because the officer is knowingly violating the

20   law.  *See A.D. v. California Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013) ("it was clearly

21   established law when Markgraf shot Eklund that acting with the purpose to harm unrelated to a

22   legitimate law enforcement objective violated due process").

23          While Defendants may argue that the "purpose to harm" standard outlined in *Lewis* and

24   *Moreland* is too general to be "clearly established," this argument was summarily rejected in *A.D. v.*

*California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013).  There, the Court reasoned that while they

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

could not say that it is clearly established law (for purposes of qualified immunity) that whatever "shocks the conscience" violates due process, they **could** say that **any reasonable officer** would know that "acting with a purpose to harm unrelated to a legitimate law enforcement objective (such as arrest, self-defense, or the defense of others) violates due process." *Id.* at 455.

Indeed, the Ninth Circuit in *A.D.* stated that by March 23, 2006 that "it was clearly established that a police officer, who acts with the purpose to harm unrelated to a legitimate law enforcement objective, violates the rights protected by the Fourteenth Amendment due process clause." *A.D.*, 712 F.3d at 454.

The Ninth Circuit held when it came to cases where officers have been shown to act with a purpose to harm unrelated to any legitimate law enforcement objective, they are "essentially compelled" to deny qualified immunity. (*Id.*) The Ninth Circuit explained that purpose to harm standard is unique in this respect because:

> This is one of those rare cases in which the constitutional right at issue **is defined by a standard that is so "obvious" that we must conclude**—based on the jury's finding—that qualified immunity is inapplicable, even without a case directly on point. See Hope, 536 U.S. at 740–41, 122 S.Ct. 2508 (recognizing that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question").
> *A.D.*, 712 F.3d at 455.

The Court's conclusion is logical given that qualified immunity is designed to protect "all but the plainly incompetent or those who **knowingly violate the law**." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (emphasis added). Acting with a purpose to harm, devoid of a legitimate law enforcement purpose, is by its very nature a *per se* knowing violation of the law. *See A.D.*, supra, 712 F.3d at 455 at footnote 4 (explaining that the "purpose to harm" unrelated to a law enforcement objective standard in and of itself deprives an officer of qualified immunity when it is shown).

This principle is shown through the Ninth Circuit's Fourteenth Amendment analysis in *Zion*. There, a suspect was shot numerous times by officers and lay incapacitated on the ground, curled up on his side. *Zion v. County of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017). After approximately

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1    ten seconds, an officer, seeing that the suspect was still moving, took a running start and stomped

2    on the suspect's head three times. *Id.* In reversing the district court's dismissal of the plaintiff's

3    Fourteenth Amendment claim, the Court held that "[a] jury could reasonably find that [the officer]

4    knew or easily could have determined that he had already rendered [the suspect] harmless…" and if

5    so, "a reasonable jury could also conclude that [the officer] was acting out of anger or emotion

6    rather than any legitimate law enforcement purpose." *Id*. at 1077. The Court importantly noted that

7    kicking the head of an incapacitated suspect is "exactly the kind of brutal conduct the Due Process

8    Clause protects against." *Id.*

9         This analysis shows that the pertinent question is whether the officer acted with a purpose to

10   harm, not whether the officer was on notice from a factually similar case that his knowing violation

11   of the law was unconstitutional. Indeed, the Ninth Circuit did not require the plaintiffs in *A.D.* to

12   point to a case warning officers that kicking an incapacitated suspect in the head, devoid of any

13   legitimate law enforcement purpose, violated the plaintiff's due process rights—every reasonable

14   officer already knows this. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (to be clearly established,

15   the foregoing law only must have been sufficiently clear that a reasonable official would understand

16   that what he was doing violated a constitutional right).

17        Here, any reasonable officer would know that engaging in a high-speed chase in violation of

18   their official pursuit policy for the purpose of attempting to cause the suspect to crash is a violation

19   of the law. Moreover, the Defendant Officers' own conduct during this incident shows that they

20   knew they were violating the law. Accordingly, the Defendants should not be granted qualified

21   immunity on Plaintiffs' Fourteenth Amendment due process claims.

22        **C.    The Defendant Officers Affirmatively Put Plaintiffs in Danger by Creating a
              Foreseeable Medical Emergency and Deliberately Delaying Medical Care.**

23        The Fourteenth Amendment's due process clause guarantees the right to "bodily security."

24   *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir.2006). As of December 2006, it was

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

well-established in this circuit that a Fourteenth Amendment violation occurs where officers "affirmatively place[] the [person] in a position of danger." *Maxwell v. County of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (quoting *Wood v. Ostrander*, 879 F.2d 583, 589–90 (9th Cir.1989) (internal quotation marks omitted)).  Officers affirmatively place a person in danger by leaving him "in a situation that [is] more dangerous than the one in which they found him." *Munger v. City of Glasgow Incident Dep't*, 227 F.3d 1082, 1086 (9th Cir.2000).

Indeed, the Ninth Circuit has repeatedly held the "critical distinction" for finding liability is not "between danger creation and enhancement, but ... between state action and inaction in placing an individual at risk." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018) (quoting *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997).  Therefore, the ultimate focus for liability under the Fourteenth Amendment is whether "the affirmative actions of [the] official create[d] or expose[d] an individual to a danger which he or she would not have otherwise faced." *Id.* (quoting *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012)).

A plaintiff must establish three (3) elements to succeed on a state-created danger claim: (1) an officer's affirmative actions created or exposed plaintiff to an actual, particularized danger that they would not have otherwise faced; (2) plaintiff's injuries were foreseeable; and (3) the officers were deliberately indifferent to the known danger.  *Martinez v. City of Clovis,* 943 F.3d 1260, 1271 (9th Cir. 2019).

Here, Defendant officers gave chase to a vehicle, causing it to lose control, that then struck Plaintiffs.  Once Plaintiffs were struck, Defendant officers saw and were aware of the injuries they had caused, and were obligated to attend to them.  However, Defendant officers delayed emergency

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

medical response and provide medical aid themselves, therefore exposing Plaintiffs to further injury, pain, and suffering.[2]

Instead, Defendant Officers drove away and kept their radios silent because they were concerned that they would get caught for their misconduct, were hoping the driver would die on scene and so deliberately delayed the medical response to the scene.  (cf. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that city had a constitutional obligation to provide medical care to a person injured during an arrest, and that the city satisfied its duty to provide medical care by taking an injured suspect to a hospital)).  Instead, as a result of the delay of medical assistance, Decedent passed away on the scene and Plaintiffs' injuries worsened in conformance with the Defendants' plan to cover up their misconduct.

It is clearly established that the danger creation exception applies where government officers "affirmatively placed the [victim] in a position of danger."  *Maxwell*, 708 F.3d at 1082 (quoting *Wood v. Ostrander*, 879 F.2d 583, 589-90 (9th Cir. 1989).  "Impeding access to medical care amounts to leaving a victim in a more dangerous situation."  *Id.* (citing *Penilla*, 155 F.3d at 710 (9th Cir. 1997).

It is further established that a state actor has "a constitutional duty under the due process clause to protect an individual where the state places that individual in danger though affirmative conduct."  *Penilla*, 115 F.3d at 711 (citing *Wood*, 879 F.3d 583, 589-590 (9th Cir. 1989)).  "[T]he custody of the victim is not a prerequisite for a § 1983 action brought against state actors when their affirmative actions place an individual in danger."  *Id.*

In *Maxwell*, police found a victim facing a preexisting danger from a gunshot wound.  *Maxwell*, 708 F.3d at 1082.  Instead of helping the victim, the officers increased the danger to the

---

[2] Notably in the police chase cases of *Lewis*, *Bingue* and *Ossonian*, it was undisputed that the involved officers summoned medical aid and none of the involved officers left the scene.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

victim by delaying her ambulance from leaving, which led to her death.  *Id.*  The Court held that the officers' actions violated due process because impeding the victim's access to medical care amounted to an affirmative action leaving the victim in a more dangerous position.  *Id.*

Similarly in *Penilla*, officers affirmatively placed the victim in greater danger by delaying medical treatment and moving the victim into an empty house.  *Penilla*¸115 F.3d at 710.  The Ninth Circuit held that the officers had a constitutional duty to provide medical care to the victim because "if affirmative conduct on the part of a state actor places a plaintiff in danger, and the officer acts in deliberate indifference to that plaintiff's safety, a claim arises under § 1983."  *Id.*

Like the officers in *Maxwell* and *Penilla*, the Defendant Officers here affirmatively increased the danger the Plaintiffs faced by delaying their access to medical care.  Even though the Defendant Officers were fully aware of the medical emergency they created, they did not report the crash or call for medical personnel, but instead deliberately took affirmative actions to ensure the victims of the crash would not receive prompt medical care.  As a result of this, the Defendant Officers should not receive qualified immunity.

Defendants cited four cases (*Hernandez v. City of San Jose*, 897 F.3d 1125, 1138 (9th Cir. 2018); *Munger v. City of Glasgow Police Department*, 227 F.3d 1082, 1086-87 (9th Cir. 2000); *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir.1992)) for the principle that the danger caused must occur from an encounter directly caused by the police. But Defendants did directly cause the increased danger and injuries to Plaintiffs. Although Defendants did not "have any knowledge of plaintiffs before the crash", they *did* have knowledge of Plaintiffs once the suspect crashed, witnessed their injuries and deliberately delayed medical response in an effort to ensure the suspect died. Indeed, it was solely by way of Defendants *affirmative* actions that Plaintiffs suffered injuries and required emergency medical care.

Defendants try to equivocate their arrival to the scene with first responding officers who

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

may not immediately summon medical care without accepting that Defendants were the ones who

caused the injuries during a seizure:

> "Would it be *proper* for the first officers on the scene of an accident to fail to summon medical
> care? Absolutely not. But would it be a violation of the Fourteenth Amendment to fail to do so?
> No. Would the same conduct become a Fourteenth Amendment violation if the first officers on
> scene had just been chasing the suspect who crashed into the victims? Also no, because the
> Supreme Court and Ninth Circuit have reviewed numerous police chases and determined that
> high-speed chases may be careless, reckless, or even deliberately indifferent to public safety
> and may cause serious injury of death to bystanders."
> (ECF 59 – Def. Mtn., 18 of 22)

Defendants *are required* to provide medical care to the persons they injure post-arrest and

the bystanders they injured – whether under the Fourteenth or Fourth Amendment[3]. At a

minimum, the Ninth Circuit has required police officers to "seek necessary medical attention by

promptly summoning help or taking the injured arrestee to a hospital." *Estate of Cornejo ex rel.*

*Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015); *see also City of Revere v.*

*Mass. Gen. Hosp*, 463 U.S. 239, 245 (1983) ("Whatever the standard may be, [the defendant]

fulfilled [his] constitutional obligation by seeing that [the apprehended person] was taken

promptly to the hospital that provided the treatment necessary for his injury.").

Plaintiffs cannot even fathom that Defendants are making a straight-faced argument that

officers have an obligation to provide care to post-arrest victims that they are pursuing but not

the bystanders that they injured during the arrest under the Fourth or Fourteenth Amendment –

because it simply is not true.

### D.      Plaintiffs' Bane Act Claim Must Proceed.

---

[3] If the Court finds the Fourth Amendment is the proper vehicle for the failure to provide post-arrest care,
Plaintiffs' should be granted leave to amend since their claims are still timely under the Fourth or Fourteenth
Amendment. *See, Reddy v Litton Indus., Inc.,* 912 F.2d 291, 296 (9th Cir. 1990) (if the allegations are insufficient to
state a claim, a court should grant leave to amend, unless amendment would be futile); *Cook, Perkiss & Leiche, Inc. v.*
*N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 246-47 (9th Cir. 1990).

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

The parties agree that California's Bane Act prohibits interference with constitutional or statutory rights by threats, intimidation, or coercion.  Cal. Civ. Code § 52.1(b).  And that there must be an underlying violation of a constitutional or statutory right.  *See, e.g., Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022); *Jones v. Kmart Corp*., 17 Cal. 4th 329, 334-35 (1998).

However, the parties disagree that Plaintiffs have alleged viable constitutional violations under the Fourteenth Amendment for both due process claims: (1) Defendants had a purpose to harm the suspect during the chase and injured Plaintiffs and (2) Defendants placed Plaintiffs in a more dangerous position as a result of their denying medical assistance.  Plaintiff will not re-hash those violations here, but refers to the previous sections that discuss the violations.

As for the specific intent of the Bane Act, "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged."  *Cornell v. City & County of San Francisco*, 17 Cal.App. 5th 766, 800 (2017).  Furthermore, "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights."  *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).  Finally, deliberate indifference qualifies as reckless disregard when it comes to the violation of constitutional rights.  *Scalia v. County of Kern*, 493 F.Supp.3d 890, 903 (E.D. Cal. 2019).

Here, Defendants make two arguments (1) Cal. Veh. § 17004 immunity must apply; (2) denial/delay of medical care cannot support a *Bane* act claim because it lacks intimidation, threat or coercion.

Defendants cannot obtain Cal. Veh. § 17004 immunity because they were not "an authorized emergency vehicle while responding to an emergency call or when in the immediate pursuit of an actual or suspected violator of the law". Defendants purposefully did not identify themselves as officers and pursued the suspect outside the "line of duty", intentionally misused their vehicle – and so, cannot obtain immunity.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
SOAKAI, ET AL. v. CITY OF OAKLAND, ET AL.

21

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

Moreover, Defendants complain that Plaintiffs cannot sustain a Bane Act claim on the basis of Defendants' delay of medical care under the state-created danger action because officers did not intimidate, coerce or threaten Plaintiffs. However, Defendants' did coerce the delay of medical treatment with their actions when they deliberately did not call in the injuries or summon medical care. Not only is there evidence they coerced the delay through affirmative acts to prevent summoning medical assistance but there is evidence of "specific intent" to coerce the delay of medical attention in their comments that they hoped the suspect died and was glad he was injured.

## IV.    CONCLUSION

For all of the aforementioned reasons, this Court should DENY Defendants' motion in its entirety.

Respectfully submitted,

Dated:  October 30, 2023                    POINTER & BUELNA, LLP
                                            LAWYERS FOR THE PEOPLE


                                            /s/Patrick Buelna
                                            PATRICK BUELNA
                                            Attorney for PLAINTIFFS

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1　DAVID B. NEWDORF, State Bar No. 172960
　　NEWDORF LEGAL
2　630 Thomas L. Berkley Way, Suite 103
　　Oakland, CA 94612
3　nl@newdorf.com
　　Telephone:　(415) 357-1234
4

5

6　Attorneys for Defendant
　　WALID ABDELAZIZ

7

8　　　　　　　UNITED STATES DISTRICT COURT

9　　　　　　NORTHERN DISTRICT OF CALIFORNIA

10　　　　　　　　SAN FRANCISCO DIVISION

11

12　ESTATE OF DECEDENT LOLOMANIA　　　Case No. 3:23-cv-00381 SK
　　SOAKAI; LAVINIA SOAKAI, an
13　individual and personal representative of　**DEFENDANT WALID ABDELAZIZ'S**
　　ESTATE; DANIEL FIFITA, an　　　　　**REPLY BRIEF IN SUPPORT OF**
14　individual; SAMIEUELA FINAU, an　　**MOTION FOR JUDGMENT ON THE**
　　individual; INA LAVALU, an individual;　**PLEADINGS; MEMORANDUM OF**
15　　　　　　　　　　　　　　　　**POINTS AND AUTHORITIES**
　　　　　　　　Plaintiffs,
16　　　　　　　　　　　　　　　　**[Fed. R. Civ. P. 12(c)]**
　　　　vs.
17　　　　　　　　　　　　　　　　Date:　　November 20, 2023
　　CITY OF OAKLAND, a municipal
18　corporation; WALID ABDELAZIZ, in his　　Time:　　9:30 a.m.
　　individual capacity as a police officer for
19　the CITY OF OAKLAND; JIMMY　　　Judge:　　Hon. Sallie Kim
　　MARIN-CORONEL, in his individual
20　capacity as a police officer for the CITY　　Place:　　Courtroom C, 15th Floor
　　OF OAKLAND; and DOES 1-50,　　　　　　　　450 Golden Gate Ave.
21　inclusive;　　　　　　　　　　　　　　San Francisco, CA 94102
　　　　　　　　Defendants.
22

23

24

25

26

27

28

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

REPLY ARGUMENT ................................................................................................ 1

    I.     The Complaint Fails to State a Fourteenth Amendment Claim Against the Police Officers Because They Did Not Intend to Harm Any Bystander................. 1

    II.    Plaintiffs Cannot Avoid the "Intent to Harm" Standard By Characterizing the Police Chase as Unjustified at the Outset.......................................................... 5

    III.   Plaintiffs' State-Created Danger Theory Fails Because There Was No Particularized Danger Directed at Any Specific Bystander. .................................. 6

    IV.   The Officers Are Entitled to Qualified Immunity Because Plaintiffs Identified No Court Decision Finding a Violation of a Fourteenth Amendment Rights When a Police Chase Injures a Bystander. ............................ 8

    V.    Plaintiffs Cite No Authority Supporting a Bane Act Claim Based on a Police Chase or Failure to Summon Medical Care. ................................................. 9

CONCLUSION ....................................................................................................... 10

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

i

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011)................................................................. 13

*Balistreri v. Pacifica Police Dept.*
    901 F.2d 696 (9th Cir. 1990)...................................................... 2

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)..................................................... 1, 2, 3, 4

*Bingue v. Prunchak*
    512 F.3d 1169 (9th Cir. 2008).............................................. 5, 7, 9

*Chavez v. United States*
    683 F.3d 1102 (9th Cir. 2012)...................................................... 2

*Clegg v. Cult Awareness Network*
    18 F.3d 752 (9th Cir. 1994)........................................................ 2

*Conley v. Gibson*
    355 U.S. 41 (1957)................................................................ 2

*County of Sacramento v. Lewis*
    523 U.S. 833 (1998)......................................................... passim

*Cruz v. Briseno*
    22 Cal.4th 568 (2000)............................................................ 16

*DeShaney v. Winnebago County Dept. of Social Services*
    489 U.S. 189 (1989)...................................................... 1, 10, 15

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982)............................................................. 13

*Hernandez v. City of San Jose*
    897 F.3d 1125 (9th Cir. 2018).................................................... 12

*Iqbal v. Ashcroft*
    556 U.S. 662 (2009)......................................................... passim

*Jackson v. Byrne*
    738 F.2d 1443 (7th Cir. 1984).................................................... 13

*Jackson v. City of Joliet*
    715 F.2d 1200 (7th Cir. 1983).................................................... 11

*Kennedy v. City of Ridgefield*
    439 F.3d 1055 (9th Cir. 2006).................................................... 15

ii

**NEWDORF LEGAL**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

*Kisela v. Hughes*
 138 S.Ct. 1148 (2018) ................................................................................ 14

*L.W. v. Grubbs*
 974 F.2d 119 (9th Cir.1992).......................................................................... 12

*Martin v. City of San Jose*
 2020 WL 5910078 (N.D. Cal. Oct. 6, 2020)................................................. 16

*Martinez v. City of Clovis*
 943 F.3d 1260 (9th Cir. 2019).............................................................. 11, 14

*Maxwell v. County of San Diego*
 708 F.3d 1075 (9th Cir. 2013)...................................................................... 13

*Maya v. Centex Corp.*
 658 F.3d 1060 (9th Cir. 2011)................................................................... 3, 5

*Moreland v. Las Vegas Metropolitan Police Dept.*
 159 F.3d 365 (9th Cir. 1998)......................................................................... 8

*Munger v. City of Glasgow Police Department*
 227 F.3d 1082 (9th Cir. 2000).............................................................. 12, 13

*Murguia v. Langdon*
 61 F.4th 1096 (9th Cir. 2023) ..................................................................... 10

*Onossian v. Block*
 175 F.3d 1169 (9th Cir. 1999).................................................................... 6, 7

*Penilla v. City of Huntington Park*
 115 F.3d 707 (9th Cir. 1997)........................................................................ 13

*Polanco v. California*
 2022 WL 1539784 (N.D. Cal. May 16, 2022) ............................................. 17

*Rivas-Villegas v. Cortesluna*
 142 S.Ct. 4, 8 (2021) .................................................................................... 14

*Rodriguez v. City of Fresno*
 819 F.Supp.2d 937 (E.D. Cal. 2011)............................................................. 9

*Saucier v. Katz*
 533 U.S. 194 (2001)..................................................................................... 14

*Scott v. Harris*
 550 U.S. 372 (2007)....................................................................................... 6

*Shafer v. Cty. of Santa Barbara*
 868 F.3d 1110 (9th Cir. 2017)...................................................................... 14

iii

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

*Sinclair v. City of Seattle*
   61 F.4th 674 (9th Cir. 2023) ................................................................. 11, 12

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) ................................................................ 3, 5

*Suit v. City of Folsom*
   2016 WL 6696060 (E.D. Cal. Nov. 14, 2016) ................................................ 9, 10

*Tortu v. Las Vegas Metropolitan Police Department*
   556 F.3d 1075 (9th Cir. 2009) ................................................................ 14

*Towery v. State*
   14 Cal. App. 5th 226 (2017) .................................................................. 16

*White v. Pauly*
   580 U.S. 73 (2017) ......................................................................... 14

*Wood v. Ostrander*
   879 F.2d 583 (9th Cir. 1989) ................................................................ 12

**Statutes**

California Civil Code
   § 52.1 .................................................................................... 2, 16

California Vehicle Code
   § 17004 .................................................................................. 2, 15

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

iv

**REPLY ARGUMENT**

**I.    The Complaint Fails to State a Fourteenth Amendment Claim Against the Police Officers Because They Did Not Intend to Harm Any Bystander.**

The only Ninth Circuit and U.S. District Court cases that actually involve bystander claims support the conclusion that officers will not be liable unless they had an "intent to harm" the bystanders. Plaintiffs rely on dicta that they take out of context to support the view that intent to harm a suspect is enough to support a Fourteenth Amendment due process claim brought by an injured bystander.

The *Lewis* Court noted that risk to bystanders was part of its calculus, but despite those risks, the Fourteenth Amendment would only penalize officers who acted with intent to harm. In that case, the injured plaintiff was the passenger on a motorcycle fleeing from police. The Court in *Lewis* held:

> [H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983.

*Lewis*, 523 U.S. at 854 (1998).

Plaintiffs erroneously attempt to expand the Court's statement of its holding beyond the facts and legal discussion of the case. Plaintiffs contend the statement quoted above meant that "intent to harm suspects" is a sufficient basis for *any* police pursuit claim, whether brought by the fleeing suspect or an innocent bystander. But that is neither what the Court said in *Lewis* nor how other Court's understood the holding of the case.

One of the earlies cases in which the Ninth Circuit applied the holding in *Lewis* wasn't a police chase case at all. It was the case of *Moreland v. Las Vegas Met. Police Dept,* 159 F.3d 365 (9th Cir. 1998), .

In that case, police officers responded to a gunfight in a parking lot outside a bar. Between 50 and 100 people were caught in the crossfire. Police shot and killed a man whom they believed to be one of the shooters. It was later determined that the police had shot an unarmed bystander. The Ninth Circuit held in *Moreland* (based on *Lewis*) that police were not liable because they hadn't intended to kill an unarmed bystander. *Moreland,* 159 F.3d at 372.

Newdorf Legal
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

The *Moreland* court first determined that an "intent to harm" standard would apply to the bystander's claim under the Fourteenth Amendment. Following *Lewis,* the Ninth Circuit held that "the critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." *Id.* at 373. The Ninth Circuit concluded that the urgency of an active and ongoing shooter scenario with up to 100 innocent bystanders in danger was equivalent to an officer's split-second decision to pursue a fleeing suspect. The *Lewis* "rationale applies with equal force to the circumstances faced by" the Las Vegas police officer. *Id.* at 372.

It is beyond cavil that the police in the *Moreland* case fired their weapons with the intent to disable or kill – i.e., cause bodily harm to –the gunman. But the officers' intent to harm the intended target did not allow the accidentally injured bystander to state a Fourteenth Amendment Claim because there was no intent to harm the bystander. *Id; see also Rodriguez v. City of Fresno*, 819 F.Supp.2d 937, 950 (E.D. Cal. 2011),(when police accidentally shot the suspect's girlfriend, there was no Fourteenth Amendment violation under *Lewis* because "no reasonable trier of fact could find that [the officer] acted ***toward Plaintiff*** with . . . the purpose of causing harm unrelated to any legitimate law enforcement interest.").

The year after its *Moreland* decision, the Ninth Circuit for the first time applied the *Lewis* holding to a Fourteenth Amendment claim brought by a bystander injured during a police chase. That case was *Onossian v. Block*, 175 F.3d 1169 (9th Cir. 1999). The Ninth Circuit in *Onossian* held that the *Lewis* standard also applied to injury claims brought by a bystander. based on a police pursuit.

> On the evening of August 17, 1991, Scott Reed passed defendant Los Angeles County Sheriff's deputies Finn and Yates in his hardtop Oldsmobile "muscle car," moving in and out of traffic at about 60 miles per hour on busy Santa Monica Boulevard in Los Angeles. Finn and Yates followed Reed, who continued to drive erratically and recklessly. Finn, who was driving the patrol car, turned on his siren and lights, and gave chase. Rather than stopping, Reed attempted to elude Finn and Yates, maintaining speeds of up to 60 or 70 miles an hour.

*Onossian,* 175 F.3d at 1170.

**Newdorf Legal**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA. 94612
(415) 357-1234

The court considered whether police owed a greater duty of care "toward innocent people" than "to fleeing suspects, so that another driver or an innocent bystander should be able to recover from the police upon a lesser showing of recklessness or misconduct than that required by *Lewis*' 'shock-the-conscience' test." *Id.* at 1171. But the Ninth Circuit read *Lewis* to be deferential toward police who must make the "split second" decision whether to chase a fleeing suspect. *Id.*

"Comparing the facts in this case to those in *Lewis*, it is clear that no reasonable trier of fact could find that defendants' actions shock the conscience. There is no evidence that deputies Finn, Yates, and Thomas intended to cause harm to anyone." *Id.* at 1172.

Plaintiffs argue that if the Ninth Circuit intended that a bystander claim required intent to harm the bystander, it would have been more specific in the language cited above from *Onossian*. That is not logically correct. The Court's ruling need only resolve the legal issues of the case at issue. Going beyond that would be *dicta.* However, the Ninth Circuit in *Onossian* did implicitly endorse the rule that bystander claims in police chase cases require an intent to harm the bystander. The Court establishes this requirement by basing its *Onossian* ruling on the holding in *Moreland*:

> We have already come close to answering the question of a police officer's obligation to non-suspects in a high speed chase. In *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365 (9th Cir. 1998), we held that the *Lewis* test applied where a bystander was killed by police in a gunfight outside a bar:
>
> > The question we face today is whether this newly minted explanation of the `shocks the conscience' standard also controls in cases where it is alleged that an officer inadvertently harmed a bystander while responding to a situation in which the officer was required to act quickly to prevent an individual from threatening the lives of others. We conclude that it does.
>
> [*Moreland*] 159 F.3d at 372. It is a small step from applying *Lewis* to a bystander harmed in a gunfight to applying it to another driver harmed in the very situation in which the *Lewis* test originated.

*Onossian*, 175 F.3d at 1172.

As noted above, it is clear from the facts of *Moreland* that the officers had "intent to harm" the suspect gunman. But the Ninth Circuit held that was not sufficient to permit a Fourteenth Amendment claim on behalf of a bystander to whom officers meant no harm.

3

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

Only one court decision within the Ninth Circuit has explicitly addressed whether intent to harm the fleeing suspect would satisfy the *Lewis* standard in a case brought by an innocent bystander. That decision is squarely against Plaintiffs' main contention in this case. In *Suit v. City of Folsom,* Case No. 2:16-00807 WBS, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016), Heather Suit was driving her daughter to school in Folsom, California. While they were on the road, Officer Kracher engaged in a pursuit of a suspect in a "non-violent" and "cold" misdemeanor case. The suspect had been "driving lawfully" before the pursuit but drove "in a reckless manner" after Officer Kracher began the chase. The pursuit ended when the suspect collided with the plaintiffs' vehicle.

The Court in *Suit* applied the *Lewis* intent-to-harm standard because "Ninth Circuit precedent . . . holds the intent to harm standard applies to all high-speed chases." *Id.* (citing *Bingue, supra,* 512 F.3d at 1177). The Court stated:

> In the court's August 8 Order, the court found plaintiffs' FAC did not allege sufficient facts to give rise to the inference that Officer Kracher acted with the ***intent to harm bystanders***. . . . The FAC did "not even allege the legal conclusion that Officer Kracher continued his pursuit of Carson with ***an intent or purpose to cause harm to plaintiffs***." The SAC fails for much of the same reasons.
>
> * * *
>
> Plaintiffs allege defendants were deliberately indifferent to nearby bystanders and "were further aware and appreciated the fact that [it would be a dangerous pursuit]" due to the probable pursuit taking place through residential and school zones." (SAC ¶¶ 30-31.) Allegations that the officer acted negligently, recklessly and carelessly, grossly negligent[ly], or in a conscious disregard of plaintiffs' rights does not rise to the level of intent or purpose to cause harm. *Lewis*, 523 U.S. at 854; *accord Bingue*, 512 F.3d at 1174
>
> Plaintiffs have failed to allege that Officer Kracher, the City, or the Department acted with the ***purpose to harm plaintiffs***. Because the SAC lacks even a single factual allegation from which the court could reasonably infer that Officer Kracher acted with a purpose to harm unrelated to a legitimate law enforcement objective, plaintiffs fail to allege a cognizable violation of the Fourteenth Amendment necessary to sustain a § 1983 claim against Officer Kracher, the City, and the Department.

*Suit v. City of Folsom*, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016) (emphasis added).

Plaintiffs have cited no cases to support their contention that the officers' alleged intent to harm the suspect is sufficient to state a Fourteenth Amendment claim. The arguments rest on faulty

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

4

logic and dicta taken out of context. The Fourteenth Amendment claims should therefore be dismissed.

## II. Plaintiffs Cannot Avoid the "Intent to Harm" Standard By Characterizing the Police Chase as Unjustified at the Outset.

Plaintiffs' fallback position is simply a re-cast version of its first argument. Plaintiffs reason that bystanders *can* prevail on a Fourteenth Amendment claim if police intended to harm the suspect because the officer was not "justified in giving chase" in the first place. (Opp. at 12 [quoting *Bingue,* 512 F.3d at 1175.)

The obvious problem with the argument is that none of the cases support it. Plaintiff cannot cite a single bystander case in the U.S. Supreme Court or Ninth Circuit in which the court permitted a bystander claim under the Fourteenth Amendment to proceed. *See County of Sacramento v. Lewis*, 523 U.S. 833, 855 (district court granted summary judgment in favor of defendants; the Ninth Circuit reversed; the Supreme Court held the chase in which plaintiff was killed "does not shock the conscience, and petitioners are not called upon to answer for it under § 1983); *Onossian,* 175 F. 3d ___ (affirming summary judgment against bystander and in favor of officers); *Bingue v. Prunchak*, 512 F.3d 1169 (9th Cir. 2008) (affirming summary judgement against bystanders and in favor of officers); *Suit v. City of Folsom*, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016) (dismissing bystanders' complaint for failure to allege that officer intended to harm plaintiffs).

The Plaintiffs rest this argument on the following passage from two Ninth Circuit cases:

> "As we read the Court's opinion[in *Lewis*], if a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase."

*Bingue v. Prunchak*, 512 F.3d at 1175 (quoting *Onossian*, 175 F.3d at 1171).

As Plaintiffs see it, this language means the court must distinguish the "good chases" (which were justified) from the "bad chases" (that were not). This disregards the Ninth Circuit's stated purpose in *Bingue* to avoid looking into the facts of each police chase in order to determine the applicable legal standard.

The Ninth Circuit in *Bingue* stated:

> In *Onossian v. Block*, we applied the Supreme Court's decision in County of
> *Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043
> (1998), and held that a police officer in a high-speed chase — whether he

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

5

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

injures the fleeing suspect or a bystander — is entitled to qualified immunity unless his behavior "shocks the conscience" because it demonstrates an intent "to cause harm unrelated to the legitimate object of arrest." 175 F.3d 1169, 1171 (9th Cir. 1999) (internal quotation marks omitted). We were not called upon to consider whether the district court must apply this "intent to harm" standard to all high-speed chases, or only those chases that involve "emergencies" or "split-second decisions." Today we refine our *Onossian* analysis and hold, following the Eighth Circuit, that police officers involved in ***all high-speed chases*** are entitled to qualified immunity under 42 U.S.C. § 1983 unless the plaintiff can prove that the officer acted with a deliberate intent to harm.

*Bingue,* 512 F.3d at 1170-71.

In other words, all high-speed chases are judged alike in that they all require "split second" decisions whether to pursue the fleeing suspect. The *Lewis* Court weighed the public interest in catching criminal suspects against the inherent risk to police, suspects, and bystanders from high-speed pursuits. The U.S. Supreme Court found that because of the urgent circumstances in which the decision to chase must be made, the officers who make these decisions will not be liable for injuries they may cause through negligence, recklessness, or deliberate indifference to safety. The Ninth Circuit held that the same *Lewis* standard applies to all police chases. Police will only be liable for injuries that result from a chase if they had an intent to harm.

Plaintiffs' argument that the Court must determine -- based on the individual facts of each case -- whether the officer's decision to pursue a suspect was justified is contrary to *Lewis, Osonnian,* and *Bingue.*

### III.   Plaintiffs' State-Created Danger Theory Fails Because There Was No Particularized Danger Directed at Any Specific Bystander.

Plaintiffs contend that the failure to call for medical help constitutes a separate basis for finding a violation of Substantive Due Process under the Fourteenth Amendment. They base this claim on the state-created danger doctrine. The argument goes that the high-speed chase evidenced deliberate indifference to the safety of bystanders, plaintiffs were foreseeably injured when the suspect crashed, and their injuries were exacerbated when officers did not immediately call for medical help. As pointed out in the moving papers (but not addressed in the opposition), this argument has fatal flaws.

6

State actors may be liable under the Fourteenth Amendment if they place a person in a position of "actual, **particularized** danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (emphasis added). In the context of the state-created-danger doctrine, "particularized" means the danger "is directed at a specific victim." *Sinclair v. City of Seattle,* 61 F.4th 674, 682 (9th Cir. 2023).[1] The fleeing suspect's speed and reckless driving threatened the safety of the public at large in proximity to the chase. Because the officers' conduct did not create a danger *particularized* to the plaintiffs, there can be no Substantive Due Process violation under the state-created-danger doctrine.

"A danger is 'particularized' if it is directed at a specific victim. A survey of our cases makes that clear." *Sinclair,* 61 F.4th at 682 (citing and discussing cases.)[2].Based on a review and discussion of nearly every Ninth Circuit decision on the subject, the Court in *Sinclair* observed, "In each of those cases, the danger was particularized to the plaintiffs." (61 F.4th at 683.) Every case stemmed directly from an encounter between police (or another state actor) and the plaintiff. *Id.*

By contrast, in *Sinclair,* the danger to plaintiff's son (who was shot and killed by a third party) arose from the City's action in removing all officers from a particular police precinct due to large-scale protests. In rejecting the Fourteenth Amendment claim, the *Sinclair* Court noted that neither police nor the City "had any previous interactions with her son, directed any actions toward him, or even knew of her son's existence until he was killed." *Sinclair,* 61 F.4th at 683.

In the present case, the officers had no knowledge of the specific plaintiffs before the crash. At the scene, the defendants did not by any affirmative conduct hinder or prevent other first responders from rendering aid and assistance. The facts of this case do not rise to the level of affirmative conduct that delayed or prevented medical treatment. *See Maxwell v. County of San*

---

[1] *See also Est. of Romain v. City of Grosse Pointe Farms,* 935 F.3d 485, 491-92 (6th Cir. 2019) (the state-created danger must be "specific to plaintiff")*; Villanueva v. City of Scottsbluff,* 779 F.3d 507, 512 (8th Cir. 2015) (the danger was directed at plaintiff individually or as a member of a "limited and definable group"); *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014) (same).

[2] *Sinclair* discusses *Hernandez v. City of San Jose,* 897 F.3d 1125, 1138 (9th Cir. 2018); *Munger v. City of Glasgow Police Department,* 227 F.3d 1082, 1086-87 (9th Cir. 2000); *Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir. 1989); *L.W. v. Grubbs,* 974 F.2d 119 (9th Cir.1992). Defendant's opening brief summarizes these cases at page 12.

**Newdorf Legal**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

*Diego,* 708 F.3d 1075, 1082 (9th Cir. 2013) (police officer who prevented a gunshot victim from leaving for the hospital in a waiting ambulance was liable under the Fourteenth Amendment for her death); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (police officers who cancelled a 911 call, dragged the man into an empty house, and locked him alone inside with knowledge of his serious medical needs would violate the Fourteenth Amendment).

The First Amended Complaint fails to allege – and could not be amended to allege – facts establishing a particularized danger directed specifically at any Plaintiff. The Opposition does not even mention *Sinclair* or its holding.

**IV.    The Officers Are Entitled to Qualified Immunity Because Plaintiffs Identified No Court Decision Finding a Violation of a Fourteenth Amendment Rights When a Police Chase Injures a Bystander.**

Plaintiffs erroneously contend that qualified immunity must be denied at this stage because they allege that the officers engaged in the chase with an intent to harm the fleeing suspect. For this point they cite *A.D. v. California Highway Patrol,* 712 F.3d 446 (9th Cir. 2013) (denying post-verdict motion for summary judgment after jury found that an officer acted with intent to harm when he shot at a driver who was no longer fleeing, trapped in a dead-end zone, and driving slowly.) Plaintiffs have cited no cases that either found officers liable under the Fourteenth Amendment for engaging in a chase that injured bystanders or denied qualified immunity in a bystander injury case. The only case decided by a court within the Ninth Circuit to explicitly address the central issue on this motion – whether bystanders injured by a police chase can state a Fourteenth Amendment claim absent an intent to injure the plaintiffs – dismissed the Complaint. *See Suit v. City of Folsom,* Case No. 2:16-00807 WBS, 2016 WL 6696060 (E.D. Cal. Nov. 14, 2016).

Qualified immunity must be analyzed from the perspective of cases law deciding the claims brought by the plaintiffs. The qualified immunity defense cannot be defeated by citing cases for the proposition that defendants' conduct would be unlawful if challenged by another party or under another theory. For example, Plaintiffs may not defeat a motion for qualified Immunity on a Fourteenth Amendment claim (brought for deprivation of familial rights by relatives of a man who

**NEWDORF LEGAL**
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

died in police custody) by citing a case holding which clearly establishes that the force used against the decedent violated the Fourth Amendment. *Gonzalez v. City of Alameda*, 21-cv-09733-DMR, at *46 (N.D. Cal. Sep. 22, 2023)

Judge Ryu in the *Gonzalez* case granted the officers qualified immunity motion on the Fourteenth Amendment claims even though the officers violated clearly established law under the Fourth Amendment:

> Ultimately, Plaintiffs offer no authority that *Drummond* clearly established rights under the Fourteenth Amendment even though it addressed only a Fourth Amendment excessive force claim. In light of the binding authority of *Nicholson*, the court concludes that the law was not clearly established at the time of Mr. Gonzalez's detention and arrest that the officers violated Plaintiffs' Fourteenth Amendment familial association rights by using force on Mr. Gonzalez while he was handcuffed and lying prone on the ground. Accordingly, McKinley, Fisher, and Leahy are entitled to qualified immunity on the Fourteenth Amendment claims. Summary judgment is granted for Defendants on these claims.

*Gonzalez v. City of Alameda*, 21-cv-09733-DMR, at *46 (N.D. Cal. Sep. 22, 2023)

In this case, it is not sufficient for plaintiffs to argue that the Complaint would allege a violation of clearly established law if the fleeing suspect were the plaintiff. Rather, Plaintiffs have the burden to show by citation to specific cases within the Ninth Circuit that the officers violated the clearly established rights of the bystander plaintiffs. As the only case cited that is directly on point – *Suit v. City of Folsom* -- established that the officers did not violate plaintiffs' Fourteenth Amendment rights, this motion for qualified immunity must be granted.

**V.     Plaintiffs Cite No Authority Supporting a Bane Act Claim Based on a Police Chase or Failure to Summon Medical Care.**

The moving papers cited California Vehicle code section 17004, which establishes immunity from state-law liability for injuries caused by an "authorized emergency vehicle" when "in immediate pursuit of an actual or suspected violater of the law." The moving papers further cited state and federal case law applying this immunity to the Bane Act. *See Martin v. City of San Jose*, No. 19-cv-01227-EMC, 2020 WL 5910078 (N.D. Cal. Oct. 6, 2020); *see also Towery v. State,*

REPLY BRIEF ISO WALID ABDELAZIZ'S MOTION FOR JUDGMENT ON THE PLEADINGS  – Case No. 23-cv-00381 SK

14 Cal. App. 5th 226, 232 (2017) (Bane Act is subject to public entities' and public employees' statutory immunities); *Cruz v. Briseno*, 22 Cal.4th 568, 569 (2000)

The Opposition cites cases describing the general elements of a Bane Act claim but nothing particular to the Vehicle Code immunity. Nor have Plaintiffs cited any cases that would allow a Bane Act to proceed without allegations of conduct that

> **. . . interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion**, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . (Civ. Code. § 52.1(b) [emphasis added].)

The Bane Act cause of action should be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, and the reasons stated in the morning papers, the Court should grant the motion and dismiss the First Amended Complaint in its entirety as to Defendant Walid Abdelaziz.

Dated:    November 6, 2023                    NEWDORF LEGAL


By: */s/ David B. Newdorf*
DAVID B. NEWDORF
Attorneys for Defendant
WALID ABDELAZIZ

NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

**KAUFMAN DOLOWICH & VOLUCK, LLP**
Aimee G. Hamoy (SBN 221228)
Joshua R. Krasner (SBN 346561)
180 Grand Avenue, Suite 995
Oakland, California 94612
Telephone: (415) 926-7600
Facsimile: (415) 926-7601
ahamoy@kaufmandolowich.com
joshua.krasner@kaufmandolowich.com

Attorneys for Defendant
JIMMY MARIN-CORONEL

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DECEDENT LOLOMANIA SOAKAI; LAVINIA SOAKAI, an individual and personal representative of ESTATE; DANIEL FIFITA, an individual; SAMIEUELA FINAU, an individual; INA LAVALU, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF OAKLAND, a municipal corporation; WALID ABDELAZIZ, in his individual capacity as a police officer for the CITY OF OAKLAND; JIMMY MARIN-CORONEL, in his individual capacity as a police officer for the CITY OF OAKLAND; and DOES 1-50, inclusive, <br><br> Defendants. | Case No.: 3:23-cv-00381 <br><br> Action Filed: February 18, 2022 <br><br> **DEFENDANT JIMMY MARIN-CORONEL'S JOINDER OF DEFENDANT WALID ABDELAZIZ'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> **Date**: November 20, 2023 <br> **Time**: 9:30 a.m. <br> **Judge**: Hon. Sallie Kim <br> **Place**: Courtroom C, 15th Floor <br> 450 Golden Gate Ave. <br> San Francisco, CA 94102 |

1.

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN: PLEASE TAKE NOTICE that Defendant JIMMY MARIN-CORONEL hereby joins in Defendant WALID ABDELAZIZ's Reply to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings, scheduled to be heard November 20, 2023, before the Hon. Sallie Kim in Courtroom C, 15th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102.

Defendant Jimmy Marin-Coronel ("Marin") concurs and joins in Defendant Walid Abdelaziz's ("Abdelaziz") Motion for Judgment on the Pleadings ("Reply") for the reasons set forth in such Reply and hereby stipulates to the relief sought therein. As such, Marin hereby seeks a dismissal of Plaintiffs' First Amended Complaint ("FAC").

Defendant Marin and Abdelaziz (collectively "Defendants") are in the same position regarding the subject matter discussed in the Reply. Marin is a co-defendant with Abdelaziz and a named defendant on all the same causes of action as Abdelaziz. Marin and Abdelaziz were partners, rode in the same car during the pursuit which gave rise to the allegations in the FAC. Further, the allegations in the FAC make no differentiation between the Marin and Abdelaziz, essentially accusing them of exactly the same conduct. As such, the legal arguments in the Reply apply equally to both Defendants. Considering the foregoing, the relief afforded to Abdelaziz, as set forth in the Reply, should also be afforded to Marin as a joining party as separately requested herein.

## I.    LEGAL STANDARD

Marin joins this portion of Abdelaziz's Reply, because the same standard applies against Marin as against Abdelaziz. Thus, by and through its joinder in Abdelaziz's Reply, Marin has also demonstrated that Plaintiffs have failed to state a claim against Marin upon which relief can be granted, and accordingly, Plaintiffs' FAC should be dismissed as to Marin.

## II.    STATEMENT OF FACTS

Marin joins this portion of Abdelaziz's Reply, because the facts as described in the Reply are equally applicable to Marin as to Abdelaziz. Thus, by and through its joinder in Abdelaziz's Reply, Marin has also demonstrated that Plaintiffs have failed to state a claim against Marin upon which relief can be granted, and accordingly, Plaintiffs' FAC should be dismissed as to Marin.

2.

**DEFENDANT JIMMY MARIN-CORONEL'S JOINDER OF DEF. ABDELAZIZ'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENSE4MOTION FOR JUDGMENT ON THE PLEADINGS**

### III.    ARGUMENT

**A.    The Complaint Fails to State a Fourteenth Amendment Claim Against the  Police Officers Because They Did Not Intend to Harm Any Bystander.**

Marin joins this portion of Abdelaziz's Reply, as the arguments and supporting authorities discussed, because Plaintiffs have not alleged facts sufficient to support any intent to harm any bystander.

**B.    Plaintiffs Cannot Avoid the "Intent to Harm" Standard By Characterizing this Police Chase as Unjustified.**

Marin joins this portion of Abdelaziz's Reply, as the arguments and supporting authorities discussed, because Plaintiffs' attempt to mischaracterize the police chase does not obviate the requirement Plaintiffs must show an intent to harm.

**C.    Plaintiffs' State-Created Danger Theory Fails Because There Was No Particularized Danger Directed at Any Specific Bystander.**

Marin joins this portion of Abdelaziz's Reply, as the arguments and supporting authorities discussed, because there are no alleged facts to support a state-created danger theory against a specific bystander.

**D.    The Officers Are Entitled to Qualified Immunity Because Plaintiffs Identified No Court Decision Finding a Violation of a Fourteenth Amendment Rights When a Police Chase Injures a Bystander.**

Marin joins this portion of Abdelaziz's Reply, as the arguments and supporting authorities discussed, because qualified immunity applies to the allegations in the FAC.

**E.    Plaintiffs Cite No Authority Supporting a Bane Act Claim Based on a Police Chase or Failure to Summon Medical Care.**

Marin joins this portion of Abdelaziz's Reply, as the arguments and supporting authorities discussed, because there is no authority to support a Bane Act Claim in Plaintiffs' FAC.

//

//

//

3.

**DEFENDANT JIMMY MARIN-CORONEL'S JOINDER OF DEF. ABDELAZIZ'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENSE4MOTION FOR JUDGMENT ON THE PLEADINGS**

### IV.   CONCLUSION

For all of the reasons set forth herein and in Abdelaziz's Motion for Judgment on the Pleadings and Reply, to which the instant joinder applies, Plaintiffs' FAC against Marin fails, and should be dismissed for the same reasons as set forth in Abdelaziz's Motion and Reply: each fails to state a claim upon which relief can be granted against Marin.


DATED:  November 6, 2023                    KAUFMAN DOLOWICH & VOLUCK, LLP


                                            *Aimee Hamoy*
                                            _____
                                            Aimee G. Hamoy, Esq.
                                            Joshua R. Krasner, Esq.
                                            Attorneys for Defendant
                                            JIMMY MARIN-CORONEL

**DEFENDANT JIMMY MARIN-CORONEL'S JOINDER OF DEF. ABDELAZIZ'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENSE4MOTION FOR JUDGMENT ON THE PLEADINGS**

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   ESTATE OF DECEDENT LOLOMANIA        Case No.  23-cv-00381-SK
    SOAKAI, et al.,

8                   Plaintiffs,

9          v.                           **ORDER ON MOTION TO DISMISS**
                                        **AND MOTION FOR JUDGMENT ON**
10  CITY OF OAKLAND, et al.,            **THE PLEADINGS**

11                  Defendants.         Regarding Docket Nos. 20, 59, 66

12          This matter comes before the Court upon consideration of the motion to dismiss filed by

13  Defendant the City of Oakland ("The City") and the motion for judgment on the pleadings filed by

14  Defendant Wald Abdelaziz ("Abdelaziz").  Defendant Jimmy Marin-Coronel ("Marin-Coronel")

15  filed a joinder to Abdelaziz's motion.  The Court will refer to Abdelaziz and Marin-Coronel

16  jointly as the "Individual Defendants" and will refer to all three defendants collectively as

17  "Defendants."  Having carefully considered the parties' papers, relevant legal authority, and the

18  record in the case, the Court hereby GRANTS the City's motion to dismiss and GRANTS IN

19  PART and DENIES IN PART Abdelaziz's motion for the reasons set forth below.  The Court

20  FURTHER GRANTS Marin-Coronel's motion to join Abdelaziz's motion.  (Dkt. No. 66.)

21                              **BACKGROUND**

22          Plaintiffs bring claims under against the Individual Defendants and the City for the injuries

23  they sustained from a "ghost chase."  A "ghost chase" is an officer pursuit of a suspect in cars

24  where "the officers do not activate their sirens and lights or radio in the chase to dispatch because

25  their department prohibits such pursuits due to the risks to the lives of the suspect and innocent

26  bystander[s]."  (Dkt. No. 17 (Amended Compl.), ¶ 2.)  The Individual Defendants sped after the

27  suspect from a car rally "through highly populated and congested surface streets in Oakland at

28  speeds in excess of 60 mph, and reports of even 100 mph."  (*Id.*, ¶¶ 1, 3.)  As was foreseeable, the

*United States District Court*
*Northern District of California*

1   Individual Defendants "caused the suspect to lose control of his vehicle and crash[] into cars and

2   motorcycles parked in front of a busy late night taco truck on . . . a main city" street.  The

3   suspect's car fatally injured Lolomania Soakai ("Decedent") and seriously injured the other

4   Plaintiffs.  (*Id.*, ¶¶ 4-6.)

5       The Individual Defendants observed the chaos and injuries that their actions caused, but

6   they did not stop their car or summon emergency services.  (*Id.*, ¶ 7.)  Instead, the Individual

7   Defendants "kept their sirens and lights off, their radios dead, and doubled-back to the scene when

8   they heard other police sirens responding.  When they returned to the scene, they pretended to

9   have just arrived and were overheard saying that they hoped that the driver had died in the crash."

10   (*Id.*)

11      As a result of the Individual Defendants' failure to provide or summon emergency medical

12   services, which they were required to do by their Police Department, Plaintiffs' injuries worsened

13   and one person, the Decedent, even died.  (*Id.*, ¶ 24.)

14      In 2014, the City's Police Department "issued a policy that prohibited high-speed vehicle

15   pursuits except for a 'violent forcible crime' such as a rape, assault, murder, or robbery."  (*Id.*, ¶

16   26.)  Additionally, the even where a high-speed car chase may be allowed, the officers are

17   required to "weigh 'the risks to the safety of officers, motorists, bystanders, and the public versus

18   the benefit to public safety.'"  (*Id.*)

19      After the Department issued this policy, a growing trend emerged among the Department's

20   officers to use "ghost chases" to avoid scrutiny for vehicle pursuits.  (*Id.*, at ¶ 27.)  Ghost chases

21   became well-known and widespread within the Department.  (*Id.*, ¶ 29.)  These chases have

22   caused other crashes, injuries and constitutional violations.  (*Id.*)

23      High-ranking supervisors and officials within the Department knew of the practice of

24   "ghost chases" but failed to take action to discipline, quell or abolish the practice.  (*Id.*)  The

25   Department's failure to discipline or quell the practice of ghost chases "proximately caused

26   Defendants Doe Officers to use the practice to chase, purposely cause the suspect to crash, and

27   injure Plaintiffs and Decedent."  (*Id.*)

28      Plaintiffs allege that the Individual Defendants engaged in the high-speed ghost chase with

United States District Court
Northern District of California

2

1    an intent to harm the suspect and purposely caused him to crash.  (*Id.*, ¶¶ 29, 37, 42; *see also* ¶ 21

2    (Individual Defendants "purposely caused the suspect to lose control of his vehicle and crash into

3    cars and motorcycles parked in front of a busy late night taco truck"); ¶ 35 (alleging Individual

4    Defendants purposely engaged in a high-speed chase "in an effort to make a suspect lose control,

5    severely injure himself and die").)

6         Based on these allegations, Plaintiffs bring the following claims: (1) 42 U.S.C. § 1983

7    ("Section 1983") claim based on violation of due process under the fourteenth amendment against

8    the Individual Defendants; (2) Section 1983 claim against the City; and (3) violation of the Bane

9    Act, California Civil Code § 52.1 ("Bane Act") against all Defendants.

10                                         **ANALYSIS**

11   **A.  Applicable Legal Standard on Motion to Dismiss.**

12        A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

13   pleadings fail to state a claim upon which relief can be granted.  On a motion to dismiss under

14   Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to

15   the non-moving party and takes as true all material allegations in the complaint.  *Sanders v.*

16   *Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Even under the liberal pleading standard of Rule

17   8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

18   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

19   will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*,

20   478 U.S. 265, 286 (1986)).  Rather, a plaintiff must instead allege "enough facts to state a claim to

21   relief that is plausible on its face."  *Id.* at 570.

22        "The plausibility standard is not akin to a probability requirement, but it asks for more than

23   a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that

24   are merely consistent with a defendant's liability, it stops short of the line between possibility and

25   plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

26   *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to

27   state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g.*

28   *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N.*

3

United States District Court
Northern District of California

1   *Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

2          As a general rule, "a district court may not consider material beyond the pleadings in ruling

3   on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on*

4   *other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation

5   omitted).  However, documents subject to judicial notice, such as matters of public record, may be

6   considered on a motion to dismiss.  *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir.

7   2011).  In doing so, the Court does not convert a motion to dismiss to one for summary judgment.

8   *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other*

9   *grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  "The court need

10  not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ."

11  *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

12  **B.      Applicable Legal Standard on Motion for Judgment on the Pleadings.**

13         A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)

14  challenges the legal sufficiency of the claims asserted in the complaint.  A Rule 12(c) motion is

15  "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure

16  12(b)(6).  *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal 2008).  "For

17  purposes of the motion, the allegations of the non-moving party must be accepted as true . . . ."

18  *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

19  Although the standards for evaluating a motion to dismiss and a motion for judgment on the

20  pleadings are similar, a motion for judgment on the pleadings "is proper when the moving party

21  clearly establishes on the face of the pleadings that *no material issue of fact remains to be resolved*

22  *and that it is entitled to judgment as a matter of law.*"  *Id.* (emphasis added).

23  **C.      Defendants' Motions.**

24         **1.      Purpose or Intent to Harm.**

25         Both the City and Abdelaziz move on the grounds that Plaintiffs fail to sufficiently allege

26  an intent to harm *them* as bystanders, which they argue is necessary to Plaintiffs' Section 1983

27  claim premised on a fourteenth amendment due process violation.

28         "The Due Process Clause is simply not implicated by a *negligent* act of an official causing

4

1    unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328

2    (1986) (emphasis in original).  Instead, to bring a Section 1983 claim for a fourteenth amendment

3    violation during a high-speed chase, Plaintiffs must allege "a purpose to harm unrelated to the

4    legitimate object of arrest" to "satisfy the element of arbitrary conduct shocking to the conscience,

5    necessary for a due process violation." *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998).

6    This "much higher standard of fault than deliberate indifference" is required because "[a] police

7    officer deciding whether to give chase must balance on one hand the need to stop a suspect and

8    show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all

9    those within stopping range, be they suspects, their passengers, other drivers, or bystanders." *Id.*

10   at 852-53.

11        This standard applies not only to suspects being chased by police, but also to innocent

12   bystanders who are injured or killed from the high-speed chase.  *Osnossian v. Block*, 175 F. 3d

13   1169, 1171-72 (9th Cir. 1999) ("As we read [*Lewis*], if a police officer is justified in giving chase,

14   that justification insulates the officer from constitutional attack, irrespective of who might be

15   harmed or killed as a consequence of the chase."); *see also Bingue v. Prunchak*, 512 F.3d 1169,

16   1175-77 (9th Cir. 2008) (holding *Lewis* "'intent to harm' standard applies categorically to

17   Fourteenth Amendment due process claims arising out of all high-speed police chases").

18        Putting aside for the moment at whom the purpose to harm must be directed (suspects or

19   bystander plaintiffs), the parties do not dispute this legal standard.  The City, but not Abdelaziz,

20   concedes that Plaintiffs sufficiently allege an intent to harm the Individual Defendants.  Upon

21   review of the Amended Complaint, the Court finds that Plaintiffs sufficiently allege that the

22   Individual Defendants engaged in the high-speed car chase of the suspect without any lights or

23   sirens with the intent to cause the suspect to crash and seriously injure him.  (*See* Dkt. No. 17, ¶¶

24   21, 29, 35, 37, 42.)  In addition, the fact that the Individual Officers left the scene without

25   arresting the suspect after the chase ended raises a strong inference that they did not engage in the

26   high-speed chase for a legitimate law enforcement purpose – to catch and arrest the suspect.

27        Next, both the City and Abdelaziz argue Plaintiffs must allege that the Individual

28   Defendants had an intent to injure them, as opposed to the people the Individual Defendants were

United States District Court
Northern District of California

5

1    chasing, and that the Amended Complaint fails to do so.  However, there is no binding authority

2    stating that the intent to harm must be directed at innocent bystanders.  Upon review of the cases

3    analyzing *Lewis* in which bystanders were injured or killed, the Court finds that, if Plaintiffs allege

4    a purpose to harm *anyone* unrelated to the legitimate object of arrest, then they have satisfied the

5    element of arbitrary conduct shocking to the conscience for their claim for violation of their

6    Fourteenth Amendment rights.

7            The Court only found a few cases where plaintiffs sufficiently alleged such an intent to

8    harm and in which bystanders were injured.  In those cases, it was sufficient for the plaintiffs to

9    allege an intent to harm a suspect, even if innocent bystanders were injured and brought the

10   lawsuit.  *See*, *e.g.*, *Johnson v. Baltimore Police Dep't.*, 452 F. Supp. 3d 283 (D. Md. 2020);

11   *Simmons v. Baltimore City Police Dep't.*, 2021 WL 3418840, at *14 (D. Md. Aug. 5, 2021);

12   *McGowan v. County of Kern*, 2018 WL 2734970 (E.D. Cal. June 7, 2018).

13           In *Johnson*, the plaintiffs plausibly alleged that the defendants, the officers, were driven by

14   an improper or malicious motive against the suspects when they engaged in a high-speed chase.

15   *Johnson*, 452 F. Supp. 3d at 301-02.  The court specifically rejected the argument that the

16   plaintiffs had to allege an intent to harm the innocent bystanders who were injured.  *Id.* at 302.

17   The court held that "the weight of authority post-*Lewis* holds that the 'intent to harm' standard

18   applies to substantive due process claims arising out of police chases, whether the claim is brought

19   by the target of the chase, or an innocent bystander."  *Id.*  The court noted that in no cases "did a

20   court reject a bystander's substantive due process claim because the police did not intend to harm

21   *them*; rather, the claims all failed because of the claimant's inability to demonstrate that the

22   relevant officer had [an] intent to harm the target of the pursuit."  *Id.* at 303 (emphasis in original).

23   The court reasoned that "[a]n officer's actions motivated by an intent to harm a suspect are no less

24   conscience shocking, whether the resulting harm accrues to the intended target (the suspect), or an

25   innocent third party."  *Id.*

26           In *McGowan*, the court held that the requisite intent to harm for a claim for violation of the

27   Fourteenth Amendment due process rights could be inferred in the right circumstances, including

28   an intentional misuse of police vehicles.  2018 WL 2734970, at *9 (finding plaintiff could allege

United States District Court
Northern District of California

6

<div style="vertical text">United States District Court<br>Northern District of California</div>

1    purpose to harm where officer acted with actual knowledge or virtual certainty that his actions

2    would cause harm). The court in *McGowan* found it would not be futile for the plaintiffs, who

3    were injured as innocent bystanders, to allege a claim for violation of their Fourteenth Amendment

4    rights based on a dangerous high-speed chase with no legitimate law enforcement objective. *Id.*,

5    2018 WL 2734970, at *7. Notably, the intent to harm would have been directed at the *suspect*, not

6    the injured bystanders. *Id.*, 2018 WL 2734970, at *9-10 (finding plaintiffs' allegations sufficiently

7    alleged that the officer acted with a purpose to harm where he "had no 'legitimate law

8    enforcement objectives' to engage in the manner he did") (quoting *A.D. v. California Highway

9    Patrol*, 712 F.3d 446, 456-57 (9th Cir. 2013)).

10       In *Simmons*, the court found that the innocent bystander plaintiffs had "adequately alleged

11    the type of conscience-shocking behavior that *Lewis* requires" because they alleged the officers

12    "were intentionally misusing their vehicles by engaging in a pursuit [of a suspect] that was not

13    necessary in its purpose nor in the manner that it was executed." *Simmons*, 2021 WL 3418840, at

14    *14.

15       The Court finds these cases well-reasoned. It is rare that police officers act with an intent

16    to harm suspects. *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) ("*Lewis* contemplates

17    such rare situations where the nature of an officer's deliberate physical contact is such that a

18    reasonable factfinder would conclude the officer intended to harm, terrorize or kill.") (internal

19    quotation marks and citation omitted). It is even more exceedingly rare that police officers would

20    have an intent to harm innocent bystanders who happen to be in the vicinity of the police officers'

21    actions. In effect, by requiring an intent to harm *bystanders*, as opposed to showing conduct

22    which shocks the conscious, courts would essentially be prohibiting bystanders from bringing

23    clams for violation of their Fourteenth Amendment rights. Additionally, if a plaintiff can allege,

24    and eventually prove, that an officer acted with an intent to harm *anyone*, the officer should be

25    liable for the full extent of her or his unconscionable conduct, including hurting an innocent

26    bystander. *Johnson*, 452 F. Supp. 3d at 303 ("An officer's actions motivated by an intent to harm

27    a suspect are no less conscience shocking, whether the resulting harm accrues to the intended

28    target (the suspect), or an innocent third party.").

<div align="center">7</div>

1         To support its argument to the contrary that the intent must be directed at the *bystanders*,

2    the City relies on the following language from *Moreland v. Las Vegas Metropolitan Police*

3    *Department*, 159 F.3d 365, 373 (9th Cir. 1998):  "Appellants have failed to state a viable

4    substantive due process claim because these matters are not material to the controlling question of

5    whether [the officer] acted with a purpose to harm [the bystander] that was unrelated to his attempt

6    to stop the [suspect] in the parking lot from endangering others."  However, the fact that the Ninth

7    Circuit framed the question in this manner does not mean that in all situations, plaintiffs must

8    show an intent to harm directed at *bystanders*.  In *Moreland*, notably, it was undisputed that the

9    officers were entitled to use deadly force against the suspect to stop the gunfight occurring in the

10    parking lot.  *Id*.  Thus, because the officers were entitled to use deadly force, the only way a

11    bystander could succeed in bringing a claim for violation of her or his Fourteenth Amendment

12    rights would be to show an intent to harm the bystander.  The court found that the bystanders

13    could not state a claim "because the officers were responding to the extreme emergency of public

14    gunfire and did not intend to commit any harm unrelated to the legitimate use of force necessary to

15    protect the public and themselves."  *Id*.

16         Similarly, in *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 950 (E.D. Cal. 2011),

17    another case on which the City and Abdelaziz rely, the officer had reason to believe that the

18    suspect was armed, dangerous, and a threat to at least one other person at the party.  Additionally,

19    the court found that the officers were responding to a "rapidly evolving, fluid, and dangerous

20    predicament."  *Id*. at 949 (citation omitted).  Again, because the officers were entitled to use

21    deadly force against the suspect, the only way a bystander could succeed in bringing a claim

22    would be to show an intent to harm the bystander.  However, in *Rodriguez*, the court found that

23    was no real dispute that the bystander was injured incidentally.  *Id*. at 950.

24         Also, in *Claybrook v. Birchwell*, 199 F. 3d 350 (6th Cir. 2000), the officers used deadly

25    force against the suspect who was shooting at them and inadvertently hit the bystander with a

26    bullet.  *See also Childress v. City of Araphao*, 210 F.3d 1154 (10th Cir. 2000) (officers

27    inadvertently shot bystander plaintiffs when using deadly force to stop prison escapees).  In these

28    cases, the officers were responding to rapidly evolving situations and were justified in using

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    deadly force against the *suspects*.  As noted above, in such circumstances where officers intend to

2    use force against a suspect and are justified by legitimate law enforcement purposes in doing so,

3    the bystander's only chance of bringing a claim for violation of her or his Fourteenth Amendment

4    right is to show an intent to harm directed at the bystander.

5         In none of the cases upon which the City and Abdelaziz rely, were there any allegations

6    that the officers acted with an intent to harm the suspects unrelated to legitimate law enforcement

7    objectives.  *See Claybrook*, 199 F. 3d 350; *Childress*, 210 F.3d 1154; *Trigalet v. City of Tulsa,*

8    *Oklahoma*, 239 F.3d 1150 (10th Cir. 2001); *Rodriguez*, 819 F. Supp. 2d 937, *Suit v. City of*

9    *Folsom*, 2016 WL 6696060, at *1, 3 (E.D. Cal. Nov. 15, 2016).  Under Ninth Circuit authority,

10   where police officers are justified in their conduct, "that justification insulates the officer[s] from

11   constitutional attack, irrespective of who might be harmed or killed as a consequence of the"

12   officers' conduct.  *Onossian v. Block*, 175 F.3d 1169, 1171 (9th Cir. 1999).  In other words, if the

13   plaintiffs did not allege the police officers acted with intent to harm anyone unrelated to legitimate

14   law enforcement objectives, then the bystanders' claims would necessarily fail.

15        The Court finds that allegations that the Individual Defendants were acting with an intent

16   to harm anyone unrelated to a legitimate law enforcement objective, causing the harm to Plaintiffs,

17   is sufficient to allege a violation of the fourteenth amendment.  Because Plaintiffs have done so,

18   the Court DENIES the City's and Abdelaziz's motions on this ground.

19        **2.    Failure to Call for Medical Assistance.**

20        Ordinarily, police officers cannot be "held liable under § 1983 for an injury inflicted by a

21   third party."  *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013).  However, there

22   are two exceptions to this general rule, and Plaintiffs rely on one of these:  the "danger creation"

23   exception.  *Id*.  The danger creation exception applies where officers or government "affirmatively

24   placed the [victim] in a position of danger."  *Id*. (quoting *Wood v. Ostrander,* 879 F.2d 583, 589-

25   90 (9th Cir.1989)).  The relevant question is whether "the affirmative actions of the official

26   created or exposed an individual to a danger which he or she would not have otherwise faced."

27   *Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018) (cleaned up).

28        To state a claim based on state-created-danger, Plaintiffs must allege the following three

9

United States District Court
Northern District of California

1  elements: (1) the Individual Defendants "affirmative actions created or exposed [them] to an

2  actual, particularized danger that [they] would not otherwise have faced"; (2) "the injur[ies they]

3  suffered [were] foreseeable; and (3) " the officers were deliberately indifferent to the known

4  danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).  The Court finds that

5  Plaintiffs allege all three elements.  The Individual Defendants drove dangerously fast, at speeds

6  up to 100 miles per hour, through highly congested streets, with their lights and sirens off, with the

7  alleged intent of causing the suspect to crash.  The Individual Defendants' affirmative actions

8  exposed Plaintiffs to an actual, particularized danger that they would not have otherwise faced.  It

9  was certainly foreseeable that, if the suspect hit others when he crashed, others would be injured.

10  Moreover, the Individual Defendants were indifferent to the known danger.  They saw the

11  crash they allegedly intended to cause and were aware that innocent bystanders were injured when

12  the suspect crashed into cars and motorcycles parked in front of a busy taco truck on a main city

13  street.  (Dkt. No. 17, ¶¶ 21, 23.)  The Individual Defendants did not report the crash or call for

14  medical assistance and instead left the scene and did not return until they heard other police sirens

15  responding to the scene.  (*Id.*, ¶ 23.)  The Individual Defendants pretended to arrive for the first

16  time and were overheard mentioning that they were satisfied that the suspect appeared to be

17  injured and that they hoped that he had died in the crash.  (*Id.*)

18  Abdelaziz tries to characterize the Individual Defendants' conduct as simply engaging in a

19  legitimate high-speed chase.  But even if they had engaged in a legitimate high-speed chase and

20  had arrested the suspect, Abdelaziz points to no cases where officers incidentally caused an

21  accident with no bad intent and did not summon medical assistance for those injured.

22  Finally, Abdelaziz argues that Plaintiffs fail to sufficiently allege that the Individual

23  Defendants' conduct was directed towards *Plaintiffs*, as opposed to the suspect.  In reliance on

24  *Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023), he argues that the officers' conduct must

25  be directed specifically at *Plaintiffs*.  However, in *Sinclair*, the Ninth Circuit merely found that

26  where the accused conduct was directed towards an entire section or zone of the city and affected

27  all who lived or passed through that area equally, the representative of the individual killed in that

28  area could not state a claim under the Fourteenth Amendment.  Moreover, the Ninth Circuit

10

clarified that while generalized dangers exposing a broad swath of the public, as in *Sinclair*, cannot support a state-created-danger claim, the danger can be sufficiently particularized "if it is directed towards a group rather than an individual." *See Polanco v. Diaz*, 76 F.4th 918, 927 (9th Cir. 2023). In *Polanco*, the court held that the danger was particularized when the prison officials transferred 122 inmates into the prison without testing them for COVID-19, thereby exposing the prison guards and inmates to the dangers of COVID-19. *Id*. The prison guards and inmates at the prison were a "discrete and identifiable group." *Id*. Therefore, the court held that the family of a prison guard who had been exposed to and died of COVID-19 stated a claim based on a state-created-danger. *Id*.

Plaintiffs here are an even smaller "discrete and identifiable group" who were injured from the crash the Individual Defendants allegedly intentionally caused. Accordingly, the Court DENIES Abdelaziz's motion to dismiss Plaintiffs' claim under Section 1983 claim against the Individual Defendants on this ground.

### 3. Qualified Immunity.

Abdelaziz argues that he is entitled to qualified immunity on Plaintiffs' claims for violation of their Fourteenth Amendment rights. However, his arguments are premised on arguments above that the Court rejected – that the intent to harm must be directed at the bystanders and that the Individual Defendants had no obligation to render or procure medical aid because they did not create the danger. The Court finds that, based on the facts alleged by Plaintiffs, the Individual Defendants are not entitled to qualified immunity. *See Porter*, 546 F.3d at 1140 ("whether Osborn is entitled to qualified immunity . . . turns on whether the Porters can present facts . . . that would justify a jury finding that Osborn acted with an unconstitutional purpose to harm"). Therefore, the Court DENIES Abdelaziz's motion on this ground.

### 4. *Monell* Claim Against the City.

The City moves to dismiss the Section 1983 claim against it on the grounds that Plaintiffs have insufficiently pled facts to support liability against a municipality under *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Municipalities cannot be found liable under Section 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 694. Municipal liability can be

11

imposed only for injuries inflicted pursuant to an official governmental policy or custom.  *See Monell v. N.Y. Dept. of Soc. Serv.*, 436 U.S. 658, 690-94 (1978).  A city can be found liable when the execution of a policy, whether made by its lawmakers or those whose acts can be said to represent official policy or custom of the city, inflicts the injury.  *Id.* at 694.  In order to state a *Monell* claim, a plaintiff must allege facts sufficient to demonstrate: "(1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the [municipality] is responsible for that violation."  *Collins v. City Harker Heights*, 503 U.S. 115, 120 (1992).

There are three different theories of municipal liability: (1) official policies or established customs that inflict constitutional injury; (2) acts of omission, such as the failure to train, when the omissions amount to the local government's own official policy; or (3) if the individual who committed the constitutional tort was an official with final policy-making authority, or an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Plaintiffs do not allege or cite to any formal policy.  In the absence of a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy."  *Id.*  A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.  *Id.* ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *see also Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1144 (N.D. Cal. 2016).

Plaintiffs allege that the City issued a policy prohibiting high-speed chases except for violent crimes in 2014.  (Dkt. No. 17, ¶ 26.)  Plaintiffs allege that afterward, a "growing trend" emerged among City police officers to use ghost chases to avoid scrutiny for engaging in high-speed chases.  (*Id.*, ¶ 27.)  Plaintiffs then recite statistics on officer collisions, but do not tie any of the statistics to ghost chases.  (*Id.*, ¶¶ 27, 28.)  Plaintiffs allege that ghost chases have become

12

United States District Court
Northern District of California

1  well-known and widespread within the Oakland Police Department and that high-ranking

2  supervisors and officials have known about the practice but did not take action to quell or abolish

3  the practice.  (*Id.*, ¶ 29.)

4       It is debatable whether Plaintiffs have sufficiently alleged a "longstanding practice or

5  custom which constitutes the standard operating procedure of the local government entity."

6  *Trevino*, 99 F.3d at 918.  Regardless, Plaintiffs' *Monell* claim suffers from another defect.

7  Plaintiffs must allege that the longstanding practice or custom was the "moving force" behind

8  Plaintiffs' alleged constitutional violation.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

9  The problem Plaintiffs face is that the constitutional violation they allege is that the Individual

10  Defendants chased the suspect *with an intent to harm him*.  It is the intent to harm which shocks

11  the conscience.  Although engaging in a high speed chase without lights or sirens is incredibly

12  dangerous, if the Individual Defendants had done so for a legitimate law enforcement purpose

13  without any intent to harm, Plaintiffs would not have alleged a claim for violation of their

14  Fourteenth Amendment rights.  Plaintiffs have not alleged any policy or practice that Oakland

15  police officers intend to harm suspects.  Therefore, the Court GRANTS the City's motion to

16  dismiss the Section 1983 claim against it.[1]  While it does not appear likely that Plaintiffs could

17  plead facts to support such a claim, the Court will provide Plaintiffs with one opportunity to

18  amend their complaint to add facts for their *Monell* claim.

19       **5.   Bane Act.**

20       Both the City and Abdelaziz move to dismiss Plaintiff's Bane Act claim.  The Bane Act

21  states in relevant part that a person is liable when he or she:

22       [I]nterferes by threat, intimidation, or coercion, or attempts to
23       interfere by threat, intimidation, or coercion, with the exercise or
     enjoyment by any United States, or of the rights secured by the
24       Constitution or laws of this state.

25  Cal. Civ. Code § 52.1(b).  The Bane Act "does not extend to all ordinary tort actions."  *Venegas v.*

26

27       [1] Plaintiffs argue in opposition to the City's motion that the City failed to move to dismiss
the *Monell* claim to the extent it is premised on the Individual Defendants' failure to summon
28  medical aid. (Dkt. No. 26 at p.12.)  However, Plaintiffs' *Monell* claim is only premised on ghost
chases. (Dkt. No. 17, ¶¶ 41-43.)

United States District Court
Northern District of California

1  *Cty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004).  It requires a showing of specific intent.  *Cornell*

2  *v. City and Cty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017) (a plaintiff must demonstrate

3  "the arresting officer had a specific intent to violate the arrestee's right to freedom from

4  unreasonable seizure").  The statute "require[s] an attempted or completed act of interference with

5  a legal right, accompanied by a form of coercion."  *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334

6  (1998).  Plaintiffs have not alleged that the Individual Defendants coerced them.  Therefore, the

7  Court GRANTS the City's and Abdelaziz's motions on the Bane Act claim.[2]

8         Abdelaziz argues that Plaintiffs should not be given leave to amend because he is immune

9  from state law claims, including the Bane Act, pursuant to California Vehicle Code § 17004.  That

10  statute provides:  "A public employee is not liable for civil damages on account of personal injury

11  to or death of any person or damage to property resulting from the operation, in the line of duty, of

12  an authorized emergency vehicle while responding to an emergency call or when in the immediate

13  pursuit of an actual or suspected violator of the law . . . ."  However, Plaintiffs allege that the

14  Individual Defendants were not operating their car in the line of duty to pursue a suspect to arrest

15  him.  Instead, they allege that the Individual Defendants were misusing their patrol car for an

16  improper purpose – trying to harm the suspect.  Abdelaziz does not cite to any cases where

17  Vehicle Code § 17004 has been applied to bar claims based on an officer's intentional misuse of

18  their vehicle.  In the absence of such authority, the Court will not preclude Plaintiffs from seeking

19  to allege additional facts to state a claim under the Bane Act.  Therefore, the Court will provide

20  Plaintiffs with leave to amend their Bane Act claim.

21                                         **CONCLUSION**

22         For the foregoing reasons, the Court GRANTS the City's motion to dismiss and GRANTS

23  IN PART and DENIES IN PART Abdelaziz's motion for judgment on the pleadings.  Pursuant to

24  these motions, the Court DISMISSES Plaintiffs' Section 1983 claim against the City and their

25  Bane Act claim against all Defendants.  The Court DENIES the motions as to Plaintiffs' Section

26  1983 claim against the Individual Defendants.

27  
28         [2] Because Marin-Coronel joined in Abdelaziz's motion, the Court dismisses the Bane Act claim with respect to him as well.

14

United States District Court
Northern District of California

Plaintiffs have one opportunity to allege additional facts to support their Section 1983 claim against the City and their Bane Act claim. Plaintiffs shall file their amended complaint, if they elect to amend, by no later than December 20, 2023.

**IT IS SO ORDERED**.

Dated: November 28, 2023



SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

15

1 | DAVID B. NEWDORF (SBN 172960)
NEWDORF LEGAL
2 | 630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
3 | nl@newdorf.com
4 | Telephone: (415) 357-1234

5 | Attorneys for Defendant
WALID ABDELAZIZ
6 |

7 | KAUFMAN DOLOWICH & VOLUCK, LLP
AIMEE G. HAMOY (SBN 221228)
8 | 180 Grand Avenue, Suite 995
Oakland, California 94612
Telephone: (510) 630-7646
9 | Facsimile: (415) 926-7601
ahamoy@kaufmandolowich.com
10 |

11 | Attorneys For Defendant
JIMMY MARIN-CORONEL

12 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ESTATE OF DECEDENT LOLOMANIA SOAKAI; LAVINIA SOAKAI, an individual and personal representative of ESTATE; DANIEL FIFITA, an individual; SAMIEUELA FINAU, an individual; INA LAVALU, an individual, | Case No. 3:23-cv-00381 SK |
| | **DEFENDANTS WALID ABDELAZIZ'S AND JIMMY MARIN-CORONEL'S JOINT NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |
| Plaintiffs, | |
| vs. | |
| CITY OF OAKLAND, a municipal corporation; WALID ABDELAZIZ, in his individual capacity as a police officer for the CITY OF OAKLAND; JIMMY MARIN-CORONEL, in his individual capacity as a police officer for the CITY OF OAKLAND; and DOES 1-50, inclusive; | |
| Defendants. | |

*Sidebar (vertical text):* NEWDORF LEGAL
630 Thomas L. Berkley Way, Suite 103
Oakland, CA 94612
(415) 357-1234

1

**JOINT NOTICE OF APPEAL**

Defendants Walid Abdelaziz and Jimmy Marin-Coronel ("Individual Defendants") jointly appeal to the United States Court of Appeals for the Ninth Circuit from the **Order on Motion to Dismiss and Motion for Judgment on the Pleadings** entered and filed by the U.S. District Court on November 28, 2023. This order (attached hereto), among other things, denied qualified immunity to the Individual Defendants.

An order denying qualified immunity is an appealable collateral order under 28 U.S.C. § 1291. *Behrens v. Pelletier*, 516 U.S. 299 (1996); *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Hernandez v. City of San Jose*, 897 F.3d 1125 (9th Cir. 2018). An appeal of a denial of qualified immunity divests the district court of jurisdiction to proceed with trial on the issues involved in the appeal. *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *Gonzalez v. City of Alameda*, Case No. 21-cv-09733-DMR, 2023 U.S. Dist. LEXIS 185735, *3 (N.D. Cal. Oct. 16, 2023).

The names and addresses of the attorneys for each party are as follows:

| | |
|---|---|
| DAVID B. NEWDORF (SBN 172960)<br>NEWDORF LEGAL<br>630 Thomas L. Berkley Way, Suite 103<br>Oakland, CA 94612<br><br>Attorneys for Defendant Walid Abdelazia | KAUFMAN DOLOWICH & VOLUCK, LLP<br>AIMEE G. HAMOY (SBN 221228)<br>180 Grand Avenue, Suite 995<br>Oakland, California 94612<br><br>Attorneys for Defendant Jimmy Marin-Coronel |
| BARBARA J. PARKER (SBN 069722)<br>MARIA BEE (SBN 167716)<br>KEVIN P. MCLAUGHLIN (SBN 251477)<br>OAKLAND CITY ATTORNEY'S OFFICE<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, California 94612<br><br>Attorneys for Defendant City of Oakland | ADANTE D. POINTER (SBN 236229)<br>PATRICK M. BUELNA (SBN 317043)<br>TREVA STEWART (SBN 239829)<br>POINTER & BUELNA, LLP<br>155 Filbert St., Suite 208<br>Oakland, CA 94607<br><br>Attorneys for Plaintiffs Estate of Decedent<br>Lolomania Soakai, et al. |

Dated:    December 27, 2023

Newdorf Legal

/s/ *David B. Newdorf*
    David B. Newdorf
    Attorneys for Defendant
    WALID ABDELAZIZ

KAUFMAN DOLOWICH & VOLUCK, LLP

/s/ *Aimee G. Hamoy*
    Aimee G. Hamoy
    Attorneys for Defendant
    JIMMY MARIN-CORONEL

Newdorf Legal<br>630 Thomas L. Berkley Way, Suite 103<br>Oakland, CA 94612<br>(415) 357-1234

# ATTACHMENT 1

1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    ESTATE OF DECEDENT LOLOMANIA        Case No.  23-cv-00381-SK
     SOAKAI, et al.,

8                  Plaintiffs,
                                         **ORDER ON MOTION TO DISMISS**
9          v.                            **AND MOTION FOR JUDGMENT ON**
                                         **THE PLEADINGS**
10   CITY OF OAKLAND, et al.,
                                         Regarding Docket Nos. 20, 59, 66
11                 Defendants.

12          This matter comes before the Court upon consideration of the motion to dismiss filed by

13   Defendant the City of Oakland ("The City") and the motion for judgment on the pleadings filed by

14   Defendant Wald Abdelaziz ("Abdelaziz").  Defendant Jimmy Marin-Coronel ("Marin-Coronel")

15   filed a joinder to Abdelaziz's motion.  The Court will refer to Abdelaziz and Marin-Coronel

16   jointly as the "Individual Defendants" and will refer to all three defendants collectively as

17   "Defendants."  Having carefully considered the parties' papers, relevant legal authority, and the

18   record in the case, the Court hereby GRANTS the City's motion to dismiss and GRANTS IN

19   PART and DENIES IN PART Abdelaziz's motion for the reasons set forth below.  The Court

20   FURTHER GRANTS Marin-Coronel's motion to join Abdelaziz's motion.  (Dkt. No. 66.)

21                                  **BACKGROUND**

22          Plaintiffs bring claims under against the Individual Defendants and the City for the injuries

23   they sustained from a "ghost chase."  A "ghost chase" is an officer pursuit of a suspect in cars

24   where "the officers do not activate their sirens and lights or radio in the chase to dispatch because

25   their department prohibits such pursuits due to the risks to the lives of the suspect and innocent

26   bystander[s]."  (Dkt. No. 17 (Amended Compl.), ¶ 2.)  The Individual Defendants sped after the

27   suspect from a car rally "through highly populated and congested surface streets in Oakland at

28   speeds in excess of 60 mph, and reports of even 100 mph."  (*Id.*, ¶¶ 1, 3.)  As was foreseeable, the

United States District Court
Northern District of California

1    Individual Defendants "caused the suspect to lose control of his vehicle and crash[] into cars and

2    motorcycles parked in front of a busy late night taco truck on . . . a main city" street.  The

3    suspect's car fatally injured Lolomania Soakai ("Decedent") and seriously injured the other

4    Plaintiffs.  (*Id.*, ¶¶ 4-6.)

5         The Individual Defendants observed the chaos and injuries that their actions caused, but

6    they did not stop their car or summon emergency services.  (*Id.*, ¶ 7.)  Instead, the Individual

7    Defendants "kept their sirens and lights off, their radios dead, and doubled-back to the scene when

8    they heard other police sirens responding.  When they returned to the scene, they pretended to

9    have just arrived and were overheard saying that they hoped that the driver had died in the crash."

10   (*Id.*)

11        As a result of the Individual Defendants' failure to provide or summon emergency medical

12   services, which they were required to do by their Police Department, Plaintiffs' injuries worsened

13   and one person, the Decedent, even died.  (*Id.*, ¶ 24.)

14        In 2014, the City's Police Department "issued a policy that prohibited high-speed vehicle

15   pursuits except for a 'violent forcible crime' such as a rape, assault, murder, or robbery."  (*Id.*, ¶

16   26.)  Additionally, the even where a high-speed car chase may be allowed, the officers are

17   required to "weigh 'the risks to the safety of officers, motorists, bystanders, and the public versus

18   the benefit to public safety.'"  (*Id.*)

19        After the Department issued this policy, a growing trend emerged among the Department's

20   officers to use "ghost chases" to avoid scrutiny for vehicle pursuits.  (*Id.*, at ¶ 27.)  Ghost chases

21   became well-known and widespread within the Department.  (*Id.*, ¶ 29.)  These chases have

22   caused other crashes, injuries and constitutional violations.  (*Id.*)

23        High-ranking supervisors and officials within the Department knew of the practice of

24   "ghost chases" but failed to take action to discipline, quell or abolish the practice.  (*Id.*)  The

25   Department's failure to discipline or quell the practice of ghost chases "proximately caused

26   Defendants Doe Officers to use the practice to chase, purposely cause the suspect to crash, and

27   injure Plaintiffs and Decedent."  (*Id.*)

28        Plaintiffs allege that the Individual Defendants engaged in the high-speed ghost chase with

2

United States District Court
Northern District of California

1    an intent to harm the suspect and purposely caused him to crash.  (*Id.*, ¶¶ 29, 37, 42; *see also* ¶ 21

2    (Individual Defendants "purposely caused the suspect to lose control of his vehicle and crash into

3    cars and motorcycles parked in front of a busy late night taco truck"); ¶ 35 (alleging Individual

4    Defendants purposely engaged in a high-speed chase "in an effort to make a suspect lose control,

5    severely injure himself and die").)

6        Based on these allegations, Plaintiffs bring the following claims: (1) 42 U.S.C. § 1983

7    ("Section 1983") claim based on violation of due process under the fourteenth amendment against

8    the Individual Defendants; (2) Section 1983 claim against the City; and (3) violation of the Bane

9    Act, California Civil Code § 52.1 ("Bane Act") against all Defendants.

10                                              **ANALYSIS**

11   **A.      Applicable Legal Standard on Motion to Dismiss.**

12       A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

13   pleadings fail to state a claim upon which relief can be granted.  On a motion to dismiss under

14   Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to

15   the non-moving party and takes as true all material allegations in the complaint.  *Sanders v.*

16   *Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Even under the liberal pleading standard of Rule

17   8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

18   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

19   will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*,

20   478 U.S. 265, 286 (1986)).  Rather, a plaintiff must instead allege "enough facts to state a claim to

21   relief that is plausible on its face."  *Id.* at 570.

22       "The plausibility standard is not akin to a probability requirement, but it asks for more than

23   a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that

24   are merely consistent with a defendant's liability, it stops short of the line between possibility and

25   plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

26   *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to

27   state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g.*

28   *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N.*

3

*Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice, such as matters of public record, may be considered on a motion to dismiss. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2011). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

**B.    Applicable Legal Standard on Motion for Judgment on the Pleadings.**

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the claims asserted in the complaint. A Rule 12(c) motion is "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal 2008). "For purposes of the motion, the allegations of the non-moving party must be accepted as true . . . ." *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Although the standards for evaluating a motion to dismiss and a motion for judgment on the pleadings are similar, a motion for judgment on the pleadings "is proper when the moving party clearly establishes on the face of the pleadings that *no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.*" *Id.* (emphasis added).

**C.    Defendants' Motions.**

**1.    Purpose or Intent to Harm.**

Both the City and Abdelaziz move on the grounds that Plaintiffs fail to sufficiently allege an intent to harm *them* as bystanders, which they argue is necessary to Plaintiffs' Section 1983 claim premised on a fourteenth amendment due process violation.

"The Due Process Clause is simply not implicated by a *negligent* act of an official causing

United States District Court
Northern District of California

4

1    unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328

2    (1986) (emphasis in original).  Instead, to bring a Section 1983 claim for a fourteenth amendment

3    violation during a high-speed chase, Plaintiffs must allege "a purpose to harm unrelated to the

4    legitimate object of arrest" to "satisfy the element of arbitrary conduct shocking to the conscience,

5    necessary for a due process violation." *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998).

6    This "much higher standard of fault than deliberate indifference" is required because "[a] police

7    officer deciding whether to give chase must balance on one hand the need to stop a suspect and

8    show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all

9    those within stopping range, be they suspects, their passengers, other drivers, or bystanders." *Id.*

10   at 852-53.

11            This standard applies not only to suspects being chased by police, but also to innocent

12   bystanders who are injured or killed from the high-speed chase.  *Osnossian v. Block*, 175 F. 3d

13   1169, 1171-72 (9th Cir. 1999) ("As we read [*Lewis*], if a police officer is justified in giving chase,

14   that justification insulates the officer from constitutional attack, irrespective of who might be

15   harmed or killed as a consequence of the chase."); *see also Bingue v. Prunchak*, 512 F.3d 1169,

16   1175-77 (9th Cir. 2008) (holding *Lewis* "'intent to harm' standard applies categorically to

17   Fourteenth Amendment due process claims arising out of all high-speed police chases").

18            Putting aside for the moment at whom the purpose to harm must be directed (suspects or

19   bystander plaintiffs), the parties do not dispute this legal standard.  The City, but not Abdelaziz,

20   concedes that Plaintiffs sufficiently allege an intent to harm the Individual Defendants.  Upon

21   review of the Amended Complaint, the Court finds that Plaintiffs sufficiently allege that the

22   Individual Defendants engaged in the high-speed car chase of the suspect without any lights or

23   sirens with the intent to cause the suspect to crash and seriously injure him.  (*See* Dkt. No. 17, ¶¶

24   21, 29, 35, 37, 42.)  In addition, the fact that the Individual Officers left the scene without

25   arresting the suspect after the chase ended raises a strong inference that they did not engage in the

26   high-speed chase for a legitimate law enforcement purpose – to catch and arrest the suspect.

27            Next, both the City and Abdelaziz argue Plaintiffs must allege that the Individual

28   Defendants had an intent to injure them, as opposed to the people the Individual Defendants were

United States District Court
Northern District of California

5

chasing, and that the Amended Complaint fails to do so.  However, there is no binding authority stating that the intent to harm must be directed at innocent bystanders.  Upon review of the cases analyzing *Lewis* in which bystanders were injured or killed, the Court finds that, if Plaintiffs allege a purpose to harm *anyone* unrelated to the legitimate object of arrest, then they have satisfied the element of arbitrary conduct shocking to the conscience for their claim for violation of their Fourteenth Amendment rights.

The Court only found a few cases where plaintiffs sufficiently alleged such an intent to harm and in which bystanders were injured.  In those cases, it was sufficient for the plaintiffs to allege an intent to harm a suspect, even if innocent bystanders were injured and brought the lawsuit.  *See*, *e.g.*, *Johnson v. Baltimore Police Dep't.*, 452 F. Supp. 3d 283 (D. Md. 2020); *Simmons v. Baltimore City Police Dep't.*, 2021 WL 3418840, at *14 (D. Md. Aug. 5, 2021); *McGowan v. County of Kern*, 2018 WL 2734970 (E.D. Cal. June 7, 2018).

In *Johnson*, the plaintiffs plausibly alleged that the defendants, the officers, were driven by an improper or malicious motive against the suspects when they engaged in a high-speed chase. *Johnson*, 452 F. Supp. 3d at 301-02.  The court specifically rejected the argument that the plaintiffs had to allege an intent to harm the innocent bystanders who were injured.  *Id*. at 302. The court held that "the weight of authority post-*Lewis* holds that the 'intent to harm' standard applies to substantive due process claims arising out of police chases, whether the claim is brought by the target of the chase, or an innocent bystander."  *Id*.  The court noted that in no cases "did a court reject a bystander's substantive due process claim because the police did not intend to harm *them*; rather, the claims all failed because of the claimant's inability to demonstrate that the relevant officer had [an] intent to harm the target of the pursuit."  *Id*. at 303 (emphasis in original). The court reasoned that "[a]n officer's actions motivated by an intent to harm a suspect are no less conscience shocking, whether the resulting harm accrues to the intended target (the suspect), or an innocent third party."  *Id*.

In *McGowan*, the court held that the requisite intent to harm for a claim for violation of the Fourteenth Amendment due process rights could be inferred in the right circumstances, including an intentional misuse of police vehicles.  2018 WL 2734970, at *9 (finding plaintiff could allege

6

purpose to harm where officer acted with actual knowledge or virtual certainty that his actions would cause harm).  The court in *McGowan* found it would not be futile for the plaintiffs, who were injured as innocent bystanders, to allege a claim for violation of their Fourteenth Amendment rights based on a dangerous high-speed chase with no legitimate law enforcement objective.  *Id.*, 2018 WL 2734970, at *7.  Notably, the intent to harm would have been directed at the *suspect*, not the injured bystanders.  *Id.*, 2018 WL 2734970, at *9-10 (finding plaintiffs' allegations sufficiently alleged that the officer acted with a purpose to harm where he "had no 'legitimate law enforcement objectives' to engage in the manner he did") (quoting *A.D. v. California Highway Patrol*, 712 F.3d 446, 456-57 (9th Cir. 2013)).

In *Simmons*, the court found that the innocent bystander plaintiffs had "adequately alleged the type of conscience-shocking behavior that *Lewis* requires" because they alleged the officers "were intentionally misusing their vehicles by engaging in a pursuit [of a suspect] that was not necessary in its purpose nor in the manner that it was executed."  *Simmons*, 2021 WL 3418840, at *14.

The Court finds these cases well-reasoned.  It is rare that police officers act with an intent to harm suspects.  *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) ("*Lewis* contemplates such rare situations where the nature of an officer's deliberate physical contact is such that a reasonable factfinder would conclude the officer intended to harm, terrorize or kill.") (internal quotation marks and citation omitted).  It is even more exceedingly rare that police officers would have an intent to harm innocent bystanders who happen to be in the vicinity of the police officers' actions.  In effect, by requiring an intent to harm *bystanders*, as opposed to showing conduct which shocks the conscious, courts would essentially be prohibiting bystanders from bringing clams for violation of their Fourteenth Amendment rights.  Additionally, if a plaintiff can allege, and eventually prove, that an officer acted with an intent to harm *anyone*, the officer should be liable for the full extent of her or his unconscionable conduct, including hurting an innocent bystander.  *Johnson*, 452 F. Supp. 3d at 303 ("An officer's actions motivated by an intent to harm a suspect are no less conscience shocking, whether the resulting harm accrues to the intended target (the suspect), or an innocent third party.").

7

United States District Court
Northern District of California

1    To support its argument to the contrary that the intent must be directed at the *bystanders*,

2    the City relies on the following language from *Moreland v. Las Vegas Metropolitan Police*

3    *Department*, 159 F.3d 365, 373 (9th Cir. 1998):  "Appellants have failed to state a viable

4    substantive due process claim because these matters are not material to the controlling question of

5    whether [the officer] acted with a purpose to harm [the bystander] that was unrelated to his attempt

6    to stop the [suspect] in the parking lot from endangering others."  However, the fact that the Ninth

7    Circuit framed the question in this manner does not mean that in all situations, plaintiffs must

8    show an intent to harm directed at *bystanders*.  In *Moreland*, notably, it was undisputed that the

9    officers were entitled to use deadly force against the suspect to stop the gunfight occurring in the

10   parking lot.  *Id*.  Thus, because the officers were entitled to use deadly force, the only way a

11   bystander could succeed in bringing a claim for violation of her or his Fourteenth Amendment

12   rights would be to show an intent to harm the bystander.  The court found that the bystanders

13   could not state a claim "because the officers were responding to the extreme emergency of public

14   gunfire and did not intend to commit any harm unrelated to the legitimate use of force necessary to

15   protect the public and themselves."  *Id*.

16   Similarly, in *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 950 (E.D. Cal. 2011),

17   another case on which the City and Abdelaziz rely, the officer had reason to believe that the

18   suspect was armed, dangerous, and a threat to at least one other person at the party.  Additionally,

19   the court found that the officers were responding to a "rapidly evolving, fluid, and dangerous

20   predicament."  *Id*. at 949 (citation omitted).  Again, because the officers were entitled to use

21   deadly force against the suspect, the only way a bystander could succeed in bringing a claim

22   would be to show an intent to harm the bystander.  However, in *Rodriguez*, the court found that

23   was no real dispute that the bystander was injured incidentally.  *Id*. at 950.

24   Also, in *Claybrook v. Birchwell*, 199 F. 3d 350 (6th Cir. 2000), the officers used deadly

25   force against the suspect who was shooting at them and inadvertently hit the bystander with a

26   bullet.  *See also Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir. 2000) (officers

27   inadvertently shot bystander plaintiffs when using deadly force to stop prison escapees).  In these

28   cases, the officers were responding to rapidly evolving situations and were justified in using

8

United States District Court
Northern District of California

1    deadly force against the *suspects*.  As noted above, in such circumstances where officers intend to

2    use force against a suspect and are justified by legitimate law enforcement purposes in doing so,

3    the bystander's only chance of bringing a claim for violation of her or his Fourteenth Amendment

4    right is to show an intent to harm directed at the bystander.

5         In none of the cases upon which the City and Abdelaziz rely, were there any allegations

6    that the officers acted with an intent to harm the suspects unrelated to legitimate law enforcement

7    objectives.  *See Claybrook*, 199 F. 3d 350; *Childress*, 210 F.3d 1154; *Trigalet v. City of Tulsa,*

8    *Oklahoma*, 239 F.3d 1150 (10th Cir. 2001); *Rodriguez*, 819 F. Supp. 2d 937, *Suit v. City of*

9    *Folsom*, 2016 WL 6696060, at *1, 3 (E.D. Cal. Nov. 15, 2016).  Under Ninth Circuit authority,

10   where police officers are justified in their conduct, "that justification insulates the officer[s] from

11   constitutional attack, irrespective of who might be harmed or killed as a consequence of the"

12   officers' conduct.  *Onossian v. Block*, 175 F.3d 1169, 1171 (9th Cir. 1999).  In other words, if the

13   plaintiffs did not allege the police officers acted with intent to harm anyone unrelated to legitimate

14   law enforcement objectives, then the bystanders' claims would necessarily fail.

15        The Court finds that allegations that the Individual Defendants were acting with an intent

16   to harm anyone unrelated to a legitimate law enforcement objective, causing the harm to Plaintiffs,

17   is sufficient to allege a violation of the fourteenth amendment.  Because Plaintiffs have done so,

18   the Court DENIES the City's and Abdelaziz's motions on this ground.

19        **2.    Failure to Call for Medical Assistance.**

20        Ordinarily, police officers cannot be "held liable under § 1983 for an injury inflicted by a

21   third party."  *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013).  However, there

22   are two exceptions to this general rule, and Plaintiffs rely on one of these:  the "danger creation"

23   exception.  *Id*.  The danger creation exception applies where officers or government "affirmatively

24   placed the [victim] in a position of danger."  *Id*. (quoting *Wood v. Ostrander,* 879 F.2d 583, 589-

25   90 (9th Cir.1989)).  The relevant question is whether "the affirmative actions of the official

26   created or exposed an individual to a danger which he or she would not have otherwise faced."

27   *Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018) (cleaned up).

28        To state a claim based on state-created-danger, Plaintiffs must allege the following three

9

elements: (1) the Individual Defendants "affirmative actions created or exposed [them] to an actual, particularized danger that [they] would not otherwise have faced"; (2) "the injur[ies they] suffered [were] foreseeable; and (3) " the officers were deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). The Court finds that Plaintiffs allege all three elements. The Individual Defendants drove dangerously fast, at speeds up to 100 miles per hour, through highly congested streets, with their lights and sirens off, with the alleged intent of causing the suspect to crash. The Individual Defendants' affirmative actions exposed Plaintiffs to an actual, particularized danger that they would not have otherwise faced. It was certainly foreseeable that, if the suspect hit others when he crashed, others would be injured.

Moreover, the Individual Defendants were indifferent to the known danger. They saw the crash they allegedly intended to cause and were aware that innocent bystanders were injured when the suspect crashed into cars and motorcycles parked in front of a busy taco truck on a main city street. (Dkt. No. 17, ¶¶ 21, 23.) The Individual Defendants did not report the crash or call for medical assistance and instead left the scene and did not return until they heard other police sirens responding to the scene. (*Id.*, ¶ 23.) The Individual Defendants pretended to arrive for the first time and were overheard mentioning that they were satisfied that the suspect appeared to be injured and that they hoped that he had died in the crash. (*Id.*)

Abdelaziz tries to characterize the Individual Defendants' conduct as simply engaging in a legitimate high-speed chase. But even if they had engaged in a legitimate high-speed chase and had arrested the suspect, Abdelaziz points to no cases where officers incidentally caused an accident with no bad intent and did not summon medical assistance for those injured.

Finally, Abdelaziz argues that Plaintiffs fail to sufficiently allege that the Individual Defendants' conduct was directed towards *Plaintiffs*, as opposed to the suspect. In reliance on *Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023), he argues that the officers' conduct must be directed specifically at *Plaintiffs*. However, in *Sinclair*, the Ninth Circuit merely found that where the accused conduct was directed towards an entire section or zone of the city and affected all who lived or passed through that area equally, the representative of the individual killed in that area could not state a claim under the Fourteenth Amendment. Moreover, the Ninth Circuit

10

United States District Court
Northern District of California

clarified that while generalized dangers exposing a broad swath of the public, as in *Sinclair*, cannot support a state-created-danger claim, the danger can be sufficiently particularized "if it is directed towards a group rather than an individual." *See Polanco v. Diaz*, 76 F.4th 918, 927 (9th Cir. 2023). In *Polanco*, the court held that the danger was particularized when the prison officials transferred 122 inmates into the prison without testing them for COVID-19, thereby exposing the prison guards and inmates to the dangers of COVID-19. *Id*. The prison guards and inmates at the prison were a "discrete and identifiable group." *Id*. Therefore, the court held that the family of a prison guard who had been exposed to and died of COVID-19 stated a claim based on a state-created-danger. *Id*.

Plaintiffs here are an even smaller "discrete and identifiable group" who were injured from the crash the Individual Defendants allegedly intentionally caused. Accordingly, the Court DENIES Abdelaziz's motion to dismiss Plaintiffs' claim under Section 1983 claim against the Individual Defendants on this ground.

### 3. Qualified Immunity.

Abdelaziz argues that he is entitled to qualified immunity on Plaintiffs' claims for violation of their Fourteenth Amendment rights. However, his arguments are premised on arguments above that the Court rejected – that the intent to harm must be directed at the bystanders and that the Individual Defendants had no obligation to render or procure medical aid because they did not create the danger. The Court finds that, based on the facts alleged by Plaintiffs, the Individual Defendants are not entitled to qualified immunity. *See Porter*, 546 F.3d at 1140 ("whether Osborn is entitled to qualified immunity . . . turns on whether the Porters can present facts . . . that would justify a jury finding that Osborn acted with an unconstitutional purpose to harm"). Therefore, the Court DENIES Abdelaziz's motion on this ground.

### 4. *Monell* Claim Against the City.

The City moves to dismiss the Section 1983 claim against it on the grounds that Plaintiffs have insufficiently pled facts to support liability against a municipality under *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Municipalities cannot be found liable under Section 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 694. Municipal liability can be

11

United States District Court
Northern District of California

1    imposed only for injuries inflicted pursuant to an official governmental policy or custom.  *See*

2    *Monell v. N.Y. Dept. of Soc. Serv.*, 436 U.S. 658, 690-94 (1978).  A city can be found liable when

3    the execution of a policy, whether made by its lawmakers or those whose acts can be said to

4    represent official policy or custom of the city, inflicts the injury.  *Id.* at 694.  In order to state a

5    *Monell* claim, a plaintiff must allege facts sufficient to demonstrate: "(1) whether plaintiff's harm

6    was caused by a constitutional violation; and (2) if so, whether the [municipality] is responsible

7    for that violation."  *Collins v. City Harker Heights*, 503 U.S. 115, 120 (1992).

8         There are three different theories of municipal liability: (1) official policies or established

9    customs that inflict constitutional injury; (2) acts of omission, such as the failure to train, when the

10   omissions amount to the local government's own official policy; or (3) if the individual who

11   committed the constitutional tort was an official with final policy-making authority, or an official

12   with final policy-making authority ratified a subordinate's unconstitutional decision or action and

13   the basis for it.

14        Plaintiffs do not allege or cite to any formal policy.  In the absence of a formal

15   governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes

16   the standard operating procedure of the local government entity."  *Trevino v. Gates*, 99 F.3d 911,

17   918 (9th Cir. 1996).  The custom must be so "persistent and widespread" that it constitutes a

18   "permanent and well settled city policy."  *Id.*  A plaintiff cannot prove the existence of a municipal

19   policy or custom based solely on the occurrence of a single incident of unconstitutional action by a

20   non-policymaking employee.  *Id.* ("Liability for improper custom may not be predicated on

21   isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency

22   and consistency that the conduct has become a traditional method of carrying out policy."); *see*

23   *also Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1144 (N.D. Cal. 2016).

24        Plaintiffs allege that the City issued a policy prohibiting high-speed chases except for

25   violent crimes in 2014.  (Dkt. No. 17, ¶ 26.)  Plaintiffs allege that afterward, a "growing trend"

26   emerged among City police officers to use ghost chases to avoid scrutiny for engaging in high-

27   speed chases.  (*Id.*, ¶ 27.)  Plaintiffs then recite statistics on officer collisions, but do not tie any of

28   the statistics to ghost chases.  (*Id.*, ¶¶ 27, 28.)  Plaintiffs allege that ghost chases have become

12

1  well-known and widespread within the Oakland Police Department and that high-ranking

2  supervisors and officials have known about the practice but did not take action to quell or abolish

3  the practice.  (*Id*., ¶ 29.)

4        It is debatable whether Plaintiffs have sufficiently alleged a "longstanding practice or

5  custom which constitutes the standard operating procedure of the local government entity."

6  *Trevino*, 99 F.3d at 918.  Regardless, Plaintiffs' *Monell* claim suffers from another defect.

7  Plaintiffs must allege that the longstanding practice or custom was the "moving force" behind

8  Plaintiffs' alleged constitutional violation.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

9  The problem Plaintiffs face is that the constitutional violation they allege is that the Individual

10  Defendants chased the suspect *with an intent to harm him*.  It is the intent to harm which shocks

11  the conscience.  Although engaging in a high speed chase without lights or sirens is incredibly

12  dangerous, if the Individual Defendants had done so for a legitimate law enforcement purpose

13  without any intent to harm, Plaintiffs would not have alleged a claim for violation of their

14  Fourteenth Amendment rights.  Plaintiffs have not alleged any policy or practice that Oakland

15  police officers intend to harm suspects.  Therefore, the Court GRANTS the City's motion to

16  dismiss the Section 1983 claim against it.[1]  While it does not appear likely that Plaintiffs could

17  plead facts to support such a claim, the Court will provide Plaintiffs with one opportunity to

18  amend their complaint to add facts for their *Monell* claim.

19        **5.    Bane Act.**

20        Both the City and Abdelaziz move to dismiss Plaintiff's Bane Act claim.  The Bane Act

21  states in relevant part that a person is liable when he or she:

22          [I]nterferes by threat, intimidation, or coercion, or attempts to
            interfere by threat, intimidation, or coercion, with the exercise or
23          enjoyment by any United States, or of the rights secured by the
            Constitution or laws of this state.
24
25  Cal. Civ. Code § 52.1(b).  The Bane Act "does not extend to all ordinary tort actions."  *Venegas v.*

26

27  ───────────────
        [1] Plaintiffs argue in opposition to the City's motion that the City failed to move to dismiss
28  the *Monell* claim to the extent it is premised on the Individual Defendants' failure to summon
    medical aid.  (Dkt. No. 26 at p.12.)  However, Plaintiffs' *Monell* claim is only premised on ghost
    chases.  (Dkt. No. 17, ¶¶ 41-43.)

                                    13

*Cty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004).  It requires a showing of specific intent.  *Cornell v. City and Cty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017) (a plaintiff must demonstrate "the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure").  The statute "require[s] an attempted or completed act of interference with a legal right, accompanied by a form of coercion."  *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998).  Plaintiffs have not alleged that the Individual Defendants coerced them.  Therefore, the Court GRANTS the City's and Abdelaziz's motions on the Bane Act claim.[2]

Abdelaziz argues that Plaintiffs should not be given leave to amend because he is immune from state law claims, including the Bane Act, pursuant to California Vehicle Code § 17004.  That statute provides:  "A public employee is not liable for civil damages on account of personal injury to or death of any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call or when in the immediate pursuit of an actual or suspected violator of the law . . . ."  However, Plaintiffs allege that the Individual Defendants were not operating their car in the line of duty to pursue a suspect to arrest him.  Instead, they allege that the Individual Defendants were misusing their patrol car for an improper purpose – trying to harm the suspect.  Abdelaziz does not cite to any cases where Vehicle Code § 17004 has been applied to bar claims based on an officer's intentional misuse of their vehicle.  In the absence of such authority, the Court will not preclude Plaintiffs from seeking to allege additional facts to state a claim under the Bane Act.  Therefore, the Court will provide Plaintiffs with leave to amend their Bane Act claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the City's motion to dismiss and GRANTS IN PART and DENIES IN PART Abdelaziz's motion for judgment on the pleadings.  Pursuant to these motions, the Court DISMISSES Plaintiffs' Section 1983 claim against the City and their Bane Act claim against all Defendants.  The Court DENIES the motions as to Plaintiffs' Section 1983 claim against the Individual Defendants.

---

[2] Because Marin-Coronel joined in Abdelaziz's motion, the Court dismisses the Bane Act claim with respect to him as well.

14

Plaintiffs have one opportunity to allege additional facts to support their Section 1983 claim against the City and their Bane Act claim. Plaintiffs shall file their amended complaint, if they elect to amend, by no later than December 20, 2023.

**IT IS SO ORDERED**.

Dated: November 28, 2023

_____
SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

15

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that on this 27ᵗʰ day of December 2023, I electronically filed the foregoing

**DEFENDANTS WALID ABDELAZIZ'S AND JIMMY MARIN-CORONEL'S JOINT**

4

5    **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH**

6    **CIRCUIT** with the Clerk of the Court using the CM/ECF system which will send notification of

7    such filing to the following:

8    Adante Pointer                          Christina Lum
     Lateef Hasani Gray                      Kevin P. McLaughlin
9    Patrick Matthew Buelna                  Oakland City Attorney's Office
10   Treva Renita Stewart                    One Frank H. Ogawa Plaza, 6th Floor
     Pointer & Buelna, LLP                   Oakland, CA 94612
11   Lawyers for the People                  Tel:510-238-4483
     155 Filbert Street, Suite 208           Fax: 510-238-6500
12   Oakland, CA 94607                       Email: clum@oaklandcityattorney.org
13   (510) 929-5400                          kmclaughlin@oaklandcityattorney.org
14   Email: Apointer@lawyersftp.com          *Attorneys for Defendant City of Oakland*
     lgray@lawyersftp.com
15   tstewart@lawyersftp.com
16   pbuelna@lawyersftp.com
     *Attorneys for Plaintiffs*
17
18   David Blake Newdorf
     Newdorf Legal
19   630 Thomas L Berkley Way
20   Suite 103
     Oakland, CA 94612
21   415-357-1234
22   Fax: 866-954-8448
     Email: david@newdorf.com
23   *Attorneys for Defendant Walid Abdelaziz*

24

25   I also certify the document and a copy of the Notice of Electronic Filing was served via on the

26   following non-CM/ECF participants: None.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Gwen Wagner*

Gwen Wagner
*Paralegal to Aimee Hamoy*

CEERTIFICATE OF SERVICE

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:23-cv-00381-SK

Estate of Decedent Lolomania Soakai et al v. City of Oakland
Assigned to: Magistrate Judge Sallie Kim
Referred to: Magistrate Judge Donna M. Ryu (Settlement)
Case in other court: 9th Circuit Court of Appeals, 23-04466
Cause: 42:1983 Civil Rights Act

Date Filed: 01/25/2023
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Estate of Decedent Lolomania Soakai**         represented by **Adante Pointer**
Pointer & Buelna, LLP
Lawyers for the People
155 Filbert Street, Suite 208
Oakland, CA 94607
(510) 929-5400
Email: Apointer@lawyersftp.com
*ATTORNEY TO BE NOTICED*

**Lateef Hasani Gray**
Pointer & Buelna, Lawyers For The People
155 Filbert Street
Ste 208
Oakland, CA 94607
510-929-5400
Email: lgray@lawyersftp.com
*ATTORNEY TO BE NOTICED*

**Treva Renita Stewart**
Pointer & Buelna, LLP Lawyers for the
People
155 Filbert Street, Suite 208
Oakland, CA 94607
(510) 929-5400
Email: tstewart@lawyersftp.com
*ATTORNEY TO BE NOTICED*

**Patrick Matthew Buelna**
Pointer & Buelna, LLP
Lawyers for the People
155 Filbert Street, Suite 208
Oakland, CA 94607
(510) 929-5400
Email: pbuelna@lawyersftp.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lavinia Soakai**
*an individual and personal representative of Estate*

represented by **Adante Pointer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lateef Hasani Gray**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Treva Renita Stewart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Matthew Buelna**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Daniel Fifita**
*an individual*

represented by **Adante Pointer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lateef Hasani Gray**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Treva Renita Stewart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Matthew Buelna**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Samieuela Finau**
*an individual*

represented by **Adante Pointer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lateef Hasani Gray**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Treva Renita Stewart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Matthew Buelna**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Ina Lavalu**
*an individual*

represented by **Adante Pointer**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Lateef Hasani Gray**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Treva Renita Stewart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Matthew Buelna**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Oakland**
*a municipal corporation*

represented by **Christina Lum**
Oakland City Attorney's Office
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
510-238-4483
Fax: 510-238-6500
Email: clum@oaklandcityattorney.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin P. McLaughlin**
Oakland City Attorney's Office
One Frank H. Ogawa Plaza
Sixth Floor
Oakland, CA 94612
(510) 238-2961
Fax: (510) 238-6500
Email:
kmclaughlin@oaklandcityattorney.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**Walid Abdelaziz**
*in his individual capacity as a police officer*
*for the CITY OF OAKLAND*

represented by **David Blake Newdorf**
Newdorf Legal
630 Thomas L Berkley Way
Suite 103
Oakland, CA 94612
415-357-1234
Fax: 866-954-8448
Email: david@newdorf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jimmy Marin-Coronel**
*in his individual capacity as a police officer*

represented by **Aimee G Hamoy**
Kaufman Dolowich LLP

*for the CITY OF OAKLAND*

425 California Street, Suite 2100
San Francisco, Ca 94104
San Francisco, CA 94104
510-630-7646
Email: ahamoy@kaufmandolowich.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/25/2023 | 1 | COMPLAINT *for Damages* (with jury demand) against City of Oakland (Filing fee $ 402, receipt number ACANDC-17930360). Filed by Samieuela Finau, Estate of Decedent Lolomania Soakai, Daniel Fifita, Lavinia Soakai, Ina Lavalu. (Attachments: # 1 Civil Cover Sheet)(Buelna, Patrick) (Filed on 1/25/2023) Modified on 1/26/2023 (cjl, COURT STAFF). Modified on 1/31/2023 (jml, COURT STAFF). (Entered: 01/25/2023) |
| 01/25/2023 | 2 | Case assigned to Magistrate Judge Sallie Kim. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 2/8/2023. (anj, COURT STAFF) (Filed on 1/25/2023) (Entered: 01/25/2023) |
| 01/26/2023 | 3 | NOTICE of Appearance by Adante Pointer (Pointer, Adante) (Filed on 1/26/2023) (Entered: 01/26/2023) |
| 01/26/2023 | 4 | NOTICE of Appearance by Treva Renita Stewart (Stewart, Treva) (Filed on 1/26/2023) (Entered: 01/26/2023) |
| 01/26/2023 | **5** | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 4/24/2023. Initial Case Management Conference set for 5/1/2023 01:30 PM in San Francisco, Courtroom C, 15th Floor. (cjl, COURT STAFF) (Filed on 1/26/2023) (Entered: 01/26/2023)** |
| 01/30/2023 | 6 | Proposed Summons. (Buelna, Patrick) (Filed on 1/30/2023) (Entered: 01/30/2023) |
| 01/31/2023 | 7 | Summons Issued as to City of Oakland. (jml, COURT STAFF) (Filed on 1/31/2023) (Entered: 01/31/2023) |
| 02/03/2023 | 8 | WAIVER OF SERVICE Returned Executed filed by Estate of Decedent Lolomania Soakai. Service waived by City of Oakland waiver sent on 1/31/2023, answer due 4/3/2023. (Buelna, Patrick) (Filed on 2/3/2023) (Entered: 02/03/2023) |
| 02/07/2023 | 9 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu, Lavinia Soakai.. (Buelna, Patrick) (Filed on 2/7/2023) (Entered: 02/07/2023) |
| 03/17/2023 | 10 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by City of Oakland.. (Lum, Christina) (Filed on 3/17/2023) (Entered: 03/17/2023) |
| 04/03/2023 | 11 | MOTION to Dismiss *PLAINTIFFS COMPLAINT* filed by City of Oakland. Motion Hearing set for 5/15/2023 09:30 AM in San Francisco, Courtroom C, 15th Floor before |

| | | |
|---|---|---|
| | | Magistrate Judge Sallie Kim. Responses due by 4/17/2023. Replies due by 4/24/2023. (Attachments: # 1 DEFENDANT CITY OF OAKLAND REQUEST FOR JUDICIAL NOTICE ISO MOTION TO DISMISS PLAINTIFFS COMPLAINT)(Lum, Christina) (Filed on 4/3/2023) Modified on 4/4/2023 (jml, COURT STAFF). (Entered: 04/03/2023) |
| 04/04/2023 | 12 | Proposed Order re 11 MOTION to Dismiss *Plaintiff's Complaint* by City of Oakland. (Lum, Christina) (Filed on 4/4/2023) (Entered: 04/04/2023) |
| 04/04/2023 | 13 | NOTICE of Appearance by Kevin P. McLaughlin (McLaughlin, Kevin) (Filed on 4/4/2023) Modified on 4/5/2023 (jml, COURT STAFF). (Entered: 04/04/2023) |
| 04/11/2023 | 14 | ADR Clerks Notice re: Non-Compliance with Court Order. The parties have failed to file an ADR Certification as required by the Initial Case Management Scheduling Order. Counsel shall comply promptly with the requirements of ADR L.R. 3-5(b) and shall file the ADR Certification. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*(cmf, COURT STAFF) (Filed on 4/11/2023) (Entered: 04/11/2023) |
| 04/11/2023 | 15 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Buelna, Patrick) (Filed on 4/11/2023) (Entered: 04/11/2023) |
| 04/14/2023 | 16 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Lum, Christina) (Filed on 4/14/2023) (Entered: 04/14/2023) |
| 04/17/2023 | 17 | FIRST AMENDED COMPLAINT against City of Oakland, Walid Abdelaziz, Jimmy Marin-Coronel. Filed by Estate of Decedent Lolomania Soakai. (Buelna, Patrick) (Filed on 4/17/2023) Modified on 4/18/2023 (jml, COURT STAFF). (Entered: 04/17/2023) |
| 04/24/2023 | 18 | JOINT CASE MANAGEMENT STATEMENT filed by City of Oakland, Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu and Lavinia Soakai. (Lum, Christina) (Filed on 4/24/2023) Modified on 4/25/2023 (jml, COURT STAFF). (Entered: 04/24/2023) |
| 04/26/2023 | 19 | CLERKS NOTICE SETTING ZOOM HEARING. Initial Case Management Conference set for 5/1/2023 01:30 PM in San Francisco. This proceeding will be held by videoconference via a Zoom webinar. **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/sk **General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. **Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (mkl, COURT STAFF) (Filed on 4/26/2023) (Entered: 04/26/2023) |
| 05/01/2023 | 20 | MOTION to Dismiss *PLAINTIFFS FIRST AMENDED COMPLAINT* filed by City of Oakland. Motion Hearing set for 6/12/2023 09:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Responses due by 5/15/2023. Replies due by 5/22/2023. (Attachments: # 1 Proposed Order GRANTING DEFENDANT CITY OF OAKLAND MOTION TO DISMISS PLAINTIFFS FIRST AMENDED COMPLAINT) (Lum, Christina) (Filed on 5/1/2023) (Entered: 05/01/2023) |

| 05/01/2023 | 21 | **Minute Entry for proceedings held by Zoom before Magistrate Judge Sallie Kim: Initial Case Management Conference held on 5/1/2023. Trial date and schedule set. The Court will issue a case management order.** |
| | | **The Court will determine whether the case will be referred to Magistrate Judge Beeler or Ryu for settlement.** |
| | | **Defense counsel notifies the Court that the Defendants will be filing a motion to dismiss the first amended complaint which will be noticed for hearing on 6/12/2023.** |
| | | **Case Management Statement due by 9/1/2023. Further Case Management Conference set for 9/11/2023 01:30 PM in San Francisco - Videoconference Only.** |
| | | **Digital Recording Time: 1:52-1:55.**<br>**Attorney for Plaintiffs: Patrick Buelna.**<br>**Attorney for Defendants: Christina Lum.** |
| | | ***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (mkl, COURT STAFF) (Date Filed: 5/1/2023) (Entered: 05/01/2023)** |
| 05/02/2023 | 22 | **CASE MANAGEMENT AND PRETRIAL ORDER (JURY). Close of Fact Discovery is 5/17/2024. Initial Expert Disclosures due by 5/24/2024. Rebuttal Expert Disclosures due by 6/21/2024. Close of Expert Discovery is 7/12/2024. Dispositive Motion Hearing set for 9/30/2024 09:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Pretrial Conference set for 12/13/2024 01:30 PM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Jury Selection set for 1/28/2025 08:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Jury Trial set for 1/28/2025 08:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Signed by Magistrate Judge Sallie Kim on 5/2/2023. (mkl, COURT STAFF) (Filed on 5/2/2023) (Entered: 05/02/2023)** |
| 05/02/2023 | | CASE REFERRED to Magistrate Judge Donna M. Ryu for Settlement (mkl, COURT STAFF) (Filed on 5/2/2023) (Entered: 05/02/2023) |
| 05/02/2023 | 23 | Proposed Summons. (Buelna, Patrick) (Filed on 5/2/2023) (Entered: 05/02/2023) |
| 05/03/2023 | 24 | Summons Issued as to Walid Abdelaziz, Jimmy Marin-Coronel. (jml, COURT STAFF) (Filed on 5/3/2023) (Entered: 05/03/2023) |
| 05/04/2023 | 25 | CLERK'S NOTICE: Notice is hereby given to all parties that Chief Magistrate Judge Donna M. Ryu will convene a pre-settlement conference call to discuss timing and preparation for a settlement conference. Judge Ryu anticipates that the phone call will last approximately 20-30 minutes. The conference call shall take place on 5/19/2023 09:15 AM in Oakland, - Telephonic Only. Lead Counsel for all parties shall participate. Counsel will receive the call-in information via e-mail from Judge Ryu's courtroom deputy. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ig, COURT STAFF) (Filed on 5/4/2023) (Entered: 05/04/2023) |
| 05/15/2023 | 26 | OPPOSITION/RESPONSE (re 20 MOTION to Dismiss *PLAINTIFFS FIRST AMENDED COMPLAINT* ) filed byEstate of Decedent Lolomania Soakai. (Buelna, Patrick) (Filed on 5/15/2023) (Entered: 05/15/2023) |
| 05/19/2023 | 27 | **Minute Entry for proceedings held before Chief Magistrate Judge Donna M. Ryu: Settlement planning call held on 5/19/2023.**<br>**Results: Parties are anticipating the appearance of counsel for the two individual defendants. Judge Ryu will convene another planning call on 6/30/2023 at 9:30 AM in** |

|  |  | Oakland, - Telephonic Only. Counsel will receive call-in credentials by email. **Digital Recording Time:** Not Recorded **For Plaintiff:** Patrick Buelna and Treva Stewart **For City of Oakland:** Christina Lum *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ig, COURT STAFF) (Date Filed: 5/19/2023) (Entered: 05/19/2023) |
|---|---|---|
| 05/22/2023 | 28 | Defendant City of Oakland's REPLY in Support of Motion to Dismiss Plaintiffs' First Amended Ccomplaint (re 20 MOTION to Dismiss *Plaintiffs First Amended Complaint*) filed by City of Oakland. (Lum, Christina) (Filed on 5/22/2023) (Entered: 05/22/2023) |
| 05/31/2023 | 29 | CLERK'S NOTICE Continuing Motion Hearing<br><br>The Motion Hearing Re: 20 MOTION to Dismiss *PLAINTIFFS' FIRST AMENDED COMPLAINT* set for 6/12/2023 is continued to 6/26/2023 09:30 AM in San Francisco - Videoconference Only before Magistrate Judge Sallie Kim. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/sk<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*(mkl, COURT STAFF) (Filed on 5/31/2023) (Entered: 05/31/2023) |
| 05/31/2023 | 30 | WAIVER OF SERVICE Returned Executed filed by Daniel Fifita, Lavinia Soakai, Estate of Decedent Lolomania Soakai, Samieuela Finau, Ina Lavalu. Service waived by Jimmy Marin-Coronel waiver sent on 5/1/2023, answer due 6/30/2023. (Buelna, Patrick) (Filed on 5/31/2023) (Entered: 05/31/2023) |
| 05/31/2023 | 31 | WAIVER OF SERVICE Returned Executed filed by Daniel Fifita, Lavinia Soakai, Estate of Decedent Lolomania Soakai, Samieuela Finau, Ina Lavalu. Service waived by Walid Abdelaziz waiver sent on 5/31/2023, answer due 7/31/2023. (Buelna, Patrick) (Filed on 5/31/2023) (Entered: 05/31/2023) |
| 06/13/2023 | 32 | CLERK'S NOTICE Continuing Motion Hearing:<br><br>The Motion Hearing Re: 20 MOTION to Dismiss *PLAINTIFFS' FIRST AMENDED COMPLAINT* set for 6/26/2023 is continued to 8/14/2023 09:30 AM in San Francisco - Videoconference Only before Magistrate Judge Sallie Kim. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/sk<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. |

| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)*(mkl, COURT STAFF) (Filed on 6/13/2023) (Entered: 06/13/2023) |
|---|---|---|
| 06/29/2023 | [33](#) | STIPULATED PROTECTIVE ORDER (FOR STANDARD LITIGATION) filed by City of Oakland, Walid Abdelaziz, Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu, Jimmy Marin-Coronel, Lavinia Soakai. (Attachments: # [1](#) Declaration DECLARATION OF KEVIN P. MCLAUGHLIN RE: PROTECTIVE ORDER)(McLaughlin, Kevin) (Filed on 6/29/2023) Modified on 6/30/2023 (cjl, COURT STAFF). (Entered: 06/29/2023) |
| 06/29/2023 | 34 | CLERK'S NOTICE: During the 5/19/2023 settlement planning call, Judge Ryu set a further planning call for 6/30/2023 because conflict counsel for the individual defendants had not yet made an appearance in the case. The docket indicates that they still haven't made an appearance. For this reason, the 6/30/2023 planning call is VACATED and continued to 7/26/2023 at 09:30 AM in Oakland, - Telephonic Only. Counsel will receive call-in credentials by email. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ig, COURT STAFF) (Filed on 6/29/2023). (Entered: 06/29/2023) |
| 06/30/2023 | [35](#) | **Order by Magistrate Judge Sallie Kim granting [33](#) Stipulation.(sklc1, COURT STAFF) (Filed on 6/30/2023) (Entered: 06/30/2023)** |
| 07/20/2023 | [36](#) | ANSWER to Amended Complaint *Jury trial demanded* byJimmy Marin-Coronel. (Hamoy, Aimee) (Filed on 7/20/2023) (Entered: 07/20/2023) |
| 07/20/2023 | | [Electronic filing error](#). **NOTICE TO COUNSEL:** AIMEE G. HAMOY. The docket shows a different address from what is appearing on the document (dkt. #: [36](#) Answer to Amended Complaint filed by Jimmy Marin-Coronel). Please update your personal profile on ECF. (jml, COURT STAFF) (Filed on 7/20/2023) (Entered: 07/21/2023) |
| 07/21/2023 | 37 | CLERK'S NOTICE Re: Consent or Declination:<br><br>**Defendant Jimmy Marin-Coronel** shall file a consent or declination to proceed before a magistrate judge by **8/4/2023**. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: [http://cand.uscourts.gov/civilforms](http://cand.uscourts.gov/civilforms). Consent/Declination due by 8/4/2023.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (mkl, COURT STAFF) (Filed on 7/21/2023) (Entered: 07/21/2023) |
| 07/25/2023 | 38 | CLERK'S NOTICE: During the 5/19/2023 settlement planning call, Judge Ryu set a further planning call because conflict counsel for the individual defendants had not yet made an appearance in the case. The docket indicates that one of the individual defendants still has not made an appearance.<br>For this reason, the 7/26/2023 planning call is VACATED and continued to 8/25/2023 at 09:30 AM in Oakland, - Telephonic Only.<br><br>Counsel will receive call-in credentials by email.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*. (klh, COURT STAFF) (Filed on 7/25/2023) (Entered: 07/25/2023) |
| 07/31/2023 | 39 | CLERK'S NOTICE Continuing Motion Hearing:<br><br>Motion Hearing Re: [20](#) MOTION to Dismiss *PLAINTIFFS FIRST AMENDED COMPLAINT* set for 8/14/2023 is continued to 8/21/2023 09:30 AM in San Francisco - |

| | | |
|---|---|---|
| | | Videoconference Only before Magistrate Judge Sallie Kim. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/sk<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (mkl, COURT STAFF) (Filed on 7/31/2023) (Entered: 07/31/2023) |
| 08/08/2023 | 40 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party (Defendants Jimmy Marin-Coronel and Walid Abdelaziz) has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (mkl, COURT STAFF) (Filed on 8/8/2023) (Entered: 08/08/2023) |
| 08/08/2023 | 41 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Araceli Martinez-Olguin for all further proceedings. Magistrate Judge Sallie Kim no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Signed by Clerk on 08/08/2023. (Attachments: # 1 Notice of Eligibility for Video Recording) (mbc, COURT STAFF) (Filed on 8/8/2023) (Entered: 08/08/2023)** |
| 08/09/2023 | 42 | Clerk's Notice Scheduling Case Management Conference.Case Management Statement due by 10/26/2023. Further Case Management Conference set for 11/2/2023 at 10:00 AM in San Francisco, Courtroom 10, 19th Floor. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ads, COURT STAFF) (Filed on 8/9/2023) (Entered: 08/09/2023) |
| 08/21/2023 | 43 | CLERK'S NOTICE: During the 5/19/2023 settlement planning call, Judge Ryu set a further planning call because conflict counsel for the individual defendants had not yet made an appearance in the case. The docket indicates that one of the individual defendants still has not made an appearance. For this reason, the 8/25/2023 09:30 AM planning call is VACATED and continued to 10/2/2023 09:30 AM in Oakland, - Telephonic Only. Counsel will receive call-in credentials by email.<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ig, COURT STAFF) (Filed on 8/21/2023) (Entered: 08/21/2023) |
| 08/23/2023 | 44 | MOTION for Entry of Default *AS TO DEFENDANT WALID ABDELAZIZ* filed by Estate of Decedent Lolomania Soakai. (Attachments: # 1 Declaration DECLARATION OF PATRICK M. BUELNA IN SUPPORT OF PLAINTIFFS REQUEST FOR ENTRY OF |

| | | |
|---|---|---|
| | | DEFAULT AS TO DEFENDANT WALID ABDELAZIZ)(Buelna, Patrick) (Filed on 8/23/2023) (Entered: 08/23/2023) |
| 08/24/2023 | 45 | ***SET ASIDE PER ORDER OF THE COURT AT DOCKET ENTRY 49 ***<br>Clerk's Notice ENTRY OF DEFAULT as to defendant Walid Abdelaziz on August 24, 2023. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) 44 )(jml, COURT STAFF) (Filed on 8/24/2023) Modified on 9/6/2023 (cjl, COURT STAFF). (Entered: 08/24/2023) |
| 08/25/2023 | 46 | MOTION to Dismiss *First Amended Complaint* filed by Walid Abdelaziz. Motion Hearing set for 12/28/2023 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin. Responses due by 9/8/2023. Replies due by 9/15/2023. (Newdorf, David) (Filed on 8/25/2023) (Entered: 08/25/2023) |
| 08/28/2023 | 47 | Renotice motion hearing re 11 MOTION to Dismiss *AMENDED NOTICE OF DEFENDANT CITY OF OAKLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT* filed byCity of Oakland. (Related document(s) 11 ) (McLaughlin, Kevin) (Filed on 8/28/2023) (Entered: 08/28/2023) |
| 08/28/2023 | | Set/Reset Hearing 11 Motion to Dismiss Plaintiff's First Amended Complaint Hearing set for 12/28/2023 at 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin. (ads, COURT STAFF) (Filed on 8/28/2023) (Entered: 08/28/2023) |
| 08/30/2023 | 48 | ADMINISTRATIVE MOTION Set Aside Default re 45 Clerk's Notice of Entry of Default, *and Stipulation and Consent to Set Aside Default* filed by Walid Abdelaziz. Responses due by 9/5/2023. (Attachments: # 1 Proposed Order Stipulation and [Proposed] to Set Aside Default)(Newdorf, David) (Filed on 8/30/2023) (Entered: 08/30/2023) |
| 09/05/2023 | 49 | **Order as Modified by Judge Araceli Martinez-Olguin granting 48 Administrative Motion to Set Aside Clerk's Entry of Default as to Defendant Walid Abdelaziz. (ads, COURT STAFF) (Filed on 9/5/2023) (Entered: 09/05/2023)** |
| 09/06/2023 | 50 | Clerk's Notice Continuing Motion Hearing. Due to the Court's impacted calendar, the motion to dismiss hearings 20 46 are re-set to 2/8/2024 at 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin. The parties may be able to obtain an earlier hearing date by consenting to a magistrate judge using the form available at: http://cand.uscourts.gov/civilforms.<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ads, COURT STAFF) (Filed on 9/6/2023) (Entered: 09/06/2023) |
| 09/14/2023 | 51 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Walid Abdelaziz.. (Newdorf, David) (Filed on 9/14/2023) (Entered: 09/14/2023) |
| 09/14/2023 | 52 | ANSWER to Amended Complaint *and Jury Demand* byWalid Abdelaziz. (Newdorf, David) (Filed on 9/14/2023) (Entered: 09/14/2023) |
| 09/14/2023 | 53 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Jimmy Marin-Coronel.. (Hamoy, Aimee) (Filed on 9/14/2023) (Entered: 09/14/2023) |
| 09/15/2023 | 54 | **ORDER REASSIGNING CASE. Signed by Judge Araceli Martinez-Olguin on 9/15/2023. (ads, COURT STAFF) (Filed on 9/15/2023) (Entered: 09/15/2023)** |
| 09/21/2023 | 55 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Magistrate Judge Sallie Kim for all further proceedings. Judge Araceli Martinez-Olguin no longer assigned to case,. Signed by Clerk on 9/21/23. (as, COURT STAFF) (Filed on 9/21/2023) (Entered: 09/21/2023)** |

| | | |
|---|---|---|
| 09/21/2023 | 56 | **ORDER RESETTING MOTION HEARING AND CASE MANAGEMENT CONFERENCE. Status Report due by 10/2/2023. Case Management Statement due by 10/16/2023. Further Case Management Conference set for 10/23/2023 09:30 AM in San Francisco - Videoconference Only. Motion Hearing Re: 20 MOTION to Dismiss** *PLAINTIFFS FIRST AMENDED COMPLAINT* **set for 10/23/2023 09:30 AM in San Francisco, - Videoconference Only before Magistrate Judge Sallie Kim. Signed by Magistrate Judge Sallie Kim on 9/21/2023. (mkl, COURT STAFF) (Filed on 9/21/2023) (Entered: 09/21/2023)** |
| 09/26/2023 | | Clerk's Notice Setting Pre-Settlement Conference. Pre-Settlement Conference set for 10/2/2023 at 09:30 AM in Oakland, - Telephonic Only. Counsel will receive call-in credentials by email. (ads, COURT STAFF) (Filed on 9/26/2023) (Entered: 09/26/2023) |
| 09/27/2023 | 57 | STIPULATION WITH PROPOSED ORDER *Re: Request to Change Briefing Schedule on Motion for Judgment on the Pleadings* filed by Walid Abdelaziz, Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu, Jimmy Marin-Coronel, Lavinia Soakai. (Newdorf, David) (Filed on 9/27/2023) Modified on 9/28/2023 (jml, COURT STAFF). (Entered: 09/27/2023) |
| 09/28/2023 | 58 | **ORDER by Magistrate Judge Sallie Kim granting 57 Stipulation Regarding Briefing Schedule for Motion for Judgment on the Pleadings. (mkl, COURT STAFF) (Filed on 9/28/2023) (Entered: 09/28/2023)** |
| 09/28/2023 | 59 | MOTION for Judgment on the Pleadings filed by Walid Abdelaziz. Motion Hearing set for 11/20/2023 09:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Responses due by 10/30/2023. Replies due by 11/6/2023. (Newdorf, David) (Filed on 9/28/2023) (Entered: 09/28/2023) |
| 10/02/2023 | 60 | NOTICE of Appearance by Lateef Hasani Gray (Gray, Lateef) (Filed on 10/2/2023) (Entered: 10/02/2023) |
| 10/02/2023 | 61 | STIPULATION WITH PROPOSED ORDER *RE: CHANGING TIME FOR HEARING ON CITY OF OAKLAND'S MOTION TO DISMISS AND CASE MANAGEMENT CONFERENCE* filed by City of Oakland, Jimmy Marin-Coronel, Walid Abdelaziz, Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu and Lavinia Soakai. (McLaughlin, Kevin) (Filed on 10/2/2023) Modified on 10/3/2023 (jml, COURT STAFF). (Entered: 10/02/2023) |
| 10/02/2023 | 62 | *JOINT STATUS UPDATE RE: FURTHER BRIEFING ON CITY OF OAKLAND'S MOTION TO DISMISS* by City of Oakland, Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu, Jimmy Marin-Coronel, Lavinia Soakai. (McLaughlin, Kevin) (Filed on 10/2/2023) Modified on 10/3/2023 (jml, COURT STAFF). (Entered: 10/02/2023) |
| 10/02/2023 | 63 | **Minute Entry for proceedings held before Chief Magistrate Judge Donna M. Ryu: Planning call held on 10/2/2023 in advance of 3/25/2024 in-person settlement conference in Oakland at 1:00 PM. Plaintiffs shall provide a written demand by 2/26/2024 with a copy to Judge Ryu at DMRsettlement@cand.uscourts.gov.** **Digital Recording Time: Not Recorded** **For Plaintiffs: Patrick Buelna** **For Defendant City of Oakland: Kevin McLaughlin** **For Defendant Abdelaziz: David Newdorf** **For Defendant Marin-Coronel: Aimee Hamoy** *(This is a text-only entry generated by the court. There is no document associated with this entry.)* **(ig, COURT STAFF) (Date Filed: 10/2/2023) (Entered: 10/02/2023)** |

| | | |
|---|---|---|
| 10/02/2023 | 64 | **NOTICE OF SETTLEMENT CONFERENCE AND SETTLEMENT CONFERENCE ORDER: Settlement Conference set for 3/25/2024 01:00 PM in Oakland, Courtroom 4, 3rd Floor before Chief Magistrate Judge Donna M. Ryu. Signed by Chief Magistrate Judge Donna M. Ryu on 10/2/2023. (ig, COURT STAFF) (Filed on 10/2/2023) (Entered: 10/02/2023)** |
| 10/03/2023 | 65 | **ORDER by Magistrate Judge Sallie Kim granting 61 Stipulation to Continue Motion Hearing and Case Management Conference. (mkl, COURT STAFF) (Filed on 10/3/2023) (Entered: 10/03/2023)** |
| 10/03/2023 | | Set Deadlines/Hearings: Case Management Statement due by 11/13/2023. Case Management Conference reset for 11/20/2023 09:30 AM in San Francisco - Videoconference Only. |
| | | Set/Reset Deadlines as to 20 MOTION to Dismiss *PLAINTIFFS FIRST AMENDED COMPLAINT* Motion Hearing reset for 11/20/2023 09:30 AM in San Francisco - Videoconference Only before Magistrate Judge Sallie Kim. |
| | | (mkl, COURT STAFF) (Filed on 10/3/2023) (Entered: 10/03/2023) |
| 10/19/2023 | 66 | MOTION FOR JOINDER OF DEFENDANT WALID ABDELAZIZS MOTION FOR JUDGMENT ON THE PLEADINGS filed by Jimmy Marin-Coronel. (Hamoy, Aimee) (Filed on 10/19/2023) Modified on 10/20/2023 (cjl, COURT STAFF). (Entered: 10/19/2023) |
| 10/30/2023 | 67 | OPPOSITION/RESPONSE (re 59 MOTION for Judgment on the Pleadings ) filed byEstate of Decedent Lolomania Soakai. (Buelna, Patrick) (Filed on 10/30/2023) (Entered: 10/30/2023) |
| 11/07/2023 | 68 | REPLY (re 59 MOTION for Judgment on the Pleadings ) filed byWalid Abdelaziz. (Newdorf, David) (Filed on 11/7/2023) (Entered: 11/07/2023) |
| 11/07/2023 | 69 | REPLY (re 59 MOTION for Judgment on the Pleadings ) *Joinder to Reply* filed byJimmy Marin-Coronel. (Hamoy, Aimee) (Filed on 11/7/2023) (Entered: 11/07/2023) |
| 11/13/2023 | 70 | JOINT CASE MANAGEMENT STATEMENT filed by City of Oakland, Jimmy Marin-Coronel, Walid Abdelaziz, Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu and Lavinia Soakai . (McLaughlin, Kevin) (Filed on 11/13/2023) Modified on 11/13/2023 (jml, COURT STAFF). (Entered: 11/13/2023) |
| 11/14/2023 | 71 | CLERKS NOTICE SETTING ZOOM HEARING. |
| | | Motion Hearing Re: 20 MOTION to Dismiss *PLAINTIFFS FIRST AMENDED COMPLAINT* and 59 MOTION for Judgment on the Pleadings and Further Case Management Conference currently set for 11/20/2023 09:30 AM in San Francisco before Magistrate Judge Sallie Kim. These proceedings will be held by videoconference via a Zoom webinar. |
| | | **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/sk |
| | | **General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. |
| | | **Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. |

| | | |
|---|---|---|
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (mkl, COURT STAFF) (Filed on 11/14/2023) (Entered: 11/14/2023) |
| 11/20/2023 | 72 | **Minute Entry for proceedings held by Zoom before Magistrate Judge Sallie Kim: Motion Hearing held on 11/20/2023 re 20 MOTION to Dismiss *PLAINTIFFS FIRST AMENDED COMPLAINT* filed by City of Oakland and 59 MOTION for Judgment on the Pleadings filed by Walid Abdelaziz. The motions are taken under submission. The Court will issue a written order.** <br><br> **Further Case Management Conference held on 11/20/2023. The Court will reinstate the schedule proposed by the parties. There is also a settlement conference scheduled with Judge Ryu on 3/25/2024.** <br><br> **Updated Case Management Statement due by 4/1/2024. Further Case Management Conference set for 4/8/2024 01:30 PM in San Francisco - Videoconference Only.** <br><br> **Digital Recording Time: 9:30-9:52.** <br> **Attorney for Plaintiff: Patrick Buelna.** <br> **Attorney for Defendant City of Oakland: Ken McLaughlin.** <br> **Attorney for Defendant Walid Abdelaziz: David Newdorf.** <br> **Attorney for Defendant Jimmy Marin-Coronel: Aimee Hamoy.** <br><br> ***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (mkl, COURT STAFF) (Date Filed: 11/20/2023) (Entered: 11/20/2023)** |
| 11/21/2023 | 73 | **AMENDED CASE MANAGEMENT ORDER. Signed by Judge Sallie Kim on November 21, 2023. (sklc1, COURT STAFF) (Filed on 11/21/2023) (Entered: 11/21/2023)** |
| 11/21/2023 | | Set Deadlines/Hearings: Close of Fact Discovery is 5/17/2024. Initial Expert Disclosures due by 5/24/2024. Rebuttal Expert Disclosures due by 6/21/2024. Close of Expert Discovery is 7/12/2024. Dispositive Motion Hearing set for 10/7/2024 09:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Pretrial Conference set for 12/13/2024 01:30 PM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Jury Selection set for 1/28/2025 08:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. Jury Trial set for 1/28/2025 08:30 AM in San Francisco, Courtroom C, 15th Floor before Magistrate Judge Sallie Kim. (mkl, COURT STAFF) (Filed on 11/21/2023) (Entered: 11/21/2023) |
| 11/28/2023 | 74 | **ORDER by Judge Sallie Kim granting in part and denying in part 59 Motion for Judgment on the Pleadings; granting 66 Motion for Joinder; granting 20 Motion to Dismiss. (sklc1, COURT STAFF) (Filed on 11/28/2023) (Entered: 11/28/2023)** |
| 12/20/2023 | 75 | SECOND AMENDED COMPLAINT For Damages. *Jury Trial Demanded* against Walid Abdelaziz, City of Oakland, Jimmy Marin-Coronel. Filed by Daniel Fifita, Lavinia Soakai, Estate of Decedent Lolomania Soakai, Samieuela Finau, Ina Lavalu. (Attachments: # 1 Exhibit Redline of Second Amended Complaint)(Buelna, Patrick) (Filed on 12/20/2023) (Entered: 12/20/2023) |
| 12/27/2023 | 76 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Walid Abdelaziz, Jimmy Marin-Coronel. (Pay.gov Agency Tracking ID ACANDC-18974074. Filing Fee $ 605.00) (Hamoy, Aimee) (Filed on 12/27/2023) Modified on 12/28/2023 (jml, COURT STAFF). (Entered: 12/27/2023) |
| 12/29/2023 | 77 | USCA Case Number 23-4466 9th Circuit Court of Appeals for 76 Notice of Appeal to the Ninth Circuit, filed by Jimmy Marin-Coronel, Walid Abdelaziz. (msr, COURT STAFF) (Filed on 12/29/2023) (Entered: 12/29/2023) |

| 02/08/2024 | [78](#) | STIPULATION WITH PROPOSED ORDER *TO: (1) FILE PLAINTIFFS THIRD AMENDED COMPLAINT; AND (2) STAY THE CASE PENDING APPEAL* filed by Walid Abdelaziz, Jimmy Marin-Coronel, City of Oakland, Estate of Decedent Lolomania Soakai, Daniel Fifita, Samieuela Finau, Ina Lavalu and Lavinia Soakai. (Newdorf, David) (Filed on 2/8/2024) Modified on 2/8/2024 (jml, COURT STAFF). (Entered: 02/08/2024) |
|---|---|---|
| 02/09/2024 | [79](#) | **Order by Magistrate Judge Sallie Kim granting [78](#) Stipulation to File Plaintiffs Third Amended Complaint and Stay the Case Pending Appeal. (bxl, COURT STAFF) (Filed on 2/9/2024) (Entered: 02/09/2024)** |
| 02/26/2024 | 80 | CLERK'S NOTICE: At the parties' joint request, the settlement conference set for 3/25/2024 01:00 PM before Chief Magistrate Judge Donna M. Ryu is vacated pending the Ninth Circuit's decision on Defendants' interlocutory appeal. The parties are directed to contact Judge Ryu no later than 30 days after Judge Kim lifts the stay in order to reschedule a settlement conference. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ig, COURT STAFF) (Filed on 2/26/2024) (Entered: 02/26/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/21/2024 12:41:02 | | |
| **PACER Login:** | newlegal | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00381-SK |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |